# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-147-APM |
| WARREN KENNETH PAXTON JR., in his official capacity as Attorney General of the State of Texas, | |
| Defendant. | |

## DEFENDANT'S SUR-REPLY TO PLAINTIFFS' REPLY BRIEF

# INTRODUCTION

Defendant Ken Paxton in his official capacity as Attorney General of the State of Texas respectfully files this sur-reply in compliance with this Court's minute order of February 7, 2024, addressing the following issue:

> *Whether the Defendant's hiring of a process server to physically serve the Civil Investigation Demand (CID) in the District of Columbia supports a finding of personal jurisdiction under subsections (a)(1) and (a)(3) of the D.C. long-arm statute.*

## I.   Hiring a process server to deliver a CID to Media Matters in D.C. does not support a finding of personal jurisdiction under section (a)(1).

Subsection (a)(1) requires a defendant to intentionally engage in a "commercial or business-related activity" directed toward D.C. persons. *Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) (quoting *Holder v. Haarman & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001)). Such activities include "negotiating or performing contracts," *Trump v. Comm. on Ways & Means, U.S. House of Reps.*, 415 F. Supp. 3d 98, 107 (D.D.C. 2019) (citing *Helmer v. Doletskaya*, 393 F.3d 201, 206–07 (D.C. Cir. 2004)) (compiling cases), contractual activities outside D.C. if they create consequences within D.C., *id.* (citing *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)), and advertising, *id.* (citing *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 330–32 (D.C. 2000) (en banc)). But merely hiring a process server does not qualify.

D.C. courts have defined transacting business as to both the commercial and ongoing nature of the activity in question. First, "under section 13-423(a)(1), the plaintiff must show that the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents." *Holder*, 779 A.2d at 270–71; *see also West v. Holder*, 60 F. Supp. 3d 190, 195 (D.D.C. 2014), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017) (holding that "contacts falling under the 'transacting any business provision' usually must be commercial"). Second, "doing business" under subsection (a)(1) may include "any *continuing corporate presence*

in the forum state directed at advancing the corporation's objectives." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981) (emphasis added); *see also Price v. Griffin*, 359 A.2d 582, 586 (D.C. 1976) (emphasis added). In contrast, claims alleging tortious injury, such as here, "do not fit that description." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). Here, Defendant Paxton has not engaged in any *commercial* activity, nor has he established a continuing corporate presence in D.C. Thus, this Court does not have personal jurisdiction under subsection (a)(1).

Media Matters argues that "the 'transacting any business' prong is 'not necessarily limited to acts which are a part of commerce or transactions for profit'" by citing Maryland precedent in that regard. Reply at 4–5 n.2 (ECF No. 28). In reality, the two D.C. Circuit cases that Media Matters cites merely state that subsection (a)(1) and its statutory counterpart in Maryland are coextensive with the limits of due process—not that "transacting business" encompasses any non-commercial conduct. *See Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 n.7 (D.C. Cir. 1981) ("The District of Columbia Court of Appeals has concluded that the 'transacting any business' provision of the Long Arm Statute is coextensive with the due process measure, but has not yet determined the limits of other sections."); *see also Margoles v. Johns*, 483 F.2d 1212, 1221 (D.C. Cir. 1973).

Moreover, Defendant Paxton was sued in his official capacity as the Attorney General of the State of Texas—not as an individual. "[A] suit against a state official in his or her official capacity is not a suit against the official as an individual, but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Consequently, "States do not fall under D.C.'s long-arm statute, because the statute only allows the District to 'exercise personal jurisdiction over a person,'" defined as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or

2

commercial entity . . . ." *West*, 60 F. Supp. 3d at 195 (quoting D.C. CODE § 13-421); *see also* D.C. CODE § 13-421.  Courts in this district have held that "[t]he law is clear that a persistent course of conduct may be deemed to constitute the transaction of business for the assertion of personal jurisdiction ***only*** if that persistent conduct is undertaken in that person's ***individual capacity*** rather than an official capacity conducting business for his employer." *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990) (emphasis added).  And that conclusion finds further support in the D.C. Circuit's well-established holding that D.C.'s long-arm statute does not apply to States themselves. *United States v. Ferrera*, 54 F.3d 825, 831–32 (D.C. Cir. 1995).

Second, neither the D.C. Court of Appeals nor the D.C. Circuit has ever held that a claim of personal jurisdiction against a non-forum statewide official acting in his official capacity can be construed as a suit against that official in his individual capacity, which is what would be necessary for the long-arm statute to apply here at all.  *See Trump*, 415 F. Supp. 3d at 106; *West*, 60 F. Supp. 3d at 196.

Lastly, construing this suit as one against Attorney General Paxton in his individual capacity would be extraordinarily improper because Plaintiffs do not, and cannot, plead facts sufficient to claim individual liability.

