IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA,<br>P.O. Box 44811,<br>Washington, D.C. 20026;<br><br>*and*<br><br>ERIC HANANOKI,<br>Notice of address filed under seal pursuant to<br>LCvR 5.1(c)(1),<br><br>        Plaintiffs,<br><br>    v.<br><br>WARREN KENNETH PAXTON JR., in his<br>official capacity as Attorney General of the<br>State of Texas,<br>P.O. Box 12548,<br>Austin, TX 78711,<br><br>*and*<br><br>ANDREW BAILEY, in his official capacity<br>as Attorney General of the State of Missouri,<br>P.O. Box 899,<br>Jefferson City, MO 65102,<br><br>        Defendants. | Civil Action No. 24-cv-147-APM<br><br>[CIVIL RIGHTS ACTION]<br><br><br><br>**[PROPOSED]**<br>**SUPPLEMENTAL COMPLAINT** |

## INTRODUCTION

1.    Plaintiffs Media Matters for America and Mr. Eric Hananoki filed the operative

Complaint in this action on January 17, 2024. ECF No. 1.

2.    The Complaint named Texas Attorney General Ken Paxton, in his official capacity,

as the sole defendant, and pleaded four counts against him. Count I alleges that Paxton's issuance

of a civil investigative demand (the "Texas Demand") to Media Matters is unlawful retaliation in violation of Plaintiffs' First and Fourteenth Amendments rights. Count II alleges that the Texas Demand seeks sensitive and privileged documents and communications without adequate justification, in violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights. Count III alleges that the Texas Demand violates Plaintiffs' Fourteenth Amendment rights to due process by improperly subjecting them to Texas's jurisdiction and laws. Count IV alleges that Paxton's Demand violates Plaintiffs' rights to protect their confidential source information from disclosure under the District of Columbia and Maryland shield laws.

3.      Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs file this Supplemental Complaint for the purpose of setting forth occurrences and events "that happened after the date of the pleading to be supplemented." Specifically, the Missouri Attorney General's Office issued a civil investigative demand (the "Missouri Demand") to Media Matters on March 25, 2024. That same day, before Media Matters had even received the Missouri Demand at its office in D.C., the Missouri Attorney General also filed a petition to enforce the Demand in Cole County, Missouri, Circuit Court. The Missouri Attorney General hired a process server to serve Media Matters with that enforcement petition at its office in D.C. on March 28, 2024.

4.      In this Supplemental Complaint, Plaintiffs add Missouri Attorney General Andrew Bailey as a Defendant and plead the same four causes of action against Bailey that Plaintiffs' original Complaint pleaded against Paxton.

**SUPPLEMENTAL PARTY**

5.      Defendant Andrew Bailey is the Attorney General of the State of Missouri and is sued in his official capacity. Missouri law grants Bailey certain limited powers related to the issuance of civil investigative demands. *See, e.g.*, Mo. Rev. Stat. § 407.040 (Merchandising Practices Act); *id.* § 407.472 (Charitable Organizations and Solicitations Act). In particular, the

Attorney General may issue a civil investigative demand "[w]hen it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solicitation declared to be unlawful" under the Merchandising Practices Act. *Id.* § 407.040. As in Texas, the Missouri Attorney General is not required by statute to show probable cause or establish jurisdiction before issuing a civil investigative demand. Rather, state law authorizes him to do so, among other reasons, whenever he "believes it to be in the public interest that an investigation should be made." *Id.*

### JURISDICTION OVER SUPPLEMENTAL CLAIMS AND PARTY

6.      The grounds for the Court's subject matter jurisdiction over the claims pleaded below are the same as the grounds set forth in the original Complaint. *See* Compl. ¶¶ 11–12, ECF No. 1.

7.      This Court may exercise personal jurisdiction over Bailey in his official capacity as Attorney General of Missouri. Bailey, like Paxton, dispatched a process server into the District of Columbia to serve his enforcement petition at Media Matters's Washington, D.C. headquarters. He also effectuated service of the Missouri Demand in this District by mailing the Demand to Media Matters in the District. By engaging in these activities, Bailey has committed a tort in the District. Bailey has otherwise directed activity in the District by seeking to conduct an ongoing investigation into documents located here. Bailey has thereby availed himself of the District and subjected himself to the jurisdiction of its laws and courts.

