**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

MEDIA MATTERS FOR AMERICA,
ERIC HANANOKI,

                Plaintiffs,

       v.

WARREN KENNETH PAXTON JR., in his
official capacity as Attorney General of the
State of Texas,

ANDREW BAILEY, in his official capacity as
Attorney General of the State of Missouri

              Defendants.

No. 24-cv-147
**\*Oral Hearing Requested\***

**MISSOURI ATTORNEY GENERAL ANDREW BAILEY'S**
**OPPOSITION TO TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

  I.   Factual background ....................................................................................................... 3

  II.  The Missouri Attorney General launched an investigation based on well-established statutory authority. .......................................................................................................... 5

  III. Media Matters began exercising its legal rights in Missouri state court. ............................ 7

SUMMARY OF ARGUMENT ................................................................................................ 7

ARGUMENT ......................................................................................................................... 10

  I.   *Younger* Abstention Applies and Dismissal is Required. ............................................... 10

     A.  The second *Younger* category applies. ...................................................................... 11

     B.  The third *Younger* category also applies. ................................................................... 14

     C.  The ongoing proceeding in Missouri state court implicates important state interests and affords Media Matters an adequate opportunity to raise its federal claims............ 16

     D.  Media Matters has waived the issue whether any exception to abstention applies, and in any event, no exception applies. ....................................................................... 18

     E.  Media Matters consented to personal jurisdiction in Missouri state court. .................. 22

     F.  Fundamental limits on federal equity reinforce the need to abstain. ........................... 23

  II.  There is No Personal Jurisdiction and, Therefore, the Case Should Be Dismissed.... 23

     A.  Plaintiffs have not satisfied the long-arm statute. ...................................................... 24

     B.  Personal jurisdiction here would violate the Due Process Clause. ............................... 26

     C.  Media Matters' jurisdictional argument is self-defeating. ........................................... 28

  III. Media Matters Cannot Establish a Justiciable, Ripe Injury, Nor the Absence of an Adequate Remedy at Law. ...................................................................................... 29

  IV. There Is No Likelihood of Success on the Merits. ....................................................... 32

     A.  Media Matters is unlikely to succeed on its retaliation claim. ..................................... 32

     B.  Media Matters' other claims are likewise unlikely to succeed. .................................... 34

  V.  Media Matters Will Not Suffer Irreparable Harm. ...................................................... 36

  VI. The Balance of Equities and Public Interest Decisively Favor Missouri. ................... 37

CONCLUSION ..................................................................................................................... 38

CERTIFICATE OF COMPLIANCE .................................................................................... 39

CERTIFICATE OF SERVICE .............................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Target Corp.*, 357 F.3d 768 (8th Cir. 2004).............................................................. 16, 19

*ADR Tr. Corp. v. Thornton*, 41 F.3d 1539 (D.C. Cir. 1994)...................................................... 35

*AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849 (D.C. 1981)........................................ 25

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ......................................... 35

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ...................................................................... 31

*Associated Producers, LTD v. Vanderbilt U.*, 76 F. Supp. 3d 154 (D.D.C. 2014)...................... 27

*\*Backpage.com, LLC v. Hawley*, No. 4:17-CV-1951,
    2017 WL 5726868 (E.D. Mo. Nov. 28, 2017)................................................... 1, 13, 14, 15

*Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332 (10th Cir. 1984) ............................. 31

*Berrada Properties Mgt. Inc. v. Romanski*, 608 F. Supp. 3d 746 (E.D. Wis. 2022) ............. 14, 18

*Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673 (Mo. App. S.D. 2002)..................................... 22

*Cameron v. Johnson*, 390 U.S. 611 (1968)................................................................................ 34

*Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874 (8th Cir. 2002) ............................ 13, 16

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)...................... 36

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995)...................... 36

*Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220 (9th Cir. 2023) ............................................. 16

*Dyson v. Dutko Ragen Homes & Investments*, No. 21- CV-02280 (APM), 2022 WL 1294484
    (D.D.C. Apr. 27, 2022) ..................................................................................................... 26

*Everett v. Vance*, 685 S.W.3d 495 (Mo. App. W.D. 2023) ....................................................... 22

*Ex parte Young*, 209 U.S. 123 (1908)....................................................................................... 23

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1 (D.D.C. 2009) ...... 27

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)....................................... 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ............................... 27

*Forras v. Rauf*, 812 F.3d 1102 (D.C. Cir. 2016) ........................................................... 26

*Geier v. Missouri Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) .................................. 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................................. 26

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ............................................. 14, 31

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ...................... 23

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ........................................... 27

*Holder v. Haarman & Reimer Corp.*, 779 A.2d 264 (D.C. 2001) ................................................ 24

*Houston Community College System v. Wilson*, 595 U.S. 468 (2022) ................................... 32, 34

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ...................................................... passim

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ........................................................................................ 24

*J. & W. Seligman & Co. Inc. v. Spitzer*, No. 05CIV.7781,
2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007) ........................................................... 10, 14

*JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) ................................... 10, 16

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) ............................... 5

*Jones v. District of Columbia*, 177 F. Supp. 3d 542 (D.D.C. 2016) ............................................ 36

*\*Juidice v. Vail*, 430 U.S. 327 (1977) ...................................................... 14, 15, 17, 20

*Kim v. Fin. Indus. Regul. Auth., Inc.*, No. 1:23-CV-02420 (ACR),
2023 WL 6538544 (D.D.C. Oct. 6, 2023) ................................................................. 37

*Lewis v. Mutond*, 62 F.4th 587 (D.C. Cir. 2023) ........................................................... 27

*Lupin Pharmaceuticals, Inc. v. Richards*, No. 15-1281,
2015 WL 4068818 (D. Md. July 2, 2015) ................................................................. 15

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................... 10

*Middlesex Cnty. Ethics Comm. v. Garden State B. Ass'n*, 457 U.S. 423 (1982) ......................... 13

*Missouri v. Media Matters*, 24AC-CC02291 (Apr. 18, 2024) ...................................................... 7

*Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986) ........................... 26, 27

*Moore v. Sims*, 442 U.S. 415 (1979) ...................................................................................... 18

*Mouzavires v. Baxter*, 434 A.2d 988 (D.C. Cir. 1981) .............................................................. 23

*Music Makers Holdings v. Sarro*, No. RWT-09-cv1836,
 2010 WL 2807805 (D. Md. July 15, 2010) ........................................................................ 28

*Natl. Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985) ......... 29, 31

*Natl. Park Hosp. Ass'n v. Dept. of Int.*, 538 U.S. 803 (2003) ................................................... 29

*New Eng. Carpenters Pension Fund v. Haffner*, 391 S.W.3d 453 (Mo. App. S.D. 2012) ............ 7

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ........................................................................... 9, 32

*PDX N., Inc. v. Commr. New Jersey Dept. of Lab. and Workforce Dev.*,
 978 F.3d 871 (3d Cir. 2020) ............................................................................................. 13

*\*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ............................................................. 17, 20, 30

*Perez v. Ledesma*, 401 U.S. 82 (1971) ..................................................................................... 19

*Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. 2001) ..................................... 6

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876 (9th Cir. 2011) ............................ 17

*Power Co. of Am., L.P. v. FERC*, 245 F.3d 839 (D.C. Cir. 2001) ............................................... 19

*Reisman v. Caplin*, 375 U.S. 440 (1964) ............................................................................... 9, 29

*Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.*,
 665 N.E.2d 914 (Ind. App. 1996) ..................................................................................... 22

*Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102 (D.D.C. 2012) .............................................. 38

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108 (D.D.C. 2015) ................. 36

*Slate v. Kamau*, No. 20-CV-3732 (BAH), 2021 WL 3472438 (D.D.C. Aug. 6, 2021) ............... 26

*\*Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69 (2013) ......................................................... passim

*State ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385 (Mo. 1980) .......................................... 17, 34

*State ex rel. Koster v. Charter Communications, Inc.*,
 461 S.W.3d 851 (Mo. App. W.D. 2015) ..................................................................... 7, 12, 15

*State ex rel. Nixon v. Telco Directory Pub.*, 863 S.W.2d 596 (Mo. 1993) .................................. 20

*State ex rel. Rogers v. Cohen*, 262 S.W.3d 648 (Mo. 2008) .......................................................... 3

*State v. Shaw*, 847 S.W.2d 768 (Mo. 1993) ................................................................................. 20

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998) ........................................................ 10

*Stroman Realty v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ....................................................... 28

*State ex rel. Antoine v. Sanders*, 724 S.W.2d 502 (Mo. 1987) ................................................... 22

*\*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ..................................................... 9, 30, 31

*United States v. Kulukundis*, 329 F.2d 197 (2d Cir. 1964) ......................................................... 31

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ................................................................. 3

*Walden v. Fiore*, 571 U.S. 277 (2014) .............................................................................. 25, 26, 28

*Weitzel v. Div. of Occupational and Prof. Licensing of Dept. of Com. of State of Utah*,
240 F.3d 871 (10th Cir. 2001) ............................................................................................ 18

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) .............................................................. 23

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................................... 10, 37

*Wisc. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) .............................................................. 37

*X Corp. v. Media Matters for America*, No. 4:23-cv-1175 (N.D. Tex. Nov. 20, 2023) ........... 4, 33

*Yelp Inc. v. Paxton*, No. 23-CV-04977-TLT,
2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ..................................................... 14, 16, 21

*\*Younger v. Harris*, 401 U.S. 37 (1971) ......................................................................... 1, 10, 19

**Other Authorities**

Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for
More Than Four Months*, Variety (Apr. 15, 2024) ...................................................... 4, 33

Vesper Henry & Ari Drennen, *Seen but not heard: The New York Times Failed to Quote Trans
People in Two-Thirds of Stories on Anti-Trans Legislation in a One-Year Period* (March
26, 2024) ............................................................................................................................ 34

Wright & Miller, Federal Practice and Procedure ................................................................. 10, 19

## INTRODUCTION

How shocking it would be if the Missouri Attorney General asked a state court to issue an order preventing *this* Court from hearing this case.  Yet Media Matters seeks exactly that extreme remedy, just in reverse.  Media Matters does not dispute that it can raise all its claims and defenses in the ongoing proceeding in Missouri state court.  It has already begun doing so.  It filed a motion to exercise legal rights guaranteed by Missouri law, which the state court granted.  Nevertheless, Media Matters now asks a federal court in the District of Columbia to enter an order that would force the courts of the State of Missouri to stop adjudicating an ongoing case.  That is not only a transparent attempt to get two bites at the apple; it is also an astonishing attack on federalism.