**II.     Hiring a process server to deliver a CID to Media Matters in D.C. does not support a finding of personal jurisdiction under section (a)(3).**

First, "limited communications initiated from outside the District of Columbia to a District resident do not qualify as an act 'in the District' for purposes of § 13-423(a)(3)." *Dyson v. Dutko Ragen Homes & Invs.*, No. 21-CV-02280 (APM), 2022 WL 1294484, at *4 (D.D.C. Apr. 27, 2022).  And use of a process server is simply a delivery mechanism akin to delivering a letter from

3

Texas—not an invocation of agency on the part of the server. Moreover, the act of hiring a process server is a governmental action, under the investigatory authority of the Texas Attorney General.[1]

Second, regardless of those realities, the hiring of a process server cannot constitute an "act or omission" within D.C., as required by subsection (a)(3). That provision "stops short of the outer limits of due process" and requires "commit[ting] an act in the District which causes injury in the District." *Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (internal quotation marks omitted). The import of Plaintiffs' claim that a process server was hired and delivered the CID in D.C. concerns personal jurisdiction, not a tort in and of itself, and for the reasons stated herein—that is not enough to establish personal jurisdiction.

Media Matters nonetheless relies on *Schleit v. Warren*, 693 F. Supp. 416 (E.D. Va. 1988), and various other Virginia precedents to argue that using a process server to serve the CID was tortious conduct that occurred in D.C. But in *Schliet*, the service itself was tortious because the claim in question was service of *abusive* process. 693 F. Supp. at 418 ("The narrow issue before the court is whether a party's service of abusive process confers jurisdiction over that party in the forum where process is served . . . ."). Here, in contrast, service of the CID functioned as an ***official act*** of a state law enforcement officer as part of an investigation, specifically to compel document production. And "the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the . . . state governments to enforce their laws." *United States v. White*, 322 U.S. 694, 700–01 (1944).

But even if it were the act of serving papers within D.C. that Plaintiffs claim is an injurious act, simply retaining a process server to serve papers on a D.C. plaintiff is insufficient to establish

---

[1] Notably, CIDs are commonly issued by all U.S. State Attorneys General, and so the ramifications of this ruling would affect the entire regulatory authority in all States—not just Texas.

4

personal jurisdiction. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1194 (D.C. Cir. 2013) (holding "retain[ing] the professional services of a District of Columbia firm" is not enough). Attorney General Paxton has taken no other action, and Plaintiffs have no evidence of additional actions that are imminent. Quite the contrary, they are speculative. The D.C. Circuit rejects "conclusory statements and intimations" as being sufficient to establish jurisdiction. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000). Plaintiffs have not pled facts that satisfy subsection (a)(3).

**III.   A finding of personal jurisdiction in this matter would be unprecedented, with long-reaching ramifications to every States' Attorneys General.**

The unprecedented character of Plaintiffs' argument also counsels against a holding that this Court has personal jurisdiction over Attorney General Paxton based on Plaintiffs' claims. It is highly unusual for a court to exercise personal jurisdiction over an out-of-state government official, as personal jurisdiction commonly concerns "commercial transactions," not investigatory authority vested upon an Attorney General under a foreign State's statutory law. *See, e.g., Kulko v. Super. Ct.*, 436 U.S. 84, 97 (1978). A number of D.C. cases have dealt with the issue of personal jurisdiction over a government official, raising a serious concern over whether the D.C. long-arm statute would even allow such a finding. *See Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 123 (D.D.C. 2016) ("States are not considered to be 'legal or commercial entities' meaning they are not included under [D.C.'s] long-arm statute."); *West*, 60 F. Supp. 3d at 194 (Bates, J.) (materially similar); *Phillips v. Montana Comm'n on Character & Fitness*, No. 20-1982 (CKK), 2021 WL 1721601, at *6 (D.D.C. Apr. 30, 2021) (Kollar-Kotelly, J.) (materially similar).

For all of the reasons set forth herein, and in Defendant's opposition to Plaintiffs' motion for preliminary injunction (ECF No. 26), the Court should deny Plaintiffs' motion.

| | |
|---|---|
| Dated: February 9, 2024 | Respectfully submitted, |
| | |
| /s/ Gene C. Schaerr | KEN PAXTON |
| GENE C. SCHAERR | Attorney General of Texas |
|   (D.C. Bar No. 416368) | |
| KENNETH A. KLUKOWSKI | BRENT WEBSTER |
|   (D.C. Bar No. 1046093) | First Assistant Attorney General |
| SCHAERR \| JAFFE LLP | |
| 1717 K Street NW, Suite 900 | GRANT DORFMAN |
| Washington, D.C. 20006 | Deputy First Assistant Attorney General |
| gschaerr@schaerr-jaffe.com | |
| kklukowski@schaerr-jaffe.com | JAMES LLOYD |
| | Deputy Attorney General for Civil Litigation |
| | |
| | CHRISTOPHER LAVORATO* |
| | Assistant Attorney General |
| | General Litigation Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711-2548 |
| | Telephone: (512) 475-4476 |
| | chris.lavorato@oag.texas.gov |
| | |
| | REUBEN W. BLUM* |
| | Assistant Attorney General |
| | General Litigation Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711-2548 |
| | Telephone: (512) 475-4117 |
| | reuben.blum@oag.texas.gov |
| | |
| | *Admitted *pro hac vice* |

*Attorneys for Defendant Ken Paxton, Attorney General of the State of Texas*