8.      Bailey is a "person" for purposes of D.C. Code § 13-421 because he is a state officer sued for prospective injunctive relief under *Ex parte Young*.

9.      This Court has statutory long-arm jurisdiction over Bailey under D.C. Code § 13-423(a)(1), (3) and (4). Bailey has transacted business in the District by mailing his Demand into the District, seeking documents here, and employing and directing a process server to serve Media

Matters in the District with a Petition to enforce the Demand in Missouri state court. Bailey has caused tortious injury to Plaintiffs in the District through those actions taken in the District. Even if Bailey had not taken actions in the District to cause tortious injury to Plaintiffs, he is otherwise engaged in a persistent course of conduct in the District—and its courts—in his capacity as Missouri Attorney General.

### SUPPLEMENTAL ALLEGATIONS

10.     As alleged in the Complaint, ¶ 47, Bailey announced on November 19, 2023, that his "team [was] looking into" Plaintiffs' coverage of Musk and extremism on X. @AGAndrewBailey, X.com (Nov. 19, 2023, 4:46 PM ET), https://perma.cc/J463-656K.



11.     Bailey subsequently issued a "Notice of Pending Investigation" on December 11, 2023, demanding that Media Matters preserve certain documents. Ex. 3, Notice of Pending Investigation, Mo. Att'y Gen. (Dec. 11, 2023). But Bailey never formally served that Notice, instead electing only to email it to the generic email inbox "action@mediamatters.org." His press release announcing the Notice provided no explanation as to what possible basis he had for investigating or exercising jurisdiction over Media Matters, yet nonetheless slandered the organization as a group of "progressive tyrants." Ex. 4, *Attorney General Bailey Notifies Media Matters of Pending Investigation*, Mo. Att'y Gen. (Dec. 11, 2023).

12.     Plaintiffs filed the Complaint on January 17, 2024. ECF No. 1. Because Bailey had not issued any formal demand or initiated any formal process against Media Matters at that juncture, Plaintiffs did not name Bailey as a Defendant at that time.

13.     On January 18, 2024, one day after filing the Complaint, Plaintiffs moved for a temporary restraining order and preliminary injunction against Paxton. ECF No. 4. After Paxton confirmed that his office would take no steps to enforce the Texas Demand while the preliminary injunction motion was pending, ECF No. 11, the Court entered a Minute Order on January 23 denying the request for a TRO as moot.

14.     The Court held a hearing on the preliminary injunction motion on February 15, and thereafter ordered supplemental briefing on whether Paxton, when sued in his official capacity, is a "person" within the meaning of the District of Columbia's personal jurisdiction statute, D.C. Code § 13-421.

15.     On April 12, 2024, this Court granted a preliminary injunction against Paxton preventing him from taking any steps to enforce the Texas Demand or issue further demands. ECF Nos. 37, 38. In doing so, the Court made various factual determinations, including that Paxton's issuance of the Texas Demand "had the effect of chilling Plaintiffs' expressive activities nationwide" and "deprived D.C. residents [of] access to Plaintiffs' reporting." Mem. Op. at 22, ECF No. 37.

16.     On March 25, 2024, months after this lawsuit was filed but before the preliminary injunction motion against Paxton was resolved, Attorney General Bailey copied Paxton's playbook by issuing a Civil Investigative Demand of his own.

17.     Bailey's Demand, like Paxton's, seeks to rifle through Media Matters's most sensitive internal documents—donor records, internal correspondence, and journalistic source

material—in retaliation for Media Matters's reporting about X. Ex. 5, Civil Investigative Demand, Mo. Att'y Gen. (Mar. 25, 2024). Among other things, it seeks names, home addresses, and donation amounts for Missouri-based donors to Media Matters; internal communications about sources and uses of donated funds; internal communications about strategy; and confidential source information related to Mr. Hananoki's reporting. The Missouri Demand is, like the Texas Demand, incredibly broad in scope; for instance, it seeks several categories of documents without imposing any temporal limits on the requested production.