The Supreme Court has not minced words, saying that the very thing Media Matters tries here imposes "evils" on federal courts.  *Huffman v. Pursue, Ltd*., 420 U.S. 592, 608 (1975).  It is thus no wonder that other federal courts regularly reject attempts by parties like Media Matters to challenge state subpoenas in federal court when a state proceeding is already ongoing.  *E.g.*, *Backpage.com, LLC v. Hawley*, No. 4:17-CV-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).  And rightly so.  As the Supreme Court has long made clear, including recently, federal courts lack equity jurisdiction to issue orders that have the effect of shutting down existing state court proceedings.  Media Matters can raise every one of its arguments in Missouri state court.

Nor can Media Matters prevail on any of the four traditional factors for equitable relief to obtain a temporary restraining order or preliminary injunction.

First, Media Matters' contention that it will be harmed if the civil investigative demand for information and materials is enforced fails because there is no immediate enforcement right now.  There is only an enforcement *proceeding*.  The civil investigative demand—with which Media

1

Matters has refused to comply—will not be enforced until Media Matters has had a full and fair opportunity to raise all its claims in state court. Unlike Media Matters' attempt to litigate here at breakneck speed, the Missouri Attorney General has not filed any emergency motion. There is no current injury at all, much less one imminently impending.

No better is Media Matters' assertion that it is injured by having to litigate the questions at all. Media Matters is going to litigate these questions in one forum or another. The only question is where. Media Matters asserts that Missouri courts "obviously lack personal jurisdiction" over Media Matters, and so any lawsuit filed in Missouri harms Media Matters. ECF 49-1 at 35. But Media Matters has already consented to personal jurisdiction in Missouri state court by seeking (and obtaining) relief under state law. And Media Matters' argument is self defeating. In insists that *this* Court has jurisdiction over the Missouri Attorney General simply because he mailed something into the District. *Id.* at 23. Yet Media Matters does much more than that in Missouri. It writes articles about events in Missouri and circulates those articles in Missouri. *Id.* at 12 n.11. It distributes newsletters to the email addresses of residents of Missouri. And it solicits donations from residents of Missouri. If this Court has jurisdiction over the Attorney General because he mailed one document, then Missouri courts have jurisdiction over Media Matters ten times over.

Even stranger is Media Matters' retaliation claim. Media Matters bases its lawsuit on its contention that the Attorney General decided to "retaliat[e]" against Media Matters because Media Matters wrote one single article criticizing him. *Id.* at 12. That allegation is not just wrong; it is not even plausible. Like other statewide officials, the Missouri Attorney General is regularly criticized by other media outlets, and Media Matters cannot identify even a single instance where the Missouri Attorney General has responded with a civil investigative demand for information and materials. The reason is simple: the Attorney General filed the civil investigative demand not

because Media Matters criticized him once, but to investigate whether Media Matters committed fraud or deception in soliciting donations from residents of Missouri. There is nothing illegal about investigating business deception or fraud, something the Attorney General does routinely as authorized by law. If Media Matters thinks otherwise, it is free to raise its arguments in the ongoing state court proceeding, rather than asking this Court to enter an extreme order preventing the State of Missouri, statutorily represented by the Attorney General, from litigating in its own courts.

## BACKGROUND

### I.   Factual background

Although Media Matters presents itself as a charitable news organization, there is reason to believe it has engaged in fraud and deception to solicit donations from Missourians. Ex. A, Declaration of Steven Reed ¶¶ 6–11. Because investigations necessarily require some level of secrecy, the State of Missouri is not required to show its hand. As the Supreme Court has long held, the point of a pre-complaint investigation is to seek "information from those who best can give it and who are most interested in not doing so." *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950). So courts routinely stress the need for investigations to "be conducted in secret"; indeed, the "person being investigated may not be aware of the proceedings." *State ex rel. Rogers v. Cohen*, 262 S.W.3d 648, 652–53 (Mo. 2008). Nevertheless, the State is able to discuss accusations and evidence that have already been made public.

Media Matters is credibly accused of defaming the social media platform X (formerly Twitter) by falsely representing that X routinely populates advertisements for brands like Apple, IBM, and Xfinity next to extremist, fringe content. Reed decl. ¶¶ 6–11. According to a lawsuit filed by X, Media Matters' statements were entirely and maliciously false. "Media Matters knowingly and maliciously manufactured side-by-side images depicting advertisers' posts on X Corp.'s social media platform beside Neo-Nazi and white-nationalist fringe content and then

3

portrayed these manufactured images as if they were what typical X users experience on the platform." Complaint, *X Corp. v. Media Matters for America*, No. 4:23-cv-1175, ECF 1 ¶ 1 (N.D. Tex. Nov. 20, 2023).  Media Matters did this by "manipulat[ing] the algorithms … to bypass safeguards."  *Id.*  ¶¶ 7–8.   While Media Matters insisted that paid advertisements regularly "appeared alongside the fringe content," in fact that was true "for *only one* viewer (out of more than 500 million) on all of X: *Media Matters*."  *Id.* ¶ 13 (emphasis in original); Reed decl. ¶¶ 8–10.  Yet Media Matters' false "reporting" had the desired effect: advertisers withdrew from X in droves.

The brand-safety organization DoubleVerify recently debunked Media Matters' assertion, confirming that the allegation that X was regularly populating advertisements next to fringe content is false.  The organization, "which provides brand-safety measurement ratings for digital platforms to major advertisers," recently stated that X's "Brand Safety Rates" were nearly perfect—99.99%—during the very time when Media Matters accused X of regularly posting brand advertisements next to fringe content.  Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for More Than Four Months*, Variety (Apr. 15, 2024);[1] Reed decl. ¶ 10.

Similarly, the federal district court overseeing the X lawsuit against Media Matters recently previewed that the court believes X's lawsuit should proceed toward trial.  In rejecting Media Matters' request to stay discovery, the court held that, on a preliminary view, "it appears that Plaintiff [X Corp.] sufficiently pleads facts supporting its claims."  *X Corp.*, Order denying motion

---

[1] https://variety.com/2024/digital/news/x-twitter-brand-saftey-rate-doubleverify-apology-1235971603/

to stay discovery, ECF 54 at 8.[2]  The court further noted that Media Matters' argument on the merits was the "weakest" argument it had presented.  *Id.*

## II.   The Missouri Attorney General launched an investigation based on well-established statutory authority.

Media Matters has substantial connections with Missouri.  As Media Matters acknowledges, it writes articles about events in Missouri.  ECF 49-1 at 12 n.11.  It distributes a newsletter to thousands of readers in Missouri.  *Cf. Johnson v. TheHuffingtonPost.com, Inc*., 21 F.4th 314, 318 (5th Cir. 2021) (prohibiting exercising jurisdiction when a website is merely available in a venue, but permitting exercising jurisdiction when a media organization does more, such as "interact[ing] with its visitors" in that venue).  And though it denies "specifically targeting Missouri" in its nationwide fundraising drives, it implicitly concedes that it solicits donations from Missourians.  ECF 49-3 ¶¶ 24–25.

"The Missouri Attorney General's Office discovered that Media Matters not only distributes its newsletter in Missouri, but engages in internet and email solicitations, phone solicitations, and in-person solicitations for fundraising."  Reed decl. ¶ 7.  In its public financial disclosures, Media Matters identifies Missouri "as a state in which it 'is registered or licensed to solicit contributions or has been notified it is exempt from registration.'"  *Id.* (quoting Form 990, Media Matters (2021)).[3]  Because of Media Matters' extensive activities in Missouri, it "specifically communicated with the Missouri Attorney General's Office to seek an exemption from registration for its fundraising in Missouri."  Reed decl. ¶ 7.  Missouri law permits 501(c)(3) organizations to solicit donations without registering.  Mo. Rev. Stat. § 407.456.2(6).

---

[2] https://storage.courtlistener.com/recap/gov.uscourts.txnd.383454/gov.uscourts.txnd.383454.54.0.pdf

[3] https://cloudfront.mediamatters.org/static/D8File/2023/11/20/fy21-mmfa-form-990-public-disclosure.pdf?VersionId=7yQZc6sgNQflOrjdO1GHlsPMHmzi6HWD

The Missouri Attorney General grew concerned about the representations that Media Matters provides to Missourians as it solicits donations and whether those representations are unlawfully deceptive. For example, if Media Matters misrepresents what it intends to do with donations or misrepresents the nature of the company as it solicits donations, that is a hand-in-glove violation of Missouri's consumer protection statute, which forbids "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose." Mo. Rev. Stat. § 407.020. This statute is broad. Its words "cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001).