18.     The Missouri Demand is materially very similar to the Texas Demand, and in many respects is a word-for-word copy. Indeed, Bailey has described the Missouri Demand as "virtually identical" to the Texas Demand. Ex. 6 ¶ 20, Petition for Order to Enforce Civil Investigative Demand, *Missouri ex rel. Bailey v. Media Matters for Am.*, No. 24AC-CC02291 (Cole Cnty. Cir Ct. Mar. 25, 2024). For instance, the Texas Demand sought "all of Media Matters for America's external communications with Apple Inc., International Business Machine Corporation (IBM), Bravo television network, NBCUniversal, Oracle Corporation, and Comcast Corporation, Lions Gate Entertainment Corporation, Warner Bros Discovery Inc., Paramount Pictures Corporation, and Sony Group Corporation from November 1, 2023 to November 21, 2023." Compl. Ex. B at 7, ECF No. 1-4. The Missouri Demand similarly seeks "[a]ll communications with Apple, International Business Machine Corporation, Bravo Television Network, NBCUniversal, Oracle Corporation, Comcast Corporation, Lions Gate Entertainment Corporation, Warner Bros Discovery Inc., Paramount Pictures Corporation, or Sony Group Corporation from November 1, 2023, to March 25, 2024." Ex. 5 at 5.

19.     Substantial evidence indicates that Bailey issued the Missouri Demand to harass and retaliate against Plaintiffs, rather than for any good-faith investigative reason. For example,

6

although more than three months passed between Bailey's Notice of Pending Investigation and his issuance of the Missouri Demand, Bailey apparently expended little investigative effort in that time. Neither the Missouri Demand nor the Petition seeking to enforce it identifies *any* new facts regarding Media Matters. Both documents simply regurgitate the vague and groundless accusations leveled at Media Matters in the Notice.

20.     Similarly, Bailey's press release announcing the escalation in harassment was short on facts and long on invective. Among other things, it characterized Media Matters as a "political activist organization," described its reporting on X as "an "attempt to destroy X, because they [sic] cannot control it," and described its reporters as "radical 'progressives'" and "'progressive' activists masquerading as news outlets [sic]."  Ex. 7, *Attorney General Bailey Files Suit Against Media Matters for Refusal to Cooperate with Investigation*, Mo. Att'y Gen. (Mar. 25, 2024).

21.     Although Hananoki himself has not previously reported on Bailey, Bailey has, like Paxton, been subject to critical reporting from Media Matters.[1] Bailey's Demand, much like Paxton's, reeks of opportunistic retaliation.

22.     The Missouri Demand has a return date of April 15, 2024. Ex. 5 at 5.

23.     Media Matters received the demand by certified mail on April 1, 2024.

24.     Remarkably, Bailey filed an enforcement petition against Media Matters in Missouri state court on March 25—the same day he issued the Missouri Demand and a full *week* before Media Matters had even received the Demand in D.C. *See* Ex. 6. That Petition, citing this case, claims an immediate enforcement action is appropriate because Media Matters has resisted

---

[1] *E.g.*, Payton Armstrong, *On Salem Media, Jenna Ellis and Missouri Attorney General Andrew Bailey push states to ban health care for trans people*, Media Matters for Am. (Aug. 31, 2023). https://www.mediamatters.org/salem-media-group/salem-media-jenna-ellis-and-missouri-attorney-general-andrew-bailey-push-states.

Paxton's Demand. *Id.* ¶ 20. On Bailey's view, because Media Matters chose to vigorously defend its constitutional rights against Paxton rather than capitulate to his bullying, Bailey is free to disregard the basic dictates of due process—and Missouri state law—by enforcing a Demand without even serving it. This rush to court further illustrates that Bailey issued the Missouri Demand chiefly to harass and punish Media Matters, rather than for any bona fide investigatory purpose.

25.     Bailey served the Petition by dispatching a process server to Media Matters's D.C. office on March 28, 2024.

26.     Although Bailey's Demand purports merely to be investigating Media Matters, the Petition goes much further, affirmatively alleging that Media Matters "has used fraud to solicit donations from Missourians." Ex. 6 at 2. But the Petition provides zero factual support for that inflammatory suggestion, asserting only that Bailey "has reason to believe" that Media Matters has somehow violated Missouri law. *Id.* ¶ 22. The Petition also describes Media Matters and its employees as "radical 'progressives" who are "attempt[ing] to destroy X, because they cannot control it," and as "activists masquerading as [a] news outlet[]."*Id.* at 2.