So the State of Missouri, through the Attorney General, launched an investigation into whether Media Matters violated Missouri law when soliciting donations from Missourians. Reed decl. ¶ 11. The Missouri Attorney General "routinely" investigates potential violations of Missouri's consumer protection statutes, and begins those investigations with a civil investigative demand for information and materials "dozens" of times each year. *Id.* ¶¶ 4, 11. Missouri's statute gives the State authority to investigate (1) whenever "it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solicitation declared to be unlawful by this chapter" or (2) whenever "he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any such method, act, use, practice or solicitation." Mo. Rev. Stat. § 407.040.

Using this authority, the State issued a "civil investigative demand, or "CID" to Media Matters by mail. *Id.* ¶ 12. A CID is an administrative subpoena. *State ex rel. Koster v. Charter*

*Communications, Inc.*, 461 S.W.3d 851, 855–57 (Mo. App. W.D. 2015).  Then, because Media Matters had already made its position clear that it would not comply with any CID related to its in-state solicitations and false statements about X unless forced by a court to do so, the State of Missouri filed an enforcement action in state court.  *Id.* ¶ 14.  Missouri law permits a party in litigation to avoid waiting to take action when doing so would be futile.  *E.g.*, *New Eng. Carpenters Pension Fund v. Haffner*, 391 S.W.3d 453, 460 (Mo. App. S.D. 2012).

### III.    Media Matters began exercising its legal rights in Missouri state court.

Media Matters has already begun defending itself in Missouri state court.  For example, Missouri law grants any party the legal right to exercise one peremptory strike against a judge.  *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. 2010) ("Rule 51.05 grants a party the absolute right to disqualify a judge once without cause or any showing of prejudice.").  The very first thing Media Matters chose to do in the litigation in state court was not to contest personal jurisdiction, but instead to exercise this legal right.  On the same day an attorney for Media Matters entered its appearance in state court, the company moved to transfer the case to a new judge in state court.  Motion, *Missouri v. Media Matters*, 24AC-CC02291 (Apr. 18, 2024).[4]  Then Media Matters scheduled a hearing on the motion.[5]  The motion was granted.

### SUMMARY OF ARGUMENT

**I.** The Court should abstain under *Younger* and dismiss.  *Younger* is jurisdictional and, except in extraordinary circumstances, requires federal courts to dismiss federal lawsuits that would have the practical effect of enjoining state court proceedings.  Here, there is an ongoing enforcement proceeding in state court.  Binding Supreme Court precedent requires this Court to

---

[4]   https://www.courts.mo.gov/fv/c/Application%20for%20Change%20of%20Judge.PDF?courtCode=19&di=3131776

[5] https://www.courts.mo.gov/fv/c/Notice%20of%20Hearing.PDF?courtCode=19&di=3131778

presume that forum is adequate, and Media Matters does not deny that it will receive a full and fair opportunity to present its defenses in state court.  Indeed, Media Matters has already consented to personal jurisdiction in state court.  Missouri law requires a defendant to object to personal jurisdiction at the "first opportunity."  Media Matters declined, instead opting to first exercise other legal rights.  It has already filed, and received, legal relief in the ongoing enforcement proceeding.

The Supreme Court has said there are some (exceedingly narrow) exceptions to *Younger*, but Media Matters does not plead or argue that those apply here.  As Media Matters bears the burden, the issue is waived.  In any event, the "bad-faith" exception applies only to accusations of bad faith about state court judges, not prosecutors.  Similarly, Media Matters does not and cannot contend that Missouri's statute is "patently invalid."  It has been in place for 60 years and has repeatedly survived legal challenges under federal law.  No exception to *Younger* applies.

**II.** Media Matters has not established personal jurisdiction over the Missouri Attorney General.  The D.C. long-arm statute does not extend to merely using a process-server to serve a lawsuit.  And personal jurisdiction here would violate the Due Process Clause.  Courts regularly conclude that a defendant does not "purposefully avail" themselves of a forum merely by sending mail into that forum.  Media Matters' argument is also deeply ironic.  It contends that merely sending mail into D.C. subjects the Missouri Attorney General to personal jurisdiction, but then it flatly states that Missouri courts "obviously" lack jurisdiction over Media Matters even though Media Matters' contacts with Missouri are far more substantial.  Media Matters admits, for example, that it solicits donations from residents in Missouri.

**III.** Other jurisdictional issues similarly doom Media Matters' case.  Media Matters seeks prospective injunctive relief, but to do that, it must establish that it lacks an adequate remedy other than an injunction by this Court.  It cannot do so.  The Supreme Court has already held that there

exists an adequate remedy when a party is able to challenge a request for documents in state court. *Reisman v. Caplin*, 375 U.S. 440 (1964).  Unlike under Texas law, which this Court determined did not permit Media Matters to challenge the CID, Missouri law expressly authorizes Media Matters to challenge the CID in state court.

Media Matters also has not established ripeness.  As the Ninth Circuit concluded, where a CID is not self-executing and a party can raise its defenses in state court, an action in federal court challenging the CID is not ripe.  *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022).

**IV.** Media Matters is unlikely to succeed on the merits.  Under binding Supreme Court precedent, a retaliation claim can proceed only if the government action could not be justified by any legitimate motive.  For example, the existence of probable cause necessarily defeats a claim of retaliatory arrest—no matter the arresting officer's motive.  *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).  Here, there is probable cause that Media Matters has been deceptive.  Moreover, the Supreme Court has held that adverse actions are not actionable if they are "immaterial."  Merely having to litigate in state court instead of federal is not a material injury.

The other claims by Media Matters—which this Court declined to accept with respect to Texas—are similarly meritless.  The First Amendment case law cited by Media Matters expressly *permits* using subpoenas to seek this kind of information; the state shield laws do not apply extraterritorially; and while a court's alleged inability to exercise personal jurisdiction is grounds for a motion to dismiss, a plaintiff does not commit a constitutional tort by suing somebody in that venue.  Media Matters has also failed to develop many of these arguments.  They are thus waived.

**V.** Media Matters has no irreparable harm because it has an adequate remedy in state court.

**VI.** The balance of equities favors Missouri.  Media Matters' harms are self-inflicted, and its attempt to enjoin state courts from proceeding would impose grave harms to federalism.

**ARGUMENT**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11 Wright & Miller, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)).  The preliminary injunction factors are well established: plaintiffs must show (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citations omitted).  The first factor—success on the merits—includes demonstrating a likelihood of establishing jurisdiction.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913–14 (D.C. Cir. 2015).  Here, Media Matters cannot establish jurisdiction or any of the other factors for a preliminary injunction.

I. ***Younger* Abstention Applies and Dismissal is Required.**

The claim against the Missouri Attorney General is crucially different from the claim against the Texas Attorney General in a dispositive respect: there is an ongoing proceeding to enforce the CID in state court.  When a public official initiates a proceeding in state court, federal courts must, "except in extraordinary circumstances," abstain from suits that would interfere with that ongoing state proceeding.  *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004).  This doctrine is "treated as jurisdictional."  *Steel Co. v. Citizens for a Better Envt*., 523 U.S. 83, 100 n.3 (1998) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).  And "[w]here the *Younger* requirements are met, the appropriate remedy is dismissal."  *J. & W. Seligman & Co. Inc. v. Spitzer*, No. 05CIV.7781, 2007 WL 2822208, at *3 (S.D.N.Y. Sept. 27, 2007).

The reason for abstention is both practical and compelled by foundational concepts of federalism.  On the practical side, when a state proceeding is already ongoing, abstention "avoid[s]

a duplication of legal proceedings." *Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  More importantly, abstention ensures "a proper respect for state functions."  *Id.*  "[I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies."  *Huffman v. Pursue, Ltd*., 420 U.S. 592, 604 (1975).  This interference also "can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'"  *Id.* (citation omitted).

Although the doctrine originally was announced in the criminal context, it has been clear for 50 years that a lawsuit in federal court that would interfere with a civil action in state court also poses a "threat to our federal system," so *Younger* "is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding."  *Id.* at 604; *see also id.* ("offense to the State's interest").  The most recent Supreme Court case on *Younger* abstention identified three categories of state proceedings warranting abstention.  "First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions.  Second, certain civil enforcement proceedings warranted abstention.  Finally, federal courts refrained from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint*, 571 U.S. at 78 (internal citations and quotation marks omitted).  Here, the enforcement action in Missouri state court fits within both the second and third categories.

**A.  The second *Younger* category applies.**

The enforcement proceeding in Missouri is a "civil enforcement proceeding[ ]" within the scope of *Younger* abstention.  *Sprint* defines the subset of civil enforcement proceedings that satisfy *Younger* as those civil proceedings that are "'akin to a criminal prosecution' in 'important respects.'"  *Id.* at 79.  The "important respects" are that the ongoing proceeding is initiated by the State (rather than a private party) and seeks to enforce state law against a private actor.  *Id.*

Specifically, "[i]n cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action," "[i]nvestigations are commonly involved," and "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id*. The ongoing action in Missouri meets these indicia.