27.     Moreover, the Petition makes clear that Bailey intends to rely solely upon his authority under the Merchandising Practices Act as a basis for issuing and enforcing the Demand. Ex. 6 ¶¶ 13–14, 16, 22–24; *see also* Ex. 7 (accusing Media Matters of acting in direct violation of the Missouri Merchandising Practices Act). But the Missouri Supreme Court has made clear that the Act applies only to "the protection of consumers who are the actual buyers in a sale." *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 241 (Mo. 2001). Media Matters makes no "sales" and has no "actual buyers" in Missouri or elsewhere. Bailey's choice to employ authority under a law that, on its face, has no possible application to Media Matters further demonstrates that his

conduct is not for any real investigative purpose, but instead simply to harass and retaliate against Media Matters.

28.     On April 15, 2024, the return date for the Missouri Demand, Media Matters replied to the Demand in a letter objecting to it in full. Ex. 8, Letter from Aria C. Branch to Jeremiah J. Morgan (April 15, 2024). In that letter, Media Matters informed Bailey of this Court's grant of a preliminary injunction against Paxton and requested that Bailey withdraw the Missouri Demand. *Id.* at 2.

29.     Bailey refused to withdraw the Missouri Demand in an email sent by one of his deputies on April 17, 2024. Ex. 9, Email from Jeremiah Morgan to Samuel Ward-Packard (Apr. 17, 2024, 5:04 PM). That email failed to explain the basis for Bailey's purported jurisdiction over Media Matters, nor did it acknowledge—let alone distinguish—this Court's preliminary injunction against Paxton's "virtually identical" Demand. *Id.* The only thing made clear by the email is that Bailey intends to proceed with his investigation and enforcement of the Missouri Demand regardless of this Court's preliminary injunction order against Paxton.

30.     Also on April 17, Bailey filed a Notice informing the Cole County, Missouri, Circuit Court of Media Matters's response to the Missouri Demand. Ex. 10, Notice of Filing Response to Civil Investigative Demand, *Missouri ex rel. Bailey v. Media Matters for Am.*, No. 24AC-CC02291 (Cole Cnty. Cir Ct. Apr. 17, 2024). That Notice asserted, improbably, that the Cole County Circuit Court had jurisdiction over Media Matters and was a proper venue because of the Missouri Attorney General's issuance of a letter in 2007 *exempting* Media Matters from any obligation to register as a charity in Missouri. *Id.* ¶ 5.

31.     The Missouri Demand and Petition have magnified and compounded the acute chill Plaintiffs suffered as a consequence of the Texas Demand. The Missouri Demand, unlike the Texas

Demand, is the subject of a pending enforcement action. It therefore represents a significant escalation: Moving to enforce creates an imminent possibility that Plaintiffs may be coerced into granting Bailey access to Plaintiffs' most sensitive papers.

32.     Bailey's enforcement action is also in a foreign venue with which neither Media Matters nor Hananoki has any ties.

33.     Media Matters is not registered as a foreign corporation in Missouri because it does not "transact business" in Missouri. Mo. Rev. Stat. § 351.572. Nor does it have a registered agent in Missouri. Further, Media Matters is not engaged in "the sale or advertisement of any merchandise in trade or commerce" in Missouri. *Id.* § 407.020. Nor is it targeting any "solicitation of any funds for any charitable purpose" at Missouri. *Id.*; *see also id.* § 407.453. Indeed, it is not even registered as a charity in Missouri because nearly two decades ago the Missouri Attorney General's Office itself concluded Media Matters was exempt from registration. Ex. 11, Letter from Rhonda Johnson to Megan B. Allen (July 12, 2007). Media Matters has never employed anyone in Missouri and has no physical presence in the state.

34.      Hananoki's reporting occurred entirely within Maryland and involved no contact with Missouri.

35.     Despite these readily ascertainable facts, Bailey's Petition seeking to enforce the Missouri Demand flatly asserts without support that "Media Matters transacts business in this county [*i.e.*, Cole County, Bailey's home jurisdiction]." Ex. 6 ¶ 5.