First, the enforcement action was "initiated by 'the State in its sovereign capacity.'" *Id.* at 80 (citation omitted). The caption of that case is *State of Missouri, ex rel. Andrew Bailey v. Media Matters*. ECF 39-6. The Missouri Attorney General is authorized by state law to "institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations." Mo. Rev. Stat. § 27.060. The Missouri Attorney General has done so on behalf of the State here.

Second, Media Matters acknowledges that the case initiated by the State involves an investigation. Missouri law specifically authorizes "the AG to issue CIDs in its investigation of possible violations of the Missouri Merchandising Practices Act." *Charter Communications*, 461 S.W.3d at 856 (citing Mo. Rev. Stat. § 407.040); *see also* Reed decl. ¶ 4.

And third, the enforcement action was brought to enforce state law against "the party challenging the state action, for some wrongful act." Specifically, Media Matters, as a company that solicits donations from residents of Missouri, is required to "comply with the terms [of the CID] unless otherwise provided by an order of a court" in Missouri. Mo. Rev. Stat. § 407.080. The enforcement action was undertaken to force Media Matters to abide by its legal duty and reverse its illegal refusal to comply.

Other courts have abstained in similar circumstances. For example, the Supreme Court invoked *Younger* "to bar a federal court from entertaining a lawyer's challenge to a New Jersey

state ethics committee's pending investigation of the lawyer." *Sprint*, 571 U.S. at 81 (citing *Middlesex Cnty. Ethics Comm. v. Garden State B. Ass'n*, 457 U.S. 423, 433–35 (1982)).  Similarly, the Supreme Court invoked *Younger* when Ohio opened a proceeding to enforce a state nuisance law.  *Huffman*, 420 U.S. at 595.  Lower courts also regularly apply *Younger* when a party files a federal lawsuit to challenge application of a state's consumer-protection law.  *E.g.*, *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002) (abstaining from a lawsuit seeking to "enjoin the Attorney General from taking any action ... to enforce" Iowa consumer-protection law); *cf. PDX N., Inc. v. Commr. New Jersey Dept. of Lab. and Workforce Dev*., 978 F.3d 871, 881–82 (3d Cir. 2020) ("The trial court correctly dismissed PDX's case but erred in dismissing SLS's case because, for SLS, there was no ongoing judicial proceeding.").

Even more on point, courts regularly abstain when a state has issued CIDs or other subpoenas and then opened a state court proceeding to enforce the subpoena.  The *Backpage* case, which involved the Missouri Attorney General, is on all fours with this one.  There, the Missouri Attorney General served a CID on a company, Backpage, and then filed a state lawsuit to enforce the CID.  Just like here, Backpage filed a federal lawsuit several weeks later, "asking the Court to 'enjoin and declare unlawful' AG Hawley's efforts to investigate." *Backpage*, 2017 WL 5726868, at *3.  And just like here, Backpage argued that the investigation violated the First, Fourth, and Fourteenth Amendments, as well as Missouri's consumer-protection statute (the MMPA).  *Id.*  The court ruled that abstention was required because of the existing proceeding in state court, so the court dismissed the case.  *Id.* at *1, 13.

Many other cases apply the same analysis and abstain.  While Texas did not initiate a proceeding to enforce its CID this time, when Texas does so, courts abstain.  A court did so just three months ago in a suit brought against the Texas Attorney General, because Texas initiated a

13

proceeding in state court, meaning that "federal action would have the practical effect of enjoining the state proceedings." *Yelp Inc. v. Paxton*, No. 23-CV-04977-TLT, 2024 WL 413464, at *3 (N.D. Cal. Feb. 1, 2024); *see also, e.g.*, *Berrada Properties Mgt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 750 (E.D. Wis. 2022) (abstaining in action "to quash the CIDs" even though state court action was filed later than the federal action); *Seligman*, 2007 WL 2822208, at *6 ("*Younger*'s 'ongoing proceeding' requirement was 'clearly satisfied' when a state agency charged with investigating and administratively prosecuting violations of New York's lobbying laws issued subpoenas").

The critical fact is whether a state enforcement proceeding exists.  For example, in *Google, Inc. v. Hood*, the Fifth Circuit determined that *Younger* abstention was improper largely because Mississippi CIDs are "non-self-executing" and yet the Mississippi Attorney General had "*not* moved to enforce the administrative subpoena in any state court."  822 F.3d 212, 223 (5th Cir. 2016) (emphasis added).  Missouri CIDs also "are not self-enforcing," *Backpage*, 2017 WL 5726868, at *6, but unlike in *Google*, the Missouri Attorney General has filed an action in state court to enforce the CID.  *Younger* abstention thus applies.  *Sprint*, 134 S. Ct. at 593.

**B.  The third *Younger* category also applies.**

The Missouri state court action also falls within the third category identified by *Sprint*. Citing its prior decision in *Juidice v. Vail*, 430 U.S. 327 (1977), the *Sprint* Court explained that *Younger* abstention applies to state proceedings that "touch on a state court's ability to perform its judicial function."  *Sprint*, 134 S. Ct. at 592.  *Vail* involved a federal action challenging a state-court proceeding to enforce a subpoena.  430 U.S. at 329–30.  The Supreme Court held that the federal district court was required to abstain under *Younger* because the plaintiff, by challenging the ability of a state court to enforce a subpoena, attacked the "process[ ] through which [the state] vindicates the regular operation of its judicial system."  *Id*. at 335.  "Moreover," the Court

explained, a federal-court lawsuit challenging such proceedings "unduly interferes with the legitimate activities of the State." *Id.* at 336 (quotation and brackets omitted).

So too here. Like in *Vail*, Media Matters attacks the ability of Missouri courts to enforce subpoenas. The state-court action here involves an attempt to enforce a subpoena issued under state law. *See Charter Communications*, 461 S.W.3d at 855–57 (explaining that CIDs constitute administrative subpoenas). Indeed, this case strikes closer to the core concerns of *Younger*, because while the subpoena in *Vail* was issued by a private litigant, 430 U.S. at 329, the subpoena here was issued by the State acting in its sovereign law-enforcement capacity.

The federal court in *Backpage* squarely held that federal actions seeking to block Missouri CIDs fall within the third *Younger* category. *Backpage*, 2017 WL 5726868, at *6. As the court there recognized, Missouri "state courts play a significant role in the investigation and prosecution of unlawful merchandising practices." *Id.* at *7. In Missouri, "CIDs are not self-enforcing." *Id.* at *6. Instead, the Attorney General must rely on courts to enforce CIDs. *Id.* at *7 ("If the recipient of a CID fails to comply with its demands, the attorney general may file in state court a petition 'for an order of such court for the enforcement' of the CID,' …. Mo. Rev. Stat. § 407.090."). Because a "request that the Court enjoin AG [Bailey]'s efforts to investigate and prosecute potential violations of the MMPA necessarily affects functions performed by the state court … the third *Sprint* category also requires this Court to abstain." *Id.* at *8.

Similarly, *Lupin Pharmaceuticals, Inc. v. Richards*, No. 15-1281, 2015 WL 4068818 (D. Md. July 2, 2015), is directly on point. In *Lupin*, the target of a CID served by the Alaska Attorney General filed a federal-court action challenging the CID. *Id.* at *2. The Alaska Attorney General, in turn, filed a state-court action to enforce the CID under Alaska Stat. § 45.50.592(g), which is nearly identical to Mo. Rev. Stat. § 407.090. *Id.* Applying the *Sprint* framework, the district court

concluded that the state-court enforcement proceeding "clearly" warranted abstention under *Younger*. *Id.* at *3.

### C. The ongoing proceeding in Missouri state court implicates important state interests and affords Media Matters an adequate opportunity to raise its federal claims.

Once a court has determined that one of the three *Younger* categories applies, the Supreme Court has said the court may consider three "additional factors": whether there is "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Sprint*, 571 U.S. at 81 (alterations accepted; internal quotation marks and emphasis omitted). All three are met here.

The first factor is obviously met. Media Matters brought this suit to *stop* the ongoing state-court proceeding. The state-court matter was filed before Media Matters sued the Missouri Attorney General, but even if Media Matters had sued first, the D.C. Circuit has concluded that a state action need not be filed first. *JMM*, 378 F.3d at 1126 (abstaining under *Younger* even though the local action was filed "two months after" the federal action); *see also Aaron v. Target Corp.*, 357 F.3d 768, 775 (8th Cir. 2004) ("no fixed requirement in the law that a state judicial proceeding must have been initiated before the federal case was filed for abstention to be appropriate").

The second factor similarly is met. It is well recognized that a state "has an important interest in enforcing its consumer protection statutes." *Cedar Rapids Cellular*, 280 F.3d at 879–80; *Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1232 (9th Cir. 2023) ("Hestrin's state action seeks to enforce the state's consumer protection laws, undoubtedly an important interest."); *Yelp*, 2024 WL 413464, at *3 ("Texas has an interest in protecting its consumers from 'deceptive trade practices.'"). In addition, "[w]here the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills Landfill, Inc. v. Cnty. of*

*Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011).  The State is both "in an enforcement posture" and is "enforcing its consumer protection statutes," so the second factor is "easily satisfied."  *Id.*  The ongoing proceeding also "implicates important state interests" because enforcing CIDs is part of "a state court's ability to perform its judicial function."  *Sprint*, 134 S. Ct. at 592; *see also Vail*, 430 U.S. at 335 ("the regular operations of its judicial system … is surely an important interest").