36.     Bailey's actions are particularly troubling in light of this Court's recent preliminary injunction ruling, which enjoined Paxton from further enforcing the Texas Demand. *See* ECF Nos. 37, 38. Bailey and Paxton are coordinating with one another. Bailey himself admitted as much in an interview on a St. Louis radio program: "Yeah, certainly we've coordinated with Texas. Texas

has launched a similar investigation and we're in talks with other states as well. This is a new front in the war, in the fight for free speech."[2] And Paxton expressly encouraged other Attorneys General to follow his lead, *see* Compl. ¶ 51, ECF No. 1, which Bailey has now done. It is thus no surprise that Bailey's Demand is virtually identical to Paxton's, effectively picking up Paxton's baton now that the Texas Demand is enjoined.

37.   Whether Bailey obtains access to Plaintiffs' papers or Paxton does makes no practical difference to Plaintiffs—the retaliation will have been accomplished either way.

### SUPPLMENTAL CLAIMS FOR RELIEF

### COUNT V
### (Against Bailey)

### First Amendment Retaliation in Violation of Plaintiffs' Rights Under the First and Fourteenth Amendments of the United States Constitution (42 U.S.C. § 1983)

38.   Plaintiffs incorporate all paragraphs above and in the original Complaint as if fully set forth in this paragraph.

39.   Bailey has violated, and continues to violate, Plaintiffs' First Amendment rights by launching an investigation and serving a burdensome Demand in retaliation for Plaintiffs' speech, press, and associational activities. Bailey's use of the power of his office is discouraging and will continue to discourage Plaintiffs from engaging in news coverage. The chill imposed by his retaliatory actions injures Plaintiffs' ability to investigate and publish news stories and further chills their ability to participate in a robust public discussion around political extremism on the X platform. And because Bailey has moved to enforce his lawless Demand, the chill is even more

---

[2] Tim Jones & Chris Arps Show, *MO A.G. Andrew Bailey: Missouri Doesn't Have Sanctuary Cities*, NewsTalkSTL at 5:32–58 (Dec. 12, 2023), https://omny.fm/shows/newstalk-stl/mo-a-g-andrew-bailey-missouri-doesnt-have-sanctuar.

acute, and the retaliatory effect even graver, than that caused by Paxton's Demand. Absent relief from this Court, that chill will continue.

40.     "[T]he law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

41.     The D.C. Circuit has long recognized First Amendment retaliation claims as "actionable precisely 'because retaliatory actions may tend to chill individuals' exercise of constitutional rights.'" *Crawford-El v. Britton*, 93 F.3d 813, 846 (D.C. Cir. 1996) (Henderson, J., concurring) (quoting *ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993)); *see also Perry v. Sindermann,* 408 U.S. 593, 597 (1972). That cause of action for First Amendment retaliation arises under 42 U.S.C. § 1983, which "has long [been] interpreted . . . to permit suits against officials in their individual capacities" for constitutional violations. *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020). To prevail on their retaliation claim, Plaintiffs must show: "(1) [they] engaged in conduct protected under the First Amendment; (2) [Bailey] took some retaliatory action sufficient to deter a person of ordinary firmness in [Plaintiffs'] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quotation marks omitted). Plaintiffs satisfy each element.

42.     *First*, Plaintiffs' investigative, newsgathering, and reporting activities are "legally protected interest[s]" under the First Amendment. *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (recognizing right of local news website operator to "gather news"); *see also*

*Flynt v. Rumsfeld*, 180 F. Supp. 2d 174, 175 (D.D.C. 2002) (explaining that "under the First Amendment the press is guaranteed a right to gather and report news"). Media Matters provides journalistic research and investigative reporting on a variety of matters and figures of public importance. Hananoki is a senior investigative reporter who for over a decade has published journalism about political extremism online, including on platforms like X. The "First Amendment applies in full force" to this newsgathering and commentary, and further "protect[s] a news outlet's editorial perspective [and] the way its beat reporters cover a given" public issue. *Washington Post v. McManus*, 944 F.3d 506, 518 (4th Cir. 2019) (quoting *Mia. Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)); *cf. Nat'l Org. For Women v. Fed. Commc'n Comm'n*, 555 F.2d 1002, 1010 (D.C. Cir. 1977) (explaining that "[t]he exercise of such editorial discretion, especially in connection with news reporting, sharply implicates First Amendment values"). Indeed, "the constitutional protection of the press reaches its apogee" where, as here, Plaintiffs are members of the press who investigate and write about "a public figure" or "on a matter of public concern." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)); *see also Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection.") (cleaned up); *Farah v. Esquire Mag.*, 736 F.3d 528, 539 (D.C. Cir. 2013) (similar).