Likewise, the third factor is easily met: Media Matters has "an opportunity to present [its] federal claims in the state proceedings."  *Vail*, 430 U.S. at 337.  Media Matters "carries the burden of demonstrating that the Missouri proceedings do not provide 'an adequate opportunity' for it to raise constitutional claims."  *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678–79 (8th Cir. 2013).  But Media Matters has not disputed that it has that opportunity.  In fact, it has already successfully moved in state court to exercise its legal rights under Missouri law.  And "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15 (1987).

The Missouri Merchandising Practices Act specifically provides Media Matters an opportunity to petition "to modify or set aside the civil investigative demand."  Mo. Rev. Stat. § 407.070.  The deadline to do so was April 15, 2024.  ECF 39-6 at 8.  The statute also gives Media Matters the opportunity to seek extension of that deadline.  Mo. Rev. Stat. § 407.070.  And of course, Media Matters can assert its claims defensively in response to the State's enforcement action.  CID recipients routinely raise challenges under federal law in proceedings involving Missouri's consumer protection statute.  *E.g.*, *State ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385, 388 (Mo. 1980) (Fourth, Fifth, and Fourteenth Amendments).

Abstention is especially necessary "to avoid unwarranted determination of federal constitutional questions."  *Pennzoil*, 481 U.S. at 11.  Media Matters disputes the Missouri Attorney

General's interpretation of Missouri law.  Supp. Compl. ¶¶ 27, 30.  If Media Matters prevails, it would render the federal constitutional claims moot.  "*Younger* abstention in situations like this 'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'"  *Pennzoil*, 481 U.S. at 12 (citation omitted).  In other words, if Media Matters prevails on its statutory arguments, constitutional issues would disappear.  Failure to abstain, in contrast, might result in "a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory." *Moore v. Sims*, 442 U.S. 415, 428 (1979); *see also Berrada Properties*, 608 F. Supp. 3d at 751 (federal intervention is "doubly offensive" because "it requires the Court to make the first pass at several Wisconsin statutory provisions").  Because the controversy between the State of Missouri and Media Matters involves disputed issues of state law, state courts should have the first opportunity to adjudicate the controversy.

### D.  Media Matters has waived the issue whether any exception to abstention applies, and in any event, no exception applies.

The Supreme Court has recognized "narrow exceptions to the doctrine that federal courts should not interfere with state" proceedings.  *Huffman*, 420 U.S. at 602.  But "[i]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention."  *Weitzel v. Div. of Occupational and Prof. Licensing of Dept. of Com. of State of Utah*, 240 F.3d 871, 877 (10th Cir. 2001).[6]  Media Matters, however, tellingly has not even mentioned *Younger* abstention, much less pleaded or argued that an exception applies, even though Texas, in its opposition to Media Matters' motion to supplement the complaint, explained that "adding Attorney General Bailey as a defendant in

---

[6] *See also Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018); *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007); *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010); *Leonard v. Alabama State Bd. of Pharm.*, 61 F.4th 902, 908 (11th Cir. 2023).

this case would require this Court to consider the relevance of the existing Missouri proceedings. *Cf. Younger v. Harris*, 401 U.S. 37 (1971)." ECF 40 at 3. Media Matters has thus waived this issue. *Power Co. of Am., L.P. v. FERC*, 245 F.3d 839, 845 (D.C. Cir. 2001) ("This argument was not raised in PCA's opening brief and is therefore waived.").

In any event, Media Matters could not establish any exception. *Younger* recognized that there might be narrow exceptions to abstention in criminal cases for "bad faith, harassment, or a patently invalid state statute." *Sprint*, 571 U.S. at 77. But these are very "narrow exceptions." *Huffman*, 420 U.S. at 602. And none applies here.

Consider "bad faith" and "harassment." Courts and treatises typically treat these together as one exception, not two. *E.g.*, *Perez v. Ledesma*, 401 U.S. 82, 97 (1971) (Brennan, J., concurring) ("bad-faith harassment"); Wright & Miller, 17B Fed. Prac. & Proc. Juris. § 4255 (3d ed.) (same); *id.* n.6 ("one cannot readily imagine either good-faith harassment or bad-faith without harassment" (citation omitted)). This exception is incredibly narrow. So narrow, in fact, that "the universe of bad-faith harassment claims that can be established is virtually empty." *Id.* § 4255 (citation omitted). "There is no case since *Younger* was decided in which the [Supreme] Court has found that the exception for bad faith or harassment was applicable." *Id.* It is not even clear the exception applies in civil cases at all. "While the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case and we have only recognized it in the criminal context." *Aaron*, 357 F.3d at 778 (internal citation omitted).

One reason it is narrow is because it "requires a showing of bad faith on the part of the *state court judges*," not the state officials who brought the enforcement action. Wright & Miller, § 4255 n.11 (emphasis added). Specifically, the Supreme Court in *Vail* held that the bad-faith harassment exception did not apply even though "some paragraphs of the complaint could be

construed to make such allegations as to the" parties who brought the state action.  *Vail*, 430 U.S. at 338.  The reason, the Supreme Court said, is because "there are no comparable allegations with respect to [the state court] justices" in that state court proceeding.  *Id.*  The Supreme Court immediately went on to say, "This exception *may not be utilized* unless it is alleged and proved that they [state judges] are enforcing the contempt procedures in bad faith or are motivated by a desire to harass."  *Id.* (emphasis added).

The requirement that the "bad-faith harassment" exception is triggered only when *judges* act in bad faith makes sense.  Our federalist system presumes that state courts are adequate to the job, *Pennzoil*, 481 U.S. at 15, so even if an executive official could be shown to have brought an action in bad faith, our system presumes that state courts will be able to adjudicate all defenses to that action just as well as if the action were brought in federal court, *see id.*  Media Matters has not, and cannot, establish bad faith by Missouri court judges—who have so far made no rulings in the ongoing state court proceeding other than to *grant* Media Matters' motion to change judges.

The same is true with the "patently invalid statute" exception.  Media Matters has not alleged, and cannot allege, that Missouri's consumer-protection statute is "patently invalid."  The statute has been in place for 60 years and has repeatedly survived constitutional challenge.  *E.g.*, *State ex rel. Nixon v. Telco Directory Pub.*, 863 S.W.2d 596, 600 (Mo. 1993); *State v. Shaw*, 847 S.W.2d 768, 776 (Mo. 1993).  In any event, even "facial invalidity of a statute is not itself an exceptional circumstance justifying federal interference."  *Huffman*, 420 U.S. at 602.  The statute must "be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  *Id.* (citation omitted).  Media Matters plainly cannot satisfy this arduous standard.

The closest Media Matters gets to asserting any exception is to assert that the CID was not issued for "any good-faith investigative reason" because the CID and the lawsuit "apparently" do not "identif[y] any new facts" discovered since November.  ECF 49-1 at 11–12 (emphasis omitted).  But as Media Matters acknowledges right before that, state law does not require a CID to state these things.  *Id.* at 10 ("[T]he Missouri Attorney General is not required by statute to show probable cause or establish jurisdiction before issuing a civil investigative demand.").

Similarly, Media Matters asserts there is no "good-faith investigative purpose" because Missouri moved to enforce the CID on the same day that Missouri issued the CID.  *Id.* at 12–13.  But that was permitted by Missouri law because waiting would have been futile; Media Matters had already made clear in its public statements and position in the lawsuit against Texas that it would not comply with any CID served by Missouri.  Reed decl. ¶ 14.  Media Matters' actions since have proven Missouri correct.  In any event, the timing of Missouri's complaint in state court is irrelevant to the validity of the underlying investigation.

Neither of these accusations is against the courts of Missouri, and so even if the Court credited them, they would fail as a matter of law.  But even setting aside that issue, other courts have repeatedly stressed that the "burden" of establishing bad faith "is heavy, as these exceptions are narrow."  *Yelp*, 2024 WL 413464, at *4 (quotation omitted).  In *Yelp*, for example, the court abstained even after determining that "Yelp's allegations of bad faith tell a persuasive story": the State had conducted only a "thin investigation," had entirely flipped its position, and was pursuing an enforcement action over a statement "even though it conceded that the [statement] is accurate." *Id.* at *5–6.  The court said it was "not convinced that Paxton acted entirely in good faith," but all the evidence of bad faith was still insufficient to meet the arduous, narrow exception to *Younger*— so narrow that the Supreme Court has never found the exception satisfied.

### E.  Media Matters consented to personal jurisdiction in Missouri state court.

Abstention is especially warranted here because Media Matters already consented to personal jurisdiction in Missouri courts.  Media Matters asserts repeatedly that Missouri courts "obviously lack personal jurisdiction" over it.  *E.g.*, ECF 49-1 at 35.  That was always wrong, but it is especially wrong following Media Matters' filings in that case.

Missouri law is clear that a defendant waives personal jurisdiction if the defendant does "not immediately raise any objection to personal jurisdiction."  *Everett v. Vance*, 685 S.W.3d 495, 502 (Mo. App. W.D. 2023).  "Personal jurisdiction 'is waived if not raised at the *first* opportunity.'"  *Id.* (citation omitted) (emphasis added).  The only exceptions are for entries of appearance and motions for extensions of time.  *E.g.*, *State ex rel. Antoine v. Sanders*, 724 S.W.2d 502, 505 (Mo. 1987).