43.     *Second*, Bailey has taken action adverse to Plaintiffs' protected activity in response to news coverage. His investigation, intrusive Demand, and Petition to enforce that Demand have already chilled Plaintiffs' speech and reporting activities and will continue to do so absent relief. Bailey's retaliatory conduct would "deter a person of ordinary firmness in [Plaintiffs'] position from speaking again." *Aref*, 833 F.3d at 258. This chill is exacerbated by the fear Plaintiffs will be

forced to defend their constitutional rights in a jurisdiction with which they have no meaningful connection.

44.     *Third*, there is no serious dispute that Bailey's investigation and Demand are causally linked to Plaintiffs' coverage of X and Musk. Bailey has publicly admitted as much. He announced his intention to investigate Plaintiffs on November 19, 2023, in direct response to a suggestion that conservative Attorneys General launch investigations into Media Matters based on its reporting on X in the preceding days. The material sought by Bailey's Demand further confirms the causal connection, as it singles out documents and communications related to Hananoki's November 16 article, as well as X and its officers. Indeed, the Missouri Demand is a near–carbon copy of the Texas Demand.

45.     Bailey's retaliatory campaign against Media Matters has injured Plaintiffs and will continue to do so absent relief from this Court. This harm will be redressed by an order declaring Bailey's conduct to be unlawful and enjoining him from further investigating Plaintiffs or enforcing his Demand. Such relief is appropriate under Section 1983. *Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 n.3 (D.C. Cir. 2004); *Anderson v. Reilly*, 691 F. Supp. 2d 89, 92 (D.D.C. 2010).

**COUNT VI**
**(Against Bailey)**

**Violation of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments of the United States Constitution (42 U.S.C. § 1983)**

46.     Plaintiffs incorporate all paragraphs above and in the original Complaint as if fully set forth in this paragraph.

47.     Bailey's issuance of the overbroad and retaliatory Demand further violates Plaintiffs' First and Fourth Amendment rights by unreasonably requiring them to turn over

sensitive and privileged materials, including those that impinge upon their association with other organizations.

48.     The Fourth Amendment limits the scope of administrative subpoenas. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–11 (1946). The First Amendment provides Plaintiffs a privilege against disclosure of materials that would chill their constitutional rights. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Where "the materials sought to be seized" by an administrative subpoena even "*may* be protected by the First Amendment," the requirements of the Fourth Amendment are applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (citing *Stanford v. Texas,* 379 U.S. 476, 485 (1965)) (emphasis added).

49.     Bailey has shown no such "scrupulous exactitude" in his Demand. Without any showing of cause or jurisdiction, Bailey has demanded that Plaintiffs produce a broad set of documents that implicate their core First Amendment rights. Indeed, Bailey seeks even broader information about Media Matters's donors than does Paxton.

50.     The Missouri Demand seeks, for example, swathes of documents related to Plaintiffs' donors, funding sources, expenditures, and employees, all of which are protected from compelled disclosure under the First Amendment. *E.g.*, *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021); *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

51.     Relatedly, the Missouri Demand seeks various kinds of "external communications" that would expose Plaintiffs' associations and collaborations with other groups, including on efforts like ongoing coalitions that include prominent civil rights organizations as well as technology experts and research organizations focused on the challenges of content moderation on X. "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in

15

advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP*, 357 U.S. at 462. Compelled disclosure of such associational materials must meet "exacting scrutiny." *Bonta*, 141 S. Ct. at 2383.

52.     The Missouri Demand further requires that Plaintiffs surrender internal communications and files regarding news articles, as well as communications with employees at X and its advertisers, again with no showing of cause. Bailey may not "rummage at large in newspaper files or [] intrude into or to deter normal editorial and publication decisions" under the First Amendment. *Zurcher*, 436 U.S. at 566; *see also Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012). Such "[b]road and sweeping state inquiries into these protected areas . . . discourage citizens from exercising rights protected by the Constitution." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971) (plurality opinion).