Media Matters did not challenge personal jurisdiction at its "first opportunity."  Instead, it exercised its legal right under Missouri law to exercise a peremptory strike against a state court judge.  It filed a motion to do so, which was granted, and it scheduled a court hearing on that motion.  Media Matters was of course entitled to avail itself of that legal right under Missouri law, but its decision to do so before challenging personal jurisdiction necessarily waived the issue because it is well settled that a party "waive[s] its right to contest personal jurisdiction by seeking affirmative relief from the trial court."  *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 678 (Mo. App. S.D. 2002).  As relevant here, "[t]he filing of a motion for change of judge constitutes seeking affirmative relief from the court," so Media Matters "has voluntarily submitted himself to the court's jurisdiction and is estopped from challenging the lack of personal jurisdiction."  *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.*, 665 N.E.2d 914, 919 (Ind. App. 1996).

### F. Fundamental limits on federal equity reinforce the need to abstain.

Failure to abstain would run headlong into foundational limits on federal court equity jurisdiction. As the Supreme Court reiterated recently, equity "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). "As *Ex parte Young* put it, 'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 163 (1908)). Abstention is required because granting Media Matters relief would have the same effect as an injunction against the state courts of Missouri.

To be sure, Media Matters has not named a state court as a party, but the effect is the same. No abstention case the Supreme Court has decided has involved a suit against a court, and yet the Supreme Court has repeatedly stressed that abstention is necessary to avoid federal interference with a state court's "function of providing a forum competent to vindicate any constitutional objections." *Huffman*, 420 U.S. at 604. Regardless of who the party is, the effect is the same: Media Matters seeks an order here that would shut down the courts of Missouri.

## II. There is No Personal Jurisdiction and, Therefore, the Case Should Be Dismissed.

This Court also lacks personal jurisdiction over the Missouri Attorney General. For personal jurisdiction, the court "must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "The District of Columbia 'long-arm statute' enumerates the various acts of a nonresident defendant which support the assertion of personal jurisdiction." *Mouzavires v. Baxter*, 434 A.2d 988, 990 (D.C. Cir. 1981). Personal jurisdiction comports with due process only when the defendant has "minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

### A.  Plaintiffs have not satisfied the long-arm statute.

Here, Plaintiffs have not met the personal jurisdiction threshold under the District of Columbia long-arm statute.  The applicable long-arm statute, D.C. Code § 13-423, provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
> . . .
> (1)  transacting any business in the District of Columbia;
> . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia[.]

*Id.*  Plaintiffs assert personal jurisdiction under both (a)(1) and (a)(3).[7]

Subsection (a)(1) does not support jurisdiction.  Missouri, acting through its Attorney General, has not transacted business in the District merely by hiring a process server to *serve a lawsuit*.  If that were the case, then parties, including sovereign states, could never sue an out-of-state entity with sufficient minimum contacts but without a registered agent in the state, without subjecting themselves to a corresponding retaliatory lawsuit filed in the state of service.  This is not purposefully engaging in "some type of commercial or business-related activity directed at District residents." *Holder v. Haarman & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001).  Nor

---

[7] The State of Missouri, like Texas, asserts that the State does not fall under the D.C. long-arm statute, because it is not a "person," as provided in the statute.

Media Matters briefly suggests that another provision, subsection (a)(4), is also satisfied because the Missouri Attorney General is a party to a proceeding in the D.C. Circuit, but Media does not press that argument "for present purposes."  ECF 49-1 at 18 n.13.  In any event, it is wrong.  The Missouri Attorney General does not subject himself to permanent jurisdiction in D.C. merely by participating in an unrelated lawsuit that is required to be filed in the D.C. Circuit.

is it "any continuing corporate presence in the forum state directed at advancing the corporation's objectives." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981).

There is also no personal jurisdiction under subsection (a)(3) because Plaintiffs fail to establish that the Missouri Attorney General's alleged tortious conduct occurred in D.C. The CID was prepared in Missouri and relates to conduct of Media Matters in Missouri. Missouri did not hire a process server in D.C. for the CID, but instead mailed it from Missouri. And the Missouri lawsuit served in D.C. is merely the statutorily-authorized process provided for seeking enforcement because of Media Matters' refusal to respond to a request for information. Further, the investigation is occurring in Missouri and is inquiring into potential violations of *Missouri consumers'* rights. That is not alleged tortious conduct in D.C., but an investigation of unlawful conduct in Missouri.

Media Matters cannot get around these stubborn facts by misrepresenting state law and Supreme Court precedent. Media Matters says that Missouri's law simply authorizes "inspection" of documents and asserts that the Attorney General "would likely need to travel to the District of Columbia for such inspection." ECF 49-1 at 19. But Missouri law says that documents shall be "produce[d]," not inspected, and must be produced at the "place as may be stated in the civil investigative demand," which is Missouri. Mo. Rev. Stat. § 407.040. Media Matters also misstates Supreme Court precedent as holding that any mailing satisfies personal jurisdiction. ECF 49-1 at 23. But the case cited merely states that sending something through the mail is "a relevant contact," not a sufficient contact. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A mail-order business may satisfy sufficient contacts, but D.C. courts have repeatedly held that merely "mailing a letter or other material into Washington, DC from outside of the District does not qualify as an 'act . . . in the District of Columbia within the meaning of subsection (a)(3)." *Slate v. Kamau*, No.

25

20-CV-3732 (BAH), 2021 WL 3472438, at *6 (D.D.C. Aug. 6, 2021) (internal citations omitted); *accord Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217, 219–22 (D.C. Cir. 1986) (holding that "no act occurred within the District of Columbia" when "the libelous article was printed, and the newspapers were mailed, outside of the District of Columbia.").

Media Matters suggests there is a chill caused by receiving a CID in the mail inquiring about conduct in another state.  Not so.  The D.C. Circuit explicitly rejects the theory that the "injury is part of the tort" for the purpose of the long-arm statute "because such a theory would obliterate subsection (3)'s careful distinction between injury' and act."  *Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (internal quotation marks omitted); *see also Dyson v. Dutko Ragen Homes & Investments*, No. 21- CV-02280 (APM), 2022 WL 1294484, at *4 (D.D.C. Apr. 27, 2022) (noting that "limited communications initiated from outside the District of Columbia to a District resident do not qualify as an act 'in the District' for purposes of § 13-423(a)(3)").

Media Matters' "chilling" argument also proves far too much.  Under that argument, Media Matters could sue in D.C. even if the State of Missouri had served the CID and lawsuit on Media Matters *outside* D.C.  Media Matters has not provided any support for its idea that there is personal jurisdiction against the defendant wherever the allegedly injured *plaintiff* might reside.  That would turn personal jurisdiction on its head.  "[T]he plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 286.

### B.  Personal jurisdiction here would violate the Due Process Clause.

Personal jurisdiction in this case also does not meet the requirements of Due Process because the Missouri Attorney General, on behalf of the State of Missouri, does not have minimum contacts.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).  There is neither general jurisdiction—where a defendant is "essentially at home" in the forum state—nor specific jurisdiction, based on the contacts between the defendant, the forum state, and the

controversy.  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415–16 (1984);

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021).  Media Matters

does not contend that the Court has general jurisdiction.

Nor is there specific jurisdiction.  Missouri did not "purposefully direct" conduct at the

forum state "such that [it] should reasonably anticipate being haled into court there."  *Lewis v.*

*Mutond*, 62 F.4th 587, 591 (D.C. Cir. 2023) (citation omitted).  "[A] plaintiff's claims must "aris[e]

out of or relat[e] to the defendant's contacts with the forum."  *Id.* (citation omitted).  But Media

Matters alleges no such thing.

Indeed, Media Matters alleges even *fewer* contacts by Missouri than the already minimal

contacts alleged of Texas.  While this Court found it meaningful that Texas delivered its CID

through a process server, ECF 37 at 26, Missouri delivered its CID through the mail.  If "email

and telephone communications sent into the District of Columbia are not sufficient" for personal

jurisdiction, *Associated Producers, LTD v. Vanderbilt U*., 76 F. Supp. 3d 154, 165 (D.D.C. 2014),

then neither is snail mail.  *E.g.*, *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V*., 638 F.

Supp. 2d 1, 9 (D.D.C. 2009) ("HB's telephone calls, emails, facsimiles and mailings, including

invoices, to EBI's D.C. office are insufficient to subject it to this Court's personal jurisdiction.").

To be sure, Missouri used a process server for its state enforcement action, but Media Matters

challenges much more than that.  And if using a process server to serve a lawsuit is sufficient (it

is not), then Media Matters has subjected itself to personal jurisdiction in Missouri by using a

process server to serve its complaint on the Missouri Attorney General.  ECF 48.

First Amendment concerns do not change or even enter into the personal jurisdiction

analysis.  *See Moncrief*, 807 F.2d at 222–24.  To the extent Media Matters believes it experienced

a heightened chill because the State of Missouri exercised its sovereign authority, that similarly

does not affect the personal jurisdiction analysis.  The default rule is that state agencies should not "have to defend [their] attempt to enforce [state] laws"—much less mere investigations under those laws—"in courts throughout the nation."  *Stroman Realty v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008); *accord Music Makers Holdings v. Sarro*, No. RWT-09-cv1836, 2010 WL 2807805, at *5 (D. Md. July 15, 2010) ("[R]ecent out-of-circuit court of appeals decisions have analyzed the issue in a variety of contexts and have uniformly held that cease-and-desist letters alone do not establish personal jurisdiction.").  For these reasons, there is no personal jurisdiction.