53.     It provides no meaningful relief to Plaintiffs that Bailey is authorized to enforce his Demand only through a petition in Missouri state court. *See* Mo. Rev. Stat. § 407.090. Missouri courts plainly lack personal jurisdiction over Plaintiffs, who should not be forced to subject themselves to foreign tribunals to defend their constitutionally protected rights. And Bailey has already exercised his authority to enforce the Missouri Demand in state court.

54.     Plaintiff Media Matters is incorporated under the laws of, and has its principal place of business in, the District of Columbia. Plaintiff Eric Hananoki is domiciled in Maryland. Missouri courts lack general jurisdiction over Plaintiffs. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021).

55.     Plaintiffs have not purposefully availed themselves of the privilege of conducting activities in Missouri, nor would any cause of action stemming from the Demand arise out of or relate to such purposeful contacts, if they existed. Missouri courts lack specific jurisdiction to

enforce the Demands against Plaintiffs. *See Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021), *reh'g en banc denied*, 32 F.4th 488 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 485 (2022); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 140 (4th Cir. 2020); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349–50 (D.C. Cir. 2000).

56.     With an action to enforce the Missouri Demand ongoing, Plaintiffs are faced with the ongoing prospect of either surrendering constitutionally protected materials in violation of their First and Fourth Amendment rights or subjecting themselves to proceedings in a foreign court that plainly lacks jurisdiction over them. That is no true choice at all.

57.     This ongoing violation of Plaintiffs' First and Fourth Amendment rights will be remedied by prompt injunctive relief from this Court setting aside the Demand.

**COUNT VII**
**(Against Bailey)**

**Violation of Plaintiffs' Due Process Rights Under the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)**

58.     Plaintiffs incorporate all paragraphs above and in the original Complaint as if fully set forth in this paragraph.

59.     The guarantee of due process in the Fourteenth Amendment "recognizes and protects an individual liberty interest" from being subjected to legal process in a jurisdiction with which a person has no contact, unless they willingly consent to such process. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

60.     For a state to exercise personal jurisdiction over a party in a manner consistent with due process, the party must have "'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Mere "foreseeability of causing *injury* in another State" is not a "'sufficient benchmark'

for exercising personal jurisdiction." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). "Instead, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

61.     Here, Bailey has sought to subject Plaintiffs to legal process under Missouri law—and has already hailed Plaintiff Media Matters into Missouri state court in an attempt to enforce his Demand—despite Plaintiffs' having no minimum contacts with Missouri and not being subject to either general or specific personal jurisdiction in that state. Plaintiffs do not avail themselves of Missouri law and had no reason to ever foresee being subject to Missouri's Charitable Organizations and Solicitations Law. Media Matters's mere "operation of a website accessible in [Missouri] is insufficient to satisfy the minimum-contacts requirement of the personal-jurisdiction inquiry" under the Due Process clause. *Fidrych*, 952 F.3d at 140.

62.     Plaintiffs are injured by the ongoing imposition of Missouri law on them by Bailey despite his clear lack of jurisdiction to do so. Bailey's hailing of them into Cole County court, his home jurisdiction, is a plain violation of fundamental due process principles. And—compounding the due-process injury—Bailey filed his enforcement action *before Media Matters had even received the Demand*.

**COUNT VIII**
**(Against Bailey)**

**Violation of Plaintiffs' Rights Under the District of Columbia's and Maryland's Reporters'**
**Shield Laws**

63.     Plaintiffs incorporate all paragraphs above and in the original Complaint as if fully set forth in this paragraph.

64.    Bailey's Demand violates Plaintiffs' rights under the District of Columbia's and Maryland's shield laws by seeking to compel disclosure of statutorily protected, confidential sources. D.C. Code §§ 16-4702, 4703; Md. Cts. & Jud. Proc. Code Ann. § 9-112(b), (c).

65.    The D.C. shield law provides absolute protection against compelled disclosure of sources, D.C. Code § 16-4703(b), and qualified protection against compelled disclosure of other information, including "any news or information procured . . . in the course of pursuing [] professional activit[ies]," including notes, to the extent such information is not publicly disclosed, *id.* § 16-4702. *See also Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994). The shield law protects media organizations and their employees acting within the scope of a contract in any "news gathering or news disseminating capacity." D.C. Code § 16-4702.