### C.  Media Matters' jurisdictional argument is self-defeating.

A critical lynchpin of Media Matters' entire lawsuit is its bold assertion that Missouri courts "obviously lack personal jurisdiction" over Media Matters.  ECF 49-1 at 35.  Yet Media Matters' arguments for jurisdiction over the Missouri Attorney General would necessarily subject Media Matters to jurisdiction in Missouri.  Media Matters contends, for example, that merely mailing something into D.C. subjects the Missouri Attorney General to jurisdiction.  Yet Media Matters regularly emails newsletters to countless residents of Missouri.  Jurisdiction is proper when an organization "circulat[es] magazines to deliberately exploit a market in the forum state." *Walden*, 571 U.S. at 285 (quotation marks omitted; brackets adopted).  Media Matters also solicits (and receives) donations from Missourians.  *E.g.*, Reed decl. ¶ 7.  And Media Matters admits it writes articles about public figures in Missouri.

Media Matters' sole response to all this is to assert that the Missouri Attorney General— nearly 20 years ago—responded to a Media Matters inquiry and opined that the organization was exempt from registering under Missouri law.  ECF 49-1 at 37; ECF 39-11.  But Media Matters neglects to mention that under Missouri law, *all* 501(c)(3) organizations are exempt from registration. Mo. Rev. Stat. § 407.456.2(6).  That law states that an organization seeking to solicit donations in Missouri must register with the Secretary of State unless the organization is, for

example, religious, educational, or a 501(c)(3).  *Id.*  Exemption from registration says nothing about the organization's contacts with Missouri.

In fact, Media Matters' 2007 outreach to the Missouri Attorney General undermines Media Matters' contentions.  Media Matters would not have reached out to the Missouri Attorney General in the first place unless it were soliciting donations in the State.  (Its most recent public financial disclosure shows that it is still soliciting donations from Missouri.  Reed decl. ¶ 7.)  And the letter confirms Media Matters was in fact engaging in substantial contacts with Missouri, which is why the Attorney General's Office at the time invited Media Matters "to be included on the Missouri Attorney General's Office charity web page."  ECF 39-11.

## III.   Media Matters Cannot Establish a Justiciable, Ripe Injury, Nor the Absence of an Adequate Remedy at Law.

To establish a justiciable controversy, Media Matters must establish not only the regular three elements of standing, but also that the dispute is "ripe" and—because Media Matters seeks a prospective injunction—that there is no adequate remedy at law.  *Natl. Park Hosp. Ass'n v. Dept. of Int.*, 538 U.S. 803, 807 (2003) (ripeness); *Natl. Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.22 (1985) (adequate remedy).  Media Matters has not done so.

The Supreme Court's decision in *Reisman v. Caplin*, 375 U.S. 440 (1964), makes clear that Media Matters cannot establish the lack of an adequate remedy at law.  There, the Supreme Court held that an agency's non-self-executing request for documents is not reviewable until the agency tries to enforce it.  The recipient of an administrative request for documents was not obligated to produce anything until after the agency brought an "enforcement action" where the recipient would be afforded "a judicial determination" of the lawfulness of the request and the viability of any of his defenses.  *Id.* at 446.  That "opportunity for judicial review before any coercive sanctions may be imposed" was an adequate "remedy"; and the court would not permit the recipient of the request

to short-circuit this process by preemptively seeking an injunction in federal court.  *Id.* at 450.
That is exactly the opportunity being afforded Media Matters in Missouri state court, and it is
taking advantage of that opportunity.

In granting a preliminary injunction against the Texas Attorney General, this Court
concluded that *Reisman* did not apply because, unlike in *Reisman*, "[t]he Texas Code contains no
equivalent remedies for a non-resident challenging a CID" as Texas law refers only to *in-state*
defendants contesting a CID in state court.  ECF 37 at 30.  But Missouri law is different.  Missouri
law *does* include an equivalent remedy and expressly states that a person may challenge a CID in
the "county where the parties reside *or* in the circuit court of Cole County."  Mo. Rev. Stat.
§ 407.070 (emphasis added).  Cole County contains Missouri's capital city, is an open venue for
all out-of-state parties, and is the venue for the existing state proceeding.  *Id.*  Similarly, this Court
faulted Texas for not citing "any authority holding that an exclusive remedy in foreign state court
is an adequate remedy at law."  ECF 37 at 30.  But Missouri has cited relevant authority.  The
Supreme Court has repeatedly held that federal courts must presume that a state's courts are an
adequate forum.  *E.g.*, *Pennzoil*, 481 U.S. at 15 ("[A] federal court should assume that state
procedures will afford an adequate remedy, in the absence of unambiguous authority to the
contrary.").

This Court also noted that *Reisman* did not involve the First Amendment, ECF 37 at 30,
but that makes no difference because Media Matters seeks prospective relief.  This Court noted
that where a party asserts a First Amendment chill, an injury may have already occurred, unlike in
*Reisman*.  *Id.* (citing *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 (9th Cir. 2022)).  But Media
Matters has not sought any relief to rectify a *past* injury; Media Matters instead seeks relief to
enjoin "*further* action to enforce" the CID.  ECF 39-2 (supplemental complaint) ¶ 74 (emphasis

added).  It is axiomatic that when a plaintiff "seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  *Reisman* forecloses Media Matters from suing because Media Matters' ability to raise its defenses to future injury in state court means Media Matters has an adequate remedy at law, and "[i]t is a fundamental principle of long standing that a request for an injunction will not be granted as long as an adequate remedy at law is available." *Natl. Farmers Union*, 471 U.S. at 856 n.22.

Media Matters also cannot establish ripeness.  Even if there were no adequate remedy at law, the *Twitter* case holds that where a recipient of a CID "can raise its First Amendment defense" in state court, then a federal challenge is not ripe.  *Twitter*, 56 F.4th at 1177.  "[U]nlike the analysis of *Reisman*, [the] ripeness analysis does not rely on the lack of an adequate remedy at law," and so it serves as an independent bar to judicial relief.  *Id.* at 1179.  Here, there is an enforcement action in Missouri state court and Media Matters is not only participating but will also have a full opportunity to raise its federal claims.  As such, this case should be dismissed for ripeness.

These decisions are consistent with the routine conclusion by courts that "pre-enforcement review of investigative subpoenas" is strongly disfavored.  *See, e.g., Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334 (10th Cir. 1984); *see also United States v. Kulukundis*, 329 F.2d 197, 199 (2d Cir. 1964) (Friendly, J.) (explaining *Reisman* "seems to destroy the basis underlying decisions of this court which authorized applications to vacate [non-self-executing subpoenas] (and appeals from their denial) in advance of any judicial proceeding by the Government for their enforcement").  This is true even if there is an assertion of First Amendment claims.  *See, e.g., Google*, 822 F.3d at 226 (concluding, in the First Amendment context, that "administrative subpoena is not ripe for review" because it is not "self-executing").

IV.    **There Is No Likelihood of Success on the Merits.**

In addition to the foregoing reasons, the extraordinary relief Plaintiffs seek against the State of Missouri and its judicial proceedings should be denied because there is no likelihood of success on the merits.

### A.  Media Matters is unlikely to succeed on its retaliation claim.

To assert a First Amendment retaliation claim, Media Matters "must show, among other things, that the government took an 'adverse action' in response to [its] speech that 'would not have been taken absent the retaliatory motive.'" *Houston Community College System v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

This is an exceptionally heavy burden, which requires Media Matters to prove there was no legitimate ground to investigate at all.  In *Nieves*, the Supreme Court concluded that a plaintiff must also establish that "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Nieves*, 139 S. Ct. at 1722.  Specifically, the Supreme Court concluded that a retaliatory-arrest claim automatically fails if there is probable cause for the arrest, regardless of the individual officer's subjective motivation. *Id.* at 1728 ("Because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law.").  That rule is necessary because of the "presumption of regularity underlying the prosecutor's [enforcement] decision—a presumption [courts] 'do not lightly discard.'" *Id.* at 1723 (citation omitted).

Media Matters cannot establish that there was no probable cause at all to launch an investigation.  Here, X Corp.'s lawsuit lays out a fact pattern that shows conduct not only "likely" to deceive consumers, but deliberately designed to do so.  DoubleVerify, "which provides brand-safety measurement ratings for digital platforms to major advertisers," recently debunked the allegations that X was regularly populating advertisements next to fringe content, concluding instead that X's "Brand Safety Rates" were nearly perfect—99.99%—during the very time when

Media Matters accused X of regularly posting brand advertisements next to fringe content.  Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for More Than Four Months*, Variety (Apr. 15, 2024).  And the district court overseeing that lawsuit has preliminarily concluded that X's allegations are likely sufficient to overcome a motion to dismiss. *X Corp.*, ECF 54 at 8.

A mere investigation is of course much less intrusive and disruptive than an arrest.  Just as probable cause defeats a retaliatory arrest claim as a matter of law, so too probable cause for an investigation must defeat Media Matters' claim here.  That is especially true because Media Matters' assertion is implausible on its face.  It asserts that the Missouri Attorney General chose to retaliate because Media Matters wrote a single article criticizing him.  ECF 49-1 at 12 ("Bailey has, like Paxton, been the subject of critical reporting from Media Matters.  Bailey's Demand, much like Paxton's, thus reeks of opportunistic retaliation.') (citing a single article).  But the Missouri Attorney General is regularly criticized by other media outlets, and Media Matters has not identified a single example of any other outlet receiving a CID at all—much less after writing a critical article.  Contrary to Media Matters' distorted reality, the Attorney General filed the civil investigative demand to assess whether Media Matters has been dishonest with Missourians when soliciting donations from Missourians.