66.    Maryland's shield law provides materially equivalent protections. *See* Md. Cts. & Jud. Proc. Code Ann. § 9-112(b)(1), (c)(2).

67.    To overcome even the qualified privilege for non-source information, both statutes provide that parties seeking news or information must establish by clear and convincing evidence that (1) the news or information is relevant to a significant legal issue before a party that has a power to issue a subpoena; (2) the news or information could not, with due diligence, be obtained by any alternative means; and (3) there is an overriding public interest in the disclosure. Still, courts have quashed subpoenas that seek information from news media, even when all three prongs of the qualified privilege apply. *See, e.g.*, *Bice v. Bernstein*, No. 93-CA-22258, 1994 WL 555379, at *1–*2 (Md. Cir. Ct. Apr. 20, 1994); *Grunseth*, 868 F. Supp. at 336.

68.    Bailey's Demand is consequently infirm because its overbreadth will require that Plaintiffs turn over constitutionally protected sources. The Demand asks for any and all documents related to Plaintiffs' November 16 article—including internal documents—as well as external

communications between Plaintiffs and others. What is more, the Demand seeks documents regarding Plaintiffs' organizational structure, as well as the specific X accounts used to obtain the screenshots contained in the November 16 article. In essence, the Demand functions as a boundless inquiry into Plaintiffs' organization and news gathering capacity—precisely the kind of pernicious subpoena that these shield laws were designed to combat.

69.     Bailey's Demand not only seeks privileged material in violation of Plaintiff's First Amendment rights, but also chills Plaintiffs' news gathering capacity. An order setting aside the Demand is the only legal mechanism to ensure that Plaintiffs' rights—protected by the Constitution and by state statute—are secure.

## SUPPLEMENTAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask for the following supplemental relief:

70.     Declare that Bailey's Demand and Petition constitute a First Amendment retaliatory action in violation of Plaintiffs' rights under the First and Fourteenth Amendments of the U.S. Constitution.

71.     Declare that Bailey's Demand and Petition violate Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution.

72.     Declare as a matter of law that courts in the State of Missouri cannot exercise personal jurisdiction over Plaintiffs in any imminent action to enforce the Demand, including that prematurely filed by Bailey.

73.     Declare that Bailey's Demand seeks disclosure of information protected by the Maryland and D.C. shield laws.

74.     Preliminarily enjoin Bailey, his officers, agents, servants, and employees from taking any further action to enforce the Missouri Demand or further investigating Plaintiffs in violation of their constitutional rights.

75.     Permanently enjoin Bailey, his officers, agents, servants, and employees from taking any further to enforce the Missouri Demand or further investigating Plaintiffs in violation of their constitutional rights.

76.      Award Plaintiffs their costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law.

77.     Grant Plaintiffs any and all other relief that the Court deems just and proper.

Dated: April 18, 2024                        Respectfully submitted,

                                            */s/ Aria C. Branch*

                                            **ELIAS LAW GROUP LLP**
                                            Aria C. Branch (DC 1014541)
                                            Elizabeth C. Frost (DC 1007632)
                                            Christopher D. Dodge (DC 90011587)
                                            Jacob D. Shelly (DC 90010127)
                                            Elena A. Rodriguez Armenta (DC 90018798)
                                            Daniela Lorenzo (DC 90022335)
                                            Omeed Alerasool (DC 90006578)
                                            Samuel T. Ward-Packard (DC 90005484)
                                            250 Massachusetts Ave. NW, Suite 400
                                            Washington, DC 20001
                                            T: (202) 968-4652
                                            abranch@elias.law
                                            efrost@elias.law
                                            cdodge@elias.law
                                            jshelly@elias.law
                                            erodriguezarmenta@elias.law
                                            dlorenzo@elias.law
                                            oalerasool@elias.law
                                            swardpackard@elias.law

                                            Abha Khanna*
                                            1700 Seventh Ave, Suite 2100
                                            Seattle, WA 98101
                                            T : (206) 656-0177
                                            akhanna@elias.law

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (DC 420440)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Email: tboutrous@gibsondunn.com

Amer S. Ahmed (DC 500630)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs Media Matters for America and Eric Hananoki*