Media Matters also cannot establish any chill.  Declarations notwithstanding, Media Matters' website reveals no chill at all.  Media Matters identifies one article critical of the Missouri Attorney General published last August.  *Id.*  But on March 26 of this year—the day *after* the Missouri Attorney General publicly filed suit—Media Matters wrote a story criticizing the Missouri Attorney General.  Vesper Henry & Ari Drennen, *Seen But Not Heard: The New York Times Failed to Quote Trans People in Two-Thirds of Stories on Anti-Trans Legislation in a One-*

*Year Period* (March 26, 2024).[8]  And a quick search reveals that Media Matters has published at least 20 articles about Elon Musk since its allegedly defamatory November 2023 article.[9]

Media Matters' retaliation claim fails for yet another reason: as a matter of law, "immaterial adverse actions" do not violate the First Amendment.  *Houston Community College System*, 595 U.S. at 477 (courts "distinguish material from immaterial adverse actions").  Media Matters does not dispute that it is going to have to litigate its claims in one forum or another: either this one or Missouri state court.  But it repeatedly states that it is "injured" by the prospect of litigating in Missouri.  *E.g.*, ECF 49-1 at 36–37.  That is not a material adverse action.  This Court must presume that the state courts in Missouri are adequate, and Media Matters litigating there is simply the same "injury incidental to every proceeding."  *Cameron v. Johnson*, 390 U.S. 611, 618 (1968).

### B.  Media Matters' other claims are likewise unlikely to succeed.

In the lawsuit against Texas, this Court rightly declined to grant Media Matters relief on any of its other counts.  The Court should do the same here.

**First and Fourth Amendments**.  At the outset, there is nothing "imminent" about the argument that the CID seeks information beyond what is permitted by the First and Fourth Amendments.  Media Matters can litigate that issue under a standard timeline because no documents will be turned over until Media Matters has a full and fair chance to raise its defenses.  Courts in Missouri regularly address these claims through ordinary litigation.  *State ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385, 388 (Mo. 1980) (Fourth, Fifth, and Fourteenth Amendments).

In any event, Media Matters' claims easily fail.  On the First Amendment, Media Matters asserts that the CID falls afoul of *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373

---

[8] https://www.mediamatters.org/new-york-times/seen-not-heard-new-york-times-failed-quote-trans-people-over-60-2023-stories-anti

[9] https://www.mediamatters.org/search?search=%22elon+musk%22

(2021), but that case involved a California mandate for every nonprofit organization to disclose donor information automatically each year, without judicial process, rather than in response to a subpoena.  Indeed, the Supreme Court expressly rejected California's mandate because there were "alternative means of obtaining [the] information—such as a subpoena." *Id.* at 2386.

On the Fourth Amendment issue, it is well settled that "the Fourth Amendment generally presents little obstacle to the enforcement of administrative subpoenas." *ADR Tr. Corp. v. Thornton*, 41 F.3d 1539, 1548 (D.C. Cir. 1994).  Media Matters makes no attempt to develop its Fourth Amendment argument, other to say that it "often overlap[s]" with First Amendment concerns.  ECF 49-1 at 32.  Media Matters' argument is thus both waived and wrong.

**State shield laws.**  No stronger is the contention that the CID violates Maryland and DC law.  Those laws do not apply extraterritorially to Media Matters' conduct in Missouri.  Media Matters also again fails to develop its argument.  It notes, for example, that the statutes provide only "qualified protection against compelled disclosure" but makes no effort to state why that "qualified" protection applies here.  *Id.* at 35.  This issue, too, is waived.

**Due Process**.  Finally, Media Matters strangely tries to escalate a jurisdictional issue into its own § 1983 violation.  Media Matters asserts that the "legal process against them in Missouri violates due process."  ECF 49-1 at 36.  If in fact Media Matters were correct, that would be a good argument for the Missouri courts to dismiss the CID enforcement action.  But it is not an independent constitutional tort for a party to sue somebody else in a forum that ultimately concludes it lacks personal jurisdiction, and Media Matters fails to cite any authority otherwise.  Indeed, it is the state courts of Missouri, not the Missouri Attorney General, that exercise coercive power in the context of Due Process challenges.  Media Matters' argument also proves way too much.  Under that logic, Media Matters will have committed a tort against the State of Missouri if

this Court (or the D.C. Circuit) concludes that *Younger* abstention is appropriate or the Court lacks personal jurisdiction here.

The Due Process argument is especially unavailing because, as discussed in more depth above, Media Matters has already consented to personal jurisdiction in Missouri.  Rather than comply with Missouri requirements to object to personal jurisdiction in the first instance, Media Matters has filed a motion (which was granted) availing itself of legal rights in Missouri.

## V.    Media Matters Will Not Suffer Irreparable Harm.

"The basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  Accordingly, the "failure to show any irreparable harm is ... grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 545 (D.D.C. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) and citing *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015) ("the movant must always show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors")).  Here, there cannot be irreparable harm because there is an avenue for relief—an avenue Media Matters is engaged in—before any supposed harm is ever experienced.[10]

The D.C. Circuit "'has set a high standard for irreparable injury.'"  *Id.* (quoting *Chaplaincy*, 454 F.3d at 297).  "[T]he injury 'must be both certain and great; it must be actual and not theoretical.' " *Id.* (quotations omitted).  Indeed, the "injury must also be 'of such imminence that

---

[10] Plaintiffs suggest they are experiencing an irreparable chilling effect.  But, as Texas pointed out, Media Matters has continued its same criticisms and coverage.  And in any event, it would have no application with respect to the State of Missouri's CID, which came months after the supposed harm was experienced.  The chill is at best "theoretical." *Jones*, 177 F. Supp. 3d at 545.

there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Moreover, the injury must be "beyond remediation." *Id.* (quoting *Chaplaincy*, 454 F.3d at 297). As has been said many times, there is a remedy in this case; there is alternative relief before any supposed harm. And it is a remedy or relief that Plaintiffs have already engaged in—the State of Missouri's enforcement action in state court.

Even setting that issue aside, there is no imminent—much less irreparable—injury at all because Media Matters will not have to hand over any documents until it has had a full and fair opportunity to raise its defenses. Missouri's CIDs are not self-executing. Nothing will happen to Media Matters until resolution of judicial proceedings.

## VI.    The Balance of Equities and Public Interest Decisively Favor Missouri.

Finally, in *Winter v. NRDC, Inc.*, 555 U.S. 7, 24, (2008), the Supreme Court "held that 'proper consideration' of the balance of equities and public interest 'factors alone [would have] require[d] denial of the requested injunctive relief,' 'even if [the] plaintiffs [had] shown irreparable injury' and a likelihood of success on the merits." *Kim v. Fin. Indus. Regul. Auth., Inc.*, No. 1:23-CV-02420 (ACR), 2023 WL 6538544, at *16 (D.D.C. Oct. 6, 2023). "Importantly, this body of case law shows that a court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims." *Id.*

In this case, the balance of equities and public interest decisively favor the State of Missouri. The importance and need to protect consumers is indisputable. Missouri consumer protections laws have been in force for decades and have provided the legal and regulatory backbone of tens of thousands of actions, enforcements, and investigations to protect consumers. Further, the ability of a sovereign state, through its constitutionally and statutorily authorized Attorney General, to conduct investigations into potential violations of consumer protections laws

is paramount—as is the ability of state courts in Missouri to resolve disputes over the exercise of that authority.  If, at every turn, a federal court injunction is sought for routine investigations of potential violations of state law, then vital public interests and federalism will be defeated.

Because Media Matters not only has the opportunity, but has invoked the right, to challenge the investigation in Missouri courts, the balance of equities and the public interest unquestionably favor the denial of a TRO or preliminary injunction.

The equities especially disfavor Media Matters (and Media Matters also lacks standing) because it could have avoided any harm.  "It is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) (quotations omitted).  "In analogous circumstances, plaintiffs who decline the opportunity to avail themselves of a regulatory scheme to avoid the very harm for which they seek injunctive relief have been denied the [injunctive] relief."  *Id*.  Media Matters here has run to federal court rather than take advantage of the availability of relief in Missouri state court.

## CONCLUSION

For the foregoing reasons, the motion for a TRO and a Preliminary Injunction should be denied.

Date: May 8, 2024                          Respectfully submitted,

                                           ANDREW BAILEY
                                           Attorney General of Missouri

                                           /s/ Joshua M. Divine
                                           JOSHUA M. DIVINE, #69875MO
                                           Solicitor General

                                           JEREMIAH J. MORGAN, #50387MO
                                           Deputy Attorney General – Civil

                                           OFFICE OF THE ATTORNEY GENERAL
                                           Supreme Court Building
                                           207 West High Street
                                           P.O. Box 899
                                           Jefferson City, Missouri 65102
                                           Tel. (573) 751-1800
                                           Fax (573) 751-0774
                                           josh.divine@ago.mo.gov
                                           jeremiah.morgan@ago.mo.gov

                                           *Counsel for Defendant Missouri Attorney General*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 38 pages, exclusive of matters designated for omission, and satisfies the typesetting requirements.

                                           /s/ Joshua M. Divine
                                           Counsel for Missouri Attorney General

## CERTIFICATE OF SERVICE

I certify that on May 8, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

                                           /s/ Joshua M. Divine
                                           Counsel for Missouri Attorney General