IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, <br><br> Plaintiffs, <br><br> v. <br><br> WARREN KENNETH PAXTON JR., in his official capacity as Attorney General of the State of Texas, <br><br> ANDREW BAILEY, in his official capacity as Attorney General of the State of Missouri, <br><br> Defendants. | Civil Action No. 24-cv-147 <br><br><br> **(EXPEDITED HEARING REQUESTED)** |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
## INJUNCTION AND BRIEF IN OPPOSITION TO BAILEY'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.   The Court should decline to abstain under *Younger*. ............................................ 3

     A.   The state court proceeding is not a "civil enforcement proceeding." .................... 3

     B.   The state court proceeding does not involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." ............................ 9

     C.   There were proceedings on the merits in this case before the CID Proceeding was filed. ............................................................................................................ 11

     D.   Bailey issued the CID and commenced the CID Proceeding in bad faith. ........... 14

     E.   Media Matters has not consented to jurisdiction in Missouri. ............................. 18

II.   This Court has personal jurisdiction over Bailey. ................................................ 20

     A.   This Court has long-arm jurisdiction over Bailey. ............................................... 20

     B.   Exercising personal jurisdiction over Bailey is consistent with Due Process. ..... 22

III.   Plaintiffs' injuries are ripe and they lack an adequate remedy elsewhere. ....................... 23

IV.   Media Matters and Hananoki are likely to prevail on the merits of their claims. .............. 27

     A.   Plaintiffs are likely to prevail on their First Amendment retaliation claim. ......... 27

     B.   Plaintiffs are likely to prevail on their remaining claims. ...................................... 30

V.   The equities weigh strongly in favor of preliminary relief. ............................... 32

CONCLUSION ................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
527 U.S. 706 (1999).............................................................................................33

*State ex rel. Antoine v. Sanders*,
724 S.W.2d 502 (Mo. 1987) ..............................................................................20

*Backpage.com, LLC v. Hawley*,
No. 4:17-CV-1951 PLC, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ...................6, 7, 8, 10

*Banner Health v. Sebelius*,
905 F. Supp. 2d 174 (D.D.C. 2012) ...................................................................15

*Berrada Properties Management, Inc. v. Romanski*,
608 F. Supp. 3d 746, 750, 753 (E.D. Wis. 2022)......................................................9

*Bland v. IMCO Recycling, Inc.*,
67 S.W.3d 673 (Mo. Ct. App. 2002).....................................................................20

*Cedar Rapids Cellular Telephone, L.P. v. Miller*,
280 F.3d 874 (8th Cir. 2002) ............................................................................6, 7, 8

*Constantine v. Rectors & Visitors of George Mason Univ.*,
411 F.3d 474 (4th Cir. 2005) ...............................................................................29

*Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983) (en banc) (Spottswood, C.J., concurring)............................25

*Cover v. Robinson*,
224 S.W.3d 36 (Mo. Ct. App. 2007).....................................................................19

*Cullen v. Fliegner*,
18 F.3d 96 (2d Cir. 1994) ...............................................................................15, 16, 18

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ...............................................................................23

*Derma Pen, LLC v. 4EverYoung Ltd.*,
No. 2:13-CV-00729-DN-EJF, 2015 WL 791595 (D. Utah Feb. 25, 2015) ......................12, 14

*Everett v. Vance*,
685 S.W.3d 495 (Mo. Ct. App. 2023)....................................................................20

*Fitzgerald v. Peek*,
636 F.2d 943 (5th Cir. 1981) ...........................................................................16, 18

*For Your Eyes Alone, Inc. v. City of Columbus, Ga.*,
   281 F.3d 1209 (11th Cir. 2002) ..................................................................12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)........................................................................22, 23

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) .......................................................................9

*Grunseth v. Marriott Corp.*,
   868 F. Supp. 333 (D.D.C. 1994) .................................................................31

*Gullemard-Ginorio v. Contreras-Gomez*,
   585 F.3d 508 (1st Cir. 2009)........................................................................8

*Haw. Hous. Auth. v. Midkiff*,
   467 U.S. 229 (1984)..........................................................................11, 13

*Hill v. Snyder*,
   878 F.3d 193 (6th Cir. 2017) ............................................................12, 13, 14

*Hill v. Snyder*,
   No. 2:10-cv-14568-MAG_RSW (E.D. Mich. June 20, 2016)................................12

*Houston Cmty. Coll. Sys. v. Wilson*,
   595 U.S. 468 (2022)...............................................................................30

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)...............................................................................32

*J. & W. Seligman & Co. Inc. v. Spitzer*,
   No. 05 Civ. 7781 (KMW), 2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007) ..............9

*JMM Corp. v. District of Columbia*,
   378 F.3d 1117 (D.C. Cir. 2004) ..................................................................11

*Juidice v. Vail*,
   430 U.S. 327 (1977)........................................................................9, 10, 16

*State ex rel. Koster v. Charter Commc'ns, Inc.*,
   461 S.W.3d 851 (Mo. Ct. App. 2015)............................................................5

*Lewellen v. Raff*,
   843 F.2d 1103 (8th Cir. 1988) ................................................................2, 16

*Lupin Pharmaceuticals, Inc. v. Richards*,
   No. RDB-15-1281, 2015 WL 4068818 (D. Md. July 2, 2015)..............................11

*Major League Baseball v. Crist*,
    331 F.3d 1177 (11th Cir. 2003) ............................................................................31

*Moore v. Crocker*,
    674 S.W.3d 146 (Mo. Ct. App. 2023) ..............................................................24, 26

*Mouzavires v. Baxter*,
    434 A.2d 988 (D.C. 1981) ....................................................................................20

*Mulholland v. Marion Cnty. Election Bd.*,
    746 F.3d 811 (7th Cir. 2014) ..................................................................................8

*Music Makers Holdings, LLC v. Sarro*,
    No. 09-cv-1836 (RWT), 2010 WL 2807805 (D. Md. July 15, 2010)....................23

*Nationwide Biweekly Admin., Inc. v. Owen*,
    873 F.3d 716 (9th Cir. 2017) ..........................................................................12, 13

*Netflix, Inc. v. Babin*,
    88 F.4th 1080 (5th Cir. 2023) ........................................................................15, 17

*New England Carpenters Pension Fund v. Haffner*,
    391 S.W.3d 453 (Mo. Ct. App. 2012)...................................................................17

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989).................................................................................................7

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)...............................................................................................27

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987)...................................................................................................27

*Perez v. Ledesma*,
    401 U.S. 82 (1971)...........................................................................................14, 18

*Phelps v. Hamilton*,
    59 F.3d 1058 (10th Cir. 1995) ........................................................................15, 18

*Planned Parenthood of the St. Louis Region v. Bailey*,
    No. 2322-CC00637 (St. Louis Cir. Ct. Oct. 31, 2023) ....................................25, 26

*Reed Enters. v. Corcoran*,
    354 F.2d 519 (D.C. Cir. 1965) (Skelly Wright, J.) ...............................................26

*Reisman v. Caplin*,
    375 U.S. 440 (1964)...............................................................................................24

*Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State Univ.*,
   665 N.E.2d 914 (Ind. Ct. App. 1996) .................................................................19

*Shaw v. Garrison*,
   467 F.2d 113 (5th Cir. 1972) ......................................................................15, 18

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*,
   27 F.4th 886 (3d Cir. 2022) ............................................................... *passim*

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ............................................................................ *passim*

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ...................................................................................8

*Stroman Realty v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) ......................................................................23

*TitleMax of Del., Inc. v. Weissman*,
   24 F.4th 230 (3d Cir. 2022) ......................................................................1, 5

*Tokyo Gwinnett, LLC v. Gwinnett County*,
   940 F.3d 1254 (11th Cir. 2019) .........................................................11, 12, 13

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) ....................................................................24

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................21

*Wilson v. Thompson*,
   593 F.2d 1375 (5th Cir. 1979) .....................................................................15

*Yelp, Inc. v. Paxton*,
   No. 23-cv-4977-TLT, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ........................8, 9

*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................................1, 3

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978) .................................................................................30

## Statutes & Rules

D.C. Code § 13–423(a)(1) ..................................................................................20

Mo. Stat. § 407.040 ..........................................................................................4

Mo. Stat. § 407.070 ......................................................................................17, 25

Mo. Sup. Ct. R. 51.05 ...............................................................................................................19

Mo. Sup. Ct. R. 55.27 ...............................................................................................................19

N.J. Stat. § 56:8-3 ......................................................................................................................4

N.J. Stat. § 56:8-4 ......................................................................................................................4

**Other Authorities**

@AGAndrewBailey, X.com (May 8, 2024, 5:18 PM),
    https://twitter.com/AGAndrewBailey/status/1788317466986172648....................................18

@AGAndrewBailey, X.com (May 8, 2024, 5:26 PM),
    https://twitter.com/AGAndrewBailey/status/1788319713119875446....................................18

11A Wright & Miller Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ..............................................25, 26

17B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4255
    (3d ed.) .................................................................................................................................16

*Elon Musk*, Media Matters for America, https://www.mediamatters.org/elon-musk
    (last visited May 20, 2024) ..................................................................................................29

*Eric Hananoki*, Media Matters for America
    https://www.mediamatters.org/author/eric-hananoki (last visited May 20,
    2024) .....................................................................................................................................30

## INTRODUCTION

Bailey does not and cannot point to a single piece of evidence even plausibly suggesting that Plaintiffs Media Matters and Eric Hananoki are subject to jurisdiction in Missouri or have violated any Missouri law. His response renders the alleged basis for his civil investigative demand ("CID") an afterthought, focusing instead on a host of meritless procedural arguments in an effort to evade this Court's scrutiny. The reason he does this is obvious—his investigation is baseless, and his conduct toward Plaintiffs is flagrant and unlawful retaliation against their exercise of constitutionally-protected rights. This Court already considered and rejected nearly all of Bailey's arguments when it granted Plaintiffs' motion for a preliminary injunction against Texas Attorney General Paxton. The sole exception is Bailey's attempt to invoke abstention under *Younger v. Harris*, 401 U.S. 37 (1971), but that doctrine does not apply here for a host of reasons.

First, *Younger* does not apply to Bailey's strategically timed lawsuit to enforce the Missouri CID ("CID Proceeding") because it neither is a "civil enforcement proceeding" nor involves "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up). Several recent appellate decisions—all ignored by Bailey—confirm that an action to enforce an administrative subpoena like the Missouri CID does not trigger *Younger* abstention because it does not charge the recipient with a substantive violation of law. *See Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 896 (3d Cir. 2022); *TitleMax of Del., Inc. v. Weissman*, 24 F.4th 230, 237 (3d Cir. 2022). Here, Bailey has not charged Media Matters with a substantive violation of the Missouri Merchandising Procedures Act ("MMPA"), and the CID Proceeding concerns only *Bailey's* efforts to perform his *executive* function, not the "state courts' ability to perform their judicial functions," *Smith & Wesson*, 27 F.4th at 895–96 (quoting *Sprint*, 571 U.S. at 78).

1

Second, even if the CID Proceeding fell within a *Younger* category, abstention would be inappropriate because substantial proceedings occurred in this case before Bailey commenced the CID Proceeding in Missouri court. It does not matter that Bailey was not yet a party to these proceedings. He has admitted that he was well aware of this case, Pet. for Order to Enforce Civil Investigative Demand, ECF No. 36-2 ("CID Petition") ¶ 20, that he "coordinated" with Paxton in launching his investigation, Order Granting Pls.' Mot. to Suppl. Compl. 3, ECF No. 44, and that the Missouri CID is "virtually identical" to the Texas CID that is the subject of the Court's existing injunction, *id.* at 2. Indeed, this case not only pre-dated Bailey's initiation of the CID Proceeding, it is by Bailey's admission the reason *why* he filed the CID Petition before giving Media Matters the opportunity to respond to the CID in the first place. Extensive authority—and basic notions of judicial efficiency and fairness—make clear that *Younger* does not require Plaintiffs to proceed in this Court against Paxton, in Missouri court against Bailey, and in some undetermined forum or forums against any other state officials who may answer Defendants' call to punish Plaintiffs for their speech.

Third, there is overwhelming evidence that Bailey has acted in bad faith and brought the Missouri action to harass Plaintiffs in retaliation for their exercise of constitutionally protected rights and specifically in order to invoke *Younger* abstention. Bailey asks the Court to ignore this evidence, insisting that the bad faith exception to *Younger* only applies when the state court *judges* overseeing the parallel state proceeding are acting in bad faith. Half a century of case law proves otherwise. *See Lewellen v. Raff*, 843 F.2d 1103, 1112 n.10 (8th Cir. 1988) (collecting examples). Bailey severely misreads the Supreme Court's holding in *Juidice v. Vail*, where the state court judges accused of bad faith *were the named federal defendants*, just like Bailey is here.

Bailey's remaining objections retread arguments already made by Paxton and already rejected by this Court. This Court has personal jurisdiction over Bailey because he hired an agent in D.C. to further his harassment against Media Matters here—just like Paxton. Plaintiffs' claims are ripe and justiciable because Bailey—like Paxton—is chilling their speech *now*, causing severe, irreparable harm. And prompt injunctive relief is both necessary and appropriate because Plaintiffs are likely to succeed on the merits and lack any other adequate legal remedy.

## ARGUMENT

## I.     The Court should decline to abstain under *Younger*.

Federal courts have a "virtually unflagging" duty to decide cases within their jurisdiction. *Sprint*, 571 U.S. at 77 (quotation omitted). *Younger* is a narrow, judge-made exception that can only apply where a federal case relates to one of three categories of ongoing state proceedings: (1) "state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (cleaned up). The CID Proceeding is none of these things. Moreover, *Younger* does not apply because proceedings of substance on the merits took place in this case before the CID Proceeding commenced. Finally, the Court should decline to apply *Younger* in any case because the CID Proceeding was brought in bad faith.

## A.     The state court proceeding is not a "civil enforcement proceeding."

The CID Proceeding is not a "civil enforcement" proceeding under *Younger*. The *Younger* doctrine was originally developed to keep federal courts from interfering with ongoing state *criminal* prosecutions, and has been extended only to those "civil enforcement proceedings" that are "akin to a criminal prosecution in important respects." *Id.* at 78–79 (cleaned up). Since then, "[t]he Supreme Court has . . . consistently narrowed abstention doctrines, including *Younger*, because they conflict with federal courts' virtually unflagging obligation to exercise their

3

jurisdiction." *Smith & Wesson*, 27 F.4th at 890 (cleaned up). To trigger *Younger*, "the state civil enforcement proceeding must be quasi-criminal in nature." *Id.* at 891 (cleaned up). Three factors guide this inquiry: whether "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation *that culminated with the filing of formal charges.*" *Id.* (emphasis added) (cleaned up); *see also Sprint*, 571 U.S. at 79–80. Because the second and third factors are not satisfied, this *Younger* category does not apply.

1.     **The CID Proceeding was not initiated to sanction Media Matters for a wrongful act.**

Courts have regularly—and recently—held that proceedings to enforce an administrative subpoena are not "civil enforcement proceedings" under *Younger*. Indeed, just two years ago in a similar case, the Third Circuit held that a "subpoena enforcement action is not a suit initiated to punish wrongdoing," and thus is not a "civil enforcement action" for *Younger* purposes. *Smith & Wesson*, 27 F.4th at 892. In that case, the New Jersey Attorney General was "investigating Smith & Wesson for possible violations of the New Jersey Consumer Fraud Act." *Id.* at 889. Acting under statutory language nearly identical to the Missouri law relied upon by Bailey, the Attorney General issued an administrative subpoena to Smith & Wesson seeking certain documents. *Id.*; *compare* N.J. Stat. §§ 56:8-3, 56:8-4, *with* Mo. Stat. § 407.040. Instead of producing the requested documents, Smith & Wesson filed a complaint for declaratory and injunctive relief in federal court, alleging a violation of its federal rights. *Smith & Wesson*, 27 F.4th at 889. The New Jersey Attorney General then sought enforcement of the subpoena in state court, which ordered Smith & Wesson to show cause and threatened it with contempt and a total ban on sales in New Jersey. *Id.* at 889–90. The federal district court abstained under *Younger*, and the Third Circuit reversed, holding that the subpoena enforcement action was neither a "civil enforcement proceeding" nor a "civil

4

proceeding[] involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 891 (quoting *Sprint*, 571 U.S. at 78). As the Third Circuit explained, "*Sprint* teaches that a suit is meant to punish wrongdoing where the state court defendant (the federal plaintiff) violated a legal right or duty." *Id.* at 892 (citing *Sprint*, 571 U.S. at 79).

As in *Smith & Wesson*, the sole issue before the state court is whether Plaintiffs must produce documents in response to Bailey's CID. *Compare id.* at 892 (noting "the complaint alleged only violation of a subpoena"), *with* CID Petition at ¶¶ 21–26; *see also State ex rel. Koster v. Charter Commc'ns, Inc.*, 461 S.W.3d 851, 857 (Mo. Ct. App. 2015) ("CIDs issued by the AG are administrative subpoenas"); *TitleMax*, 24 F.4th at 237 ("While enforcement of the subpoena may require [the plaintiff] to produce information, it is not retributive in nature or imposed to punish some wrongful act." (cleaned up)). As in *Smith & Wesson*, Bailey's state court action "did not allege that [Media Matters] violated any substantive legal duty. To date, he has not accused [Media Matters] of violating the [MMPA]; he is *investigating possible violations.*" 27 F.4th at 892 (emphasis added); *see also* CID Petition at 2 (noting CID was issued "to investigate possible violations of" the MMPA). And, as in *Smith & Wesson*, "[Media Matters] did nothing wrong, so the suit cannot be one initiated to sanction it for some wrongful act." 27 F.4th at 892 (cleaned up). "Instead of producing the documents . . . it petitioned a federal court to adjudicate its rights and obligations. Federal law authorizes just such a civil action (*i.e.*, one alleging that the Attorney General violated the company's constitutional rights)." *Id*. at 892–93.

If anything, the case against abstention here is even stronger. The New Jersey Attorney General at least alleged that Smith & Wesson had violated a procedural obligation to comply with the subpoena. Here, Media Matters *did not even have an opportunity* to comply because Bailey ran to state court to seek enforcement *at the same time* he issued the Missouri CID. Thus, even if

noncompliance with the CID itself could be considered a "wrongful act," the CID Proceeding could not possibly be an action to "sanction" Media Matters for that conduct.

### 2. Bailey has not undertaken any investigation of Media Matters culminating in the filing of a formal complaint or charges.

The CID Proceeding is also not a "civil enforcement proceeding" within the meaning of *Younger* for another reason: there has been no preliminary investigation of Media Matters "culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 80. Bailey could not have investigated Media Matters's alleged failure to comply with the CID because the CID Petition was filed the same day the CID was issued. That distinguishes this case from others like *Middlesex County* "where more robust preliminary investigations led to the filing of administrative complaints." *Smith & Wesson*, 27 F.4th at 891–92. Moreover, in cases where *Younger* applies, "the investigation and the charges concerned the same conduct." *Id.* at 892. By contrast, here "the substantive investigation concern[s] consumer fraud, yet the complaint allege[s] only violation of a [CID]." *Id.* The *only* relief sought in the CID Petition is compliance with the CID—it seeks no sanction for violations of the MMPA or any substantive provision of law.

### 3. Bailey's authorities are inapposite.

None of the authorities Bailey cites for his argument that the CID Proceeding is a "civil enforcement proceeding" offer him any help.

Bailey first points to *Backpage.com, LLC v. Hawley*, No. 4:17-CV-1951 PLC, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017), an unpublished district court decision that pre-dated the Third Circuit's analysis in *Smith & Wesson* and misunderstood the Eighth Circuit's decision in *Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874 (8th Cir. 2002), on which it principally relied. 2017 WL 5726868 at *6–7. In fact, *Cedar Rapids* is entirely consistent with *Smith &*

*Wesson*, and its reasoning further demonstrates why the CID Proceeding here is *not* a "civil enforcement proceeding" under *Younger*.

In *Cedar Rapids*, the Eighth Circuit held that the underlying state action against one co-plaintiff (U.S. Cellular) was a "civil enforcement proceeding" because, unlike here, it sought injunctive relief for alleged violations of substantive consumer protection law. *See* 280 F.3d at 877 (explaining U.S. Cellular was formally alleged to be "violating numerous provisions of the Iowa Consumer Credit Code and the other provisions of Iowa law"). But the Eighth Circuit held that the Attorney General's administrative action against the other co-plaintiff (WWC), unlike its enforcement action against U.S. Cellular, "involve[d] nothing more than an attempt to obtain information about WWC's business practices," and "d[id] not give the Attorney General, or anyone else, the power to declare whether those practices violate state law." *Id.* at 882. The *Backpage* court mistakenly reasoned that the CID enforcement proceeding against Backpage was more akin to the enforcement proceedings against U.S. Cellular, simply because both were filed in state *court*. *See* 2017 WL 5726868 at *7. But that was wrong. Under *Cedar Rapids*, like *Smith & Wesson*, the relevant distinction was whether the action sought to sanction a violation of substantive law or merely sought information—not whether the action was an administrative proceeding or brought in state court. *See Cedar Rapids*, 280 F.3d at 882 (recognizing that "[a]dministrative proceedings" like the one against WWC "may be judicial for purposes of *Younger* if they declare and enforce liabilities between the parties" (quotations omitted)); *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 371 (1989) (explaining that the "proper characterization" of a proceeding "depends not on the character of the body but upon the character of the proceedings" (quotations omitted)). The CID Proceeding here, like the administrative action against WWC in *Cedar Rapids*, seeks only information, not a

declaration of Media Matters's liability under state law. *See Cedar Rapids*, 280 F.3d at 882 (holding *Younger* did not apply as to WWC).

The *Backpage* court also improperly concluded that it was sufficient that the "state-court action clearly involves an investigation with the *potential* to culminate in the filing of a formal complaint or charges." 2017 WL 5726868 at *6 (emphasis added). But "[t]he possibility that a state proceeding may lead to a future prosecution . . . is not enough to trigger *Younger* abstention; a federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014); *see also Steffel v. Thompson*, 415 U.S. 452, 454 (1974) (*Younger* does not prevent federal declaratory relief "when a state prosecution has been threatened, but is not pending"); *Gullemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 519 (1st Cir. 2009) ("[R]equiring the commencement of 'formal enforcement proceedings' before abstention is required[] better comports with the Supreme Court's decisions in *Younger* and its progeny, in which an indictment or other formal charge had already been filed against the parties seeking relief at the time the federal action was brought." (collecting cases)). Indeed, *Cedar Rapids* itself clearly rejected that proposition as to WWC, which was not then facing any formal charges of violating state law. *See Cedar Rapids*, 280 F.3d at 882 ("Although the Attorney General's demand for information may ultimately result in a judicial proceeding, there is no indication that a judicial proceeding was imminent at the time this case was filed.").

The other cases relied on by Bailey only reinforce the distinctions between quasi-criminal proceedings and the CID Proceeding here. In *Yelp, Inc. v. Paxton*, the state proceedings were "quasi-criminal enforcement actions that involve sanctions, including civil penalties of up to $10,000 per violation of the [Texas Deceptive Trade Practices Act]." No. 23-cv-4977-TLT, 2024

8

WL 413464, at *3 (N.D. Cal. Feb. 1, 2024).[1] In *Berrada Properties Management, Inc. v. Romanski*, the court similarly abstained in favor of a state proceeding where "the State s[ought] a judicial determination of fault" as well as "injunctive relief, restitution, and civil forfeitures for violations of [substantive Wisconsin law]." 608 F. Supp. 3d 746, 750, 753 (E.D. Wis. 2022). Finally, *J. & W. Seligman & Co. Inc. v. Spitzer* relied on a series of cases involving *criminal* grand jury subpoenas and search warrants to hold that the mere issuance of a *civil* subpoena (without enforcement) triggers *Younger*. No. 05 Civ. 7781 (KMW), 2007 WL 2822208, at *5 (S.D.N.Y. Sept. 27, 2007). As even Bailey acknowledges, *see* Bailey's Opp'n to TRO & Prelim. Inj. 14, ECF No. 56 ("Opp."), courts have since rejected that principle as to non-self-executing administrative subpoenas like the CID here. *Google, Inc. v. Hood*, 822 F.3d 212, 223, 224 n.7 (5th Cir. 2016) (rejecting *Seligman*).

## B.   The state court proceeding does not involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

For similar reasons, the CID Proceeding does not involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (cleaned up).

Bailey's reliance on *Juidice v. Vail*, 430 U.S. 327 (1977), demonstrates the flaw in his argument. In that case, a default judgment had been entered in state court against Vail, who was then served with a subpoena to give information relevant to the satisfaction of judgment. *Id.* at 329. When he failed to comply with the subpoena, the state court ordered him to show cause why he should not be punished for contempt. *Id.* And when he failed to appear for that hearing, the court held him in contempt. *Id.* Vail and other plaintiffs then filed a federal suit against the state court judges to enjoin the state court's future use of statutory contempt procedures. *Id.* at 330.

---

[1] Notably, "Yelp [did] not contest" this element of *Younger*. *Id.*

*Juidice* does not stand for the blanket proposition that an action to enforce a subpoena—particularly an administrative subpoena like the CID at issue here—is "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. As the Third Circuit has pointed out, "[t]he subpoenas in *Juidice* were 'court-sanctioned,' not administrative subpoenas, like the one at issue here. And both plaintiffs had violated court orders." *Smith & Wesson*, 27 F.4th at 894 (citation omitted). None of that is true here.

Furthermore, the "key thread" to *Juidice* and other cases under *Younger*'s third category is "the certainty of the state court's action." *Id.* In cases falling into this category, "the substantive outcome had occurred [in state court]; only enforcement remained, and the Supreme Court refused to impede that enforcement." *Id.* Thus, in *Juidice* the state court had already ordered the plaintiffs to show cause why they should not be held in contempt for ignoring the subpoena, and the plaintiffs had already violated that order. 430 U.S. at 328–29. What they sought to enjoin was the state court's enforcement of its contempt order. Here, by contrast, Plaintiffs seek to enjoin *Bailey* from enforcing the CID, and the state court proceedings he initiated to do so have not even commenced in substance. A judge was assigned just six days ago, and there is "much more for the state court to do than merely implement a predetermined outcome." *Smith & Wesson*, 27 F.4th at 894.

Again, Bailey relies on *Backpage*, but as discussed, that court misconstrued the nature of the underlying proceeding. It reasoned that a CID enforcement proceeding "necessarily affects functions performed by the state court" because Missouri law authorizes the Attorney General to seek a court order enforcing a CID. 2017 WL 5726868 at *7–8. Under that circular reasoning, *any* state court action would necessarily qualify under *Younger*'s third category, and federal courts "would have to abstain whenever there was a pending civil proceeding." *Smith & Wesson*, 27 F.4th at 895. "But that approach would run afoul of the Supreme Court's insistence that 'even in the

presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Id.* (quoting *Sprint*, 571 U.S. at 81–82).[2]

### C. There were proceedings on the merits in this case before the CID Proceeding was filed.

Even if the CID Proceeding fell into the categories of cases to which *Younger* applies, it would still be inappropriate to abstain because *Younger* applies only where "the state proceedings were initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1126 (D.C. Cir. 2004) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)). Federal courts do not abstain where a case has moved beyond the "embryonic stage" prior to the state court action. *Midkiff*, 467 U.S. at 238 (citation omitted).

"In assessing whether abstention was proper, courts look to 'the time that the district court has spent considering the case, any motions ruled on, any discovery, the number of conferences [or hearings] held, and any change in the parties' position as a result of the federal litigation.'" *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1272 (11th Cir. 2019) (alteration in original) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728–29 (9th Cir. 2017)). "Courts also consider the filing of motions, even if the district court did not rule on the motions." *Id.*

Here, the CID proceeding began well *after* substantive proceedings on the merits had taken place in this case, and each of the relevant considerations show that abstention would be inappropriate here. The original complaint in this federal action was filed on January 17, 2024. Since then, this Court has spent significant time assessing and even issuing rulings on the merits.

---

[2] *Lupin Pharmaceuticals, Inc. v. Richards*—which also predates *Smith & Wesson*—committed a similar error. No. RDB-15-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015).

Indeed, months before Bailey initiated the CID Proceeding on March 25, this Court took testimony and considered briefing and argument on Plaintiffs' motion for a preliminary injunction against Paxton for the same conduct, as well as on Paxton's motion to dismiss. The Court held a hearing on the preliminary injunction motion on February 15, and ordered supplemental briefing. These developments constituted "proceedings of substance on the merits." *Nationwide*, 873 F.3d at 728 (cleaned up); *see also For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1218 (11th Cir. 2002) (finding abstention improper after filing of a complaint, motion to dismiss, answer, and summary judgment motion and the court held an evidentiary hearing and denied a motion for a temporary restraining order). There was also a "change in the parties' position" due to this litigation. *Tokyo Gwinnett*, 940 F.3d at 1272 (quoting *Nationwide*, 873 F.3d at 728–29). Namely, Paxton agreed not to enforce the Texas CID while the preliminary injunction motion was pending, leading the Court to deny Plaintiffs' motion for a temporary restraining order as moot. Def.'s Resp. to Order of the Ct., ECF No. 11; January 23, 2024 Minute Order. These "significant and substantial procedural steps" have moved this litigation beyond its "embryonic stage." *Tokyo Gwinnett*, 940 F.3d at 1272 (quotations omitted).

It does not matter that Bailey was added as a defendant after he commenced the CID Proceeding in Missouri. The filing of a supplemental complaint to account for these events does not make this a "new case." *Hill v. Snyder*, 878 F.3d 193, 206 (6th Cir. 2017). "That very concept is at odds with the idea of amending pleadings, a practice deliberately built in to our civil justice system." *Id.* That is true even where the amended pleading adds a new defendant. *See* 2d Am. Compl., *Hill v. Snyder*, No. 2:10-cv-14568-MAG_RSW (E.D. Mich. June 20, 2016), ECF No. 130 (adding Michigan Attorney General as a party); *see also Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-CV-00729-DN-EJF, 2015 WL 791595, at *7 (D. Utah Feb. 25, 2015) ("Proceedings of

substance on the merits occurred in federal court before the State Action was filed, and it is of no consequence that [the defendant invoking *Younger*] was added as a party to this litigation later in time."). Simply put, "[w]hen federal litigation is beyond its embryonic stage, the addition of new claims is not controlled by *Younger* abstention[.]" *Tokyo Gwinnett*, 940 F.3d at 1270 n.6. "Neither the Supreme Court's precedent nor ours tells us that the door to *Younger* is reopened when a plaintiff—many months after a case has been filed—amends its complaint to bring additional claims related to the same controversy." *Id*. at 1270.

This rule makes sense, and its reasoning applies to this case. *Younger* recognizes that "significant expenditure of effort by the federal court counsels against abstaining in deference to subsequently-initiated state cases." *Nationwide*, 873 F.3d at 729. Those same "considerations of economy, equity, and federalism" still apply when a pleading has been amended or a defendant has been added. *Midkiff*, 467 U.S. at 238. As the Sixth Circuit explained: "Federalism is not a one-way street; it reflects a 'sensitivity to the legitimate interests of *both* State and National Governments.' The interests of the federal courts matter, too[.]" *Hill*, 878 F.3d at 206 (citation omitted) (quoting *Younger*, 401 U.S. at 44). For that reason, "[l]ater-filed state court proceedings do not require federal courts to wade into a *Younger* analysis when they and the parties have already expended significant resources to resolve the federal claims." *Id.*

Here, as in *Hill*, the Court has already "expended significant resources to resolve the federal claims," so "[t]o jump ship now would be to exhibit a callous disregard for the meaningful litigation that has already occurred in the federal court system." *Id.* As the Court has already explained, the Missouri and Texas investigations arise out of the "same transaction [or] occurrence." ECF No. 44 at 3. The Missouri CID is "virtually identical" to the Texas CID that is the subject of the injunction already in place. *Id.* at 2. Bailey has admitted that he "coordinated"

with Paxton. *Id.* at 3. And the claims asserted against both Defendants are the same. Abstaining under *Younger* as to Bailey while this case moves forward against Paxton would result in parallel state and federal litigation over what is effectively a single investigation—or, at minimum, coordinated and overlapping investigations—led by two state attorneys general working in concert, raising identical federal issues. The considerations of judicial economy undergirding *Midkiff* and its progeny counsel strongly against such duplicative bifurcation of proceedings where this Court has already invested significant time and effort.

Moreover, abstaining would allow Defendants—and potentially other state actors—to skirt this Court's jurisdiction by acting in concert to file CID proceedings in other states. Both Paxton and now Bailey have encouraged peers to do just that. *See* Compl. ¶ 51; Suppl. Compl. ¶ 36. Bailey himself admits he commenced the CID Proceeding *in response* to this case. CID Petition ¶ 20; Suppl. Compl. ¶¶ 20, 24. The Sixth Circuit foresaw such mischief in *Hill*: "While litigants presumably know if they face state court prosecutions at the time they file related federal complaints, they cannot predict future prosecutions. Yet Defendants' approach would allow subsequent unforeseen prosecutions to cut the legs out from under long-running federal litigation." 878 F.3d at 205. "*Younger* stands for the proposition that in some instances a federal court should not interfere with a substantive state judicial proceeding. Here, the opposite situation exists." *Derma Pen*, 2015 WL 791595, at *7.

### D.    Bailey issued the CID and commenced the CID Proceeding in bad faith.

Abstention is also inappropriate where state officials commenced a state court action "in bad faith without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). This is because "a state cannot have a legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing actions otherwise brought in bad faith, thereby

reducing the need for deference to state proceedings." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994) (citation omitted); *see also Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023).[3]

As Plaintiffs have shown, *see* Exs. 4, 6 & 7 to Pls.' Mot. to Suppl. Compl., ECF Nos. 39-4, 39-6 39-7, Bailey's *stated purpose* for investigating Media Matters is to "retaliate for or deter the exercise of constitutionally protected rights." *Netflix*, 88 F.4th at 1091 (quotations omitted). This makes out a textbook case for application of the bad faith exception. *Id.*; *see also Phelps v. Hamilton*, 59 F.3d 1058, 1064 n.12 (10th Cir. 1995) ("[I]f prosecutions are brought for the purpose of chilling or preventing a defendant from exercising his or her constitutional rights, this may constitute a harassing and/or bad faith prosecution, even though the charges are predicated on probable cause." (collecting cases)). For instance, the Second Circuit applied the bad faith exception where a teacher was disciplined after distributing leaflets opposing the re-election of school board members. *Cullen*, 18 F.3d at 104. The Fifth Circuit recently affirmed application of the exception where a prosecutor sought four new indictments to retaliate for the filing of a federal habeas corpus action. *Netflix*, 88 F.4th at 1091. Courts have also held that the exception applies where a prosecutor pursued charges against a plaintiff to gain publicity for himself, *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), where the prosecution was motivated to deter the filing of a civil suit against state officers, *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), and where

---

[3] Media Matters did not "waive" the bad faith exception by failing to affirmatively raise it before the *Younger* doctrine was ever invoked. *See* Opp. 18–19. Bailey injected *Younger* into this litigation for the first time in his opposition brief. The bad faith exception thus "fall[s] within the scope of the matters the opposing party raised in opposition," and may appropriately be raised in a reply brief. *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 188 (D.D.C. 2012) (cleaned up). Plaintiffs were not required, in their preliminary injunction motion, to anticipate Bailey's invocation of a defense which, as explained above, plainly does not apply. Moreover, this brief is Plaintiffs' first opportunity to respond to arguments made in support of Bailey's motion to dismiss, and so the argument plainly is also not waived as to that motion.

prosecution was brought as punishment for criticizing public officials, *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981); *see also Lewellen*, 843 F.2d at 1112 n.10 (collecting examples).

As these cases demonstrate, Bailey is simply wrong that the bad faith exception applies only when the judges overseeing the state action act in bad faith; he invented that rule out of whole cloth. *None* of these cases applying the bad faith exception made such a finding, and there is no case supporting that rule. Bailey's argument badly distorts the only authority that he relies on for it. Opp. 19–20. Specifically, *Juidice* discussed the bad faith of judges in the state court proceeding because *they were the named defendants in the federal case.* 430 U.S. at 329–30. Bailey's carefully excerpted citation to *Wright & Miller*'s description of *Juidice* is no more helpful to him. The cited footnote explains: "In the light of [*Juidice*] it would be a truly incredible case in which the 'bad faith' exception could be satisfied *in private litigation*, since the bad faith *of the private plaintiff* would be irrelevant and the Younger exception, under *Juidice*, requires a showing a bad faith on the part of the state court judges." 17B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4255 n.11 (3d ed.) (emphasis added). The CID Proceeding is not "private litigation," and Attorney General Bailey is not a "private plaintiff."

Here, evidence of bad faith abounds. At every step, Bailey has made clear that he means to punish Media Matters for its speech and not to pursue any good faith investigation. He launched this investigation at the urging of online activists calling on state officials to retaliate against Media Matters. *See* Compl. ¶ 47; Suppl. Compl. ¶ 10. For months, Bailey took no meaningful steps to confer with Media Matters, choosing instead to make extreme and nakedly partisan accusations about them in public statements, all while this case was proceeding on the merits. Suppl. Compl. ¶¶ 11, 20, 26; *see also* Mem. Op. Granting Prelim. Inj. 38, ECF No. 37 ("PI Op.") (finding such remarks to be "evidence of retaliatory intent"); *cf. Cullen*, 18 F.3d at 104 (applying bad faith

exception based on "past history of personal conflict" and "ad hominem" attacks against the federal plaintiff). Bailey echoed Paxton in encouraging other state officials to join his "war" on Media Matters. Supp. Compl. ¶ 36; *see also* PI Op. 38 (finding such encouragement evidence of retaliation). Bailey has admitted that he has coordinated with Paxton, but notably waited until *after* the parties here fully briefed and argued a motion regarding the Texas CID before issuing his own CID and simultaneously filing the CID Petition. *Cf. Netflix*, 88 F.4th at 1092 (affirming application of bad faith exception where, after period of inactivity, there was "a burst of prosecutorial alacrity" shortly after habeas action was filed).

The timing of the CID Petition also smacks of a bad faith attempt to evade this Court's jurisdiction. Under Missouri law, when a CID is served, the recipient of the CID generally has 20 days to either (1) comply or (2) file "a petition to extend the return date for, or to modify or set aside the civil investigative demand, stating good cause." Mo. Stat. § 407.070. Bailey did not wait 20 days to allow Media Matters to comply; instead, he filed the CID Petition the *same day* he issued the CID, before Media Matters even *received* it.[4] The reason for this extraordinary behavior is obvious: as even Bailey appears to admit, CIDs are "non-self-executing," and thus their issuance alone does not trigger *Younger* abstention. Opp. 14 (citing *Google*, 822 F.3d at 223; *Backpage*, 2017 WL 5726868, at *6). Bailey pointed to this very litigation as the reason why he was ignoring this ordinary waiting period. *See* CID Petition ¶ 20; *see also* Ex. 7 to Pls.' Mot. to Suppl. Compl.,

---

[4] Bailey has cited no authority permitting him to simply ignore Missouri statutory law in rushing to preemptively file the CID Petition. The sole case he cites has nothing to do with the MMPA and relies upon a near-century old body of law concerning requirements for derivative shareholder suits under Missouri law. *See New England Carpenters Pension Fund v. Haffner*, 391 S.W.3d 453, 460 (Mo. Ct. App. 2012) (citing *Punch v. Hipolite Co.*, 100 S.W.2d 878, 885 (Mo. 1936)). He tellingly does not identify any past instances where he preemptively sued a CID recipient. Nor has he explained why such urgency can be justified, given that he sat on his hands for three months before serving a copy-and-paste CID that regurgitates Paxton's CID in nearly every way.

ECF No. 39-7 at 3. Had Bailey waited 20 days consistent with the statute, he would have no colorable basis to invoke *Younger* to stave off Plaintiffs' inevitable request for emergency relief from Bailey's copycat CID. The Court should not sanction such procedural gamesmanship.[5]

Although a showing of harassment or retaliation "will justify an injunction regardless of whether valid convictions conceivably could be obtained," *Fitzgerald*, 636 F.2d at 945, abstention is *also* inappropriate because Bailey has "[no] hope of obtaining a valid conviction" for violation of Missouri consumer protection law. *Perez*, 401 U.S. at 85. The CID Petition itself confirms as much. In its scant eight pages, the Petition fails to (1) identify any serious basis for jurisdiction in Missouri; (2) identify any injury, or even any *effect*, that Media Matters has allegedly caused in Missouri; or (3) meaningfully explain how Media Matters has possibly violated any Missouri laws. But the purpose of Bailey's "investigation" is not to formulate a claim against Media Matters for violation of the MMPA, much less successfully pursue it to judgment. As his stream of partisan accusatory language and conduct towards Media Matters shows, Supp. Compl. ¶¶ 11, 19–20, 26, 36, his real purpose is "to retaliate for [and] to deter constitutionally protected conduct." *Cullen*, 18 F.3d at 103; *see also Phelps*, 59 F.3d at 1064 n.12.

### E.  Media Matters has not consented to jurisdiction in Missouri.

In a gambit to prop up his abstention argument, Bailey suggests Media Matters has waived its objection to personal jurisdiction in Missouri. Opp. 22–23. This Court need not resolve that

---

[5] Since being added as a Defendant, Bailey has continued to attack both Media Matters and this Court's authority to adjudicate this matter. *See* @AGAndrewBailey, X.com (May 8, 2024, 5:18 PM), https://twitter.com/AGAndrewBailey/status/1788317466986172648 ("Media Matters is attempting to shut down Missouri courts . . . D.C. courts have no say over Missouri courts. I have filed a motion to protect our ability to litigate in Missouri."); *see also* @AGAndrewBailey, X.com (May 8, 2024, 5:26 PM), https://twitter.com/AGAndrewBailey/status/1788319713119875446 ("Media Matters can't run to a DC court to evade Missouri law."). Bailey's publicity-seeking behavior and ad hominem attacks reinforce the bad faith nature of his investigation. *E.g.*, *Shaw*, 467 F.2d at 115–19; PI Op. 38 (explaining similar attacks are "evidence of retaliatory intent").

question of Missouri law, but the argument is meritless regardless. Bailey's argument rests entirely on Media Matters's application for a change of judge under Missouri Rule 51.05. *See* Mo. Sup. Ct. R. 51.05. Contrary to Bailey's erroneous argument, applications for change of judge are not "motions." Opposing parties are not entitled to respond to such applications, and courts lack any discretion to deny them: "When a party files a proper, timely application for change of judge, the trial court has no jurisdiction to do anything in the case other than grant the application." *Cover v. Robinson*, 224 S.W.3d 36, 38 (Mo. Ct. App. 2007); *see also* Mo. Sup. Ct. R. 51.05(a) ("A change of judge *shall* be ordered in any civil action upon the timely filing of a written application therefor by a party." (emphasis added)).

A separate rule—Rule 55.27(a)(2)—provides for an affirmative defense based on lack of personal jurisdiction. *See* Mo. Sup. Ct. R. 55.27(a)(2). Rule 55.27(g) explains that a "defense of: (A) [l]ack of jurisdiction over the person . . . is waived if it is: (A) [o]mitted from a motion [under Rule 55.27(f)], or (B) [n]either made by a motion under this Rule 55.27 nor included in a responsive pleading." Mo. Sup. Ct. R. 55.27(g); *see also* Mo. Sup. Ct. R. 55.27(f) (similar). Media Matters has not yet made any Rule 55.27 motion or filed any responsive pleading in Missouri.

Tellingly, Bailey does not cite a *single* Missouri case holding that a Rule 51.05(a) application waives an affirmative defense under Rule 55.27(a). Instead, he cites a case from *Indiana* that concerned a "motion" to change judges under Indiana law, *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State Univ.*, 665 N.E.2d 914, 919 (Ind. Ct. App. 1996), but not

an "application" under Missouri law. Bailey's remaining case law only confirms the grasping nature of his argument.[6]

## II.     This Court has personal jurisdiction over Bailey.

This Court has personal jurisdiction over Bailey for substantially the same reasons it has jurisdiction over Paxton. *See* PI Op. 18–28.[7]

### A.     This Court has long-arm jurisdiction over Bailey.

***Bailey is subject to subsection (a)(1).*** Bailey contends that (a)(1) does not apply because hiring a process server does not constitute "transacting any business in the District of Columbia." D.C. Code § 13–423(a)(1). But it is "well-settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here." *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) (citation omitted). Even "a single act may be sufficient to constitute transacting business," so long as the contact is "voluntary and deliberate, rather than fortuitous." *Id.* at 992, 995. That is what Bailey did here—he contracted with an agent to cause harmful consequences within D.C. Like Paxton, his choice to hire an agent to retaliate against Plaintiffs was plainly voluntary and deliberate. *See* PI Op. 24.[8]

With no trace of irony, Bailey complains that finding jurisdiction under (a)(1) would mean a party "could never sue an out-of-state entity . . . without subjecting themselves to a corresponding retaliatory lawsuit filed in the state of service." Opp. 24. Under Bailey's view, Media Matters can

---

[6] *Everett v. Vance*, 685 S.W.3d 495, 502 (Mo. Ct. App. 2023) (personal jurisdiction waived by filing counterclaim and motion to dismiss); *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 679 (Mo. Ct. App. 2002) (personal jurisdiction waived by filing crossclaim); *State ex rel. Antoine v. Sanders*, 724 S.W.2d 502, 504 (Mo. 1987) (venue waived by filing answer).

[7] Bailey does not dispute that he is a "person" under the long-arm statute. *See* PI Op. 10–18.

[8] Bailey suggests that hiring a process server does not establish a "continuing corporate presence in" in the District of Columbia. Opp. 24–25. He ignores that "an ongoing course of conduct is not necessary to satisfy § 13-423(a)(1)." PI Op. 24 (citation omitted).

be forced into court in Cole County, Missouri—a jurisdiction with which Media Matters has not the faintest relevant connection—while Bailey may dispatch an agent into the District of Columbia to harass Media Matters without fear of appearing before a D.C. court. This Court has already properly rejected that argument, *see* PI Op. 19–22, and Bailey's own choice to hire an agent in the District of Columbia to cause an effect here suffices for (a)(1).

 *Bailey is subject to subsection (a)(3).* Bailey puzzlingly suggests that none of his tortious conduct occurred in D.C. because he "mailed [the CID] from Missouri" and "did not hire a process server in D.C. for the CID." Opp. 25. But there is no dispute that Bailey "us[ed] a process server to serve" the petition to enforce the CID on Media Matters in D.C. *Id.* at 27. The CID Petition—personally served on Media Matters by Bailey's agent—attached the CID as an exhibit and is part and parcel of Bailey's broader retaliatory campaign against Plaintiffs. Media Matters did not even receive the Missouri CID as-issued by Bailey until April 1—five days after it was sued for not complying with it. The copy attached to the CID Petition was the first time Media Matters formally received the CID from Bailey. And, if anything, serving the CID Petition is even *more* tortious than serving the CID alone, not least of all because Bailey filed the former in a bad faith effort to preempt Media Matters's ability to vindicate its rights in this Court. *Supra* I.D. Bailey dispatched an agent into D.C. to commit "abusive service of process [that] causes injury within the forum," PI Op. 26, and thus satisfies (a)(3).[9]

---

[9] Bailey relies on *Walden v. Fiore*, 571 U.S. 277, 285 (2014), a case which concerned due process and not the long-arm statute. Opp. 25. Regardless, *Walden* recognized that jurisdiction is appropriate where a party "reach[es] out beyond" their State and, through "physical entry into [another state]" causes harm. *Walden*, 571 U.S. at 285. That is this case. This Court previously distinguished Bailey's remaining authority. *See* PI Op. 26 (distinguishing *Slate v. Kamau*, No. 20-cv-3732 (BAH), 2021WL 3472438 (D.D.C. Aug. 6, 2021)).

Bailey repeats Paxton's argument that Plaintiffs may not rely upon their injury in D.C. to show that Bailey acted tortiously here. Opp. 26. This Court properly rejected that argument, finding that "principle has no application here" because there "is an identifiable act (physically serving the [Petition] on Media Matters) that is separate from the claimed injury (chilling of First Amendment rights)." PI Op. 27–28.

### B.   Exercising personal jurisdiction over Bailey is consistent with Due Process.

Bailey admits that he "used a process server for [his] state enforcement action" in D.C., but claims jurisdiction is improper because Media Matters "challenges much more than that." Opp. 27. That bare claim is irrelevant to the specific jurisdiction analysis, which asks whether Bailey has "tak[en] some act by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quotations omitted); *see also* Pls.' Mem. in Supp. of TRO & Prelim. Inj. Against Bailey 23–24, ECF No. 49-1 ("Mem."). Here, Plaintiffs' claims arise out of Bailey's retaliatory campaign directed towards them in D.C., of which Bailey's service of the CID Petition and CID are critical parts. As this Court explained, "it [is] reasonable to conclude that a lawyer who knowingly serves abusive process in a jurisdiction . . . is 'purposefully avail[ing] himself of the privilege of conducting activities within the forum State.'" PI Op. 20 (quoting *Schleit v. Warren*, 693 F. Supp. 416, 422–23 (E.D. Va. 1988)). It was Bailey's "own choice" to "reach[] out beyond" Missouri to serve abusive process in D.C. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Walden*, 571 U.S. at 285). Exercising jurisdiction over him thus accords with due process.

Bailey also claims the benefit of a so-called "default rule" that state agencies should not have to defend their enforcement of state laws in courts across the country. Opp. 28 (citing *Stroman Realty v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008)). But Bailey has "projected himself across state lines and asserted a pseudo-national executive authority" to police conduct occurring in D.C.

and Maryland, without any apparent connection to Missouri. *Def. Distributed v. Grewal*, 971 F.3d 485, 493 (5th Cir. 2020). As this Court has already explained, the "Fifth Circuit's decision in *Grewal* provides a close analogy to this case." PI Op. 21 (citing *Def. Distrib.*, 971 F.3d 485). Bailey cannot explain why the Court was wrong to conclude that *Grewal*—which extensively distinguished *Wercinski*, 971 F.3d at 491–92—applies here.[10]

Finally, Bailey claims without explanation that if he is subject to jurisdiction in D.C., so too must Media Matters be subject to jurisdiction in Missouri. Opp. 27–28. Such a claim reveals a stark misunderstanding of basic personal jurisdiction principles. Plaintiffs' injury "arise[s] out of . . . [Bailey's] contacts" with D.C. *Ford Motor Co.*, 592 U.S. at 359 (cleaned up). Plaintiffs' service of their supplemental complaint, in contrast, is unrelated to any purported injury that Bailey claims Media Matters caused in Missouri. Indeed, Bailey has failed to identify *any* injury, or even impact, that Media Matters has caused in Missouri. There is thus no reciprocity of jurisdiction.[11]

## III.   Plaintiffs' injuries are ripe and they lack an adequate remedy elsewhere.

Plaintiffs' claims are ripe and justiciable for substantially the same reasons this Court already found as to Paxton. *See* PI Op. 28–35. Bailey's argument to the contrary is nonsensical given that he is already seeking to enforce his CID. Accordingly, Bailey primarily argues that Plaintiffs have an adequate remedy available in Missouri state court. For the reasons discussed below, he is incorrect on all scores.

---

[10] *Music Makers Holdings, LLC v. Sarro*, No. 09-cv-1836 (RWT), 2010 WL 2807805, at *5 (D. Md. July 15, 2010)—which involved a private party mailing a "cease-and-desist letter," rather than any compulsory process, to another private party—is irrelevant.

[11] Bailey's claim that Media Matters must have "substantial contacts" with Missouri because it obtained a charity exemption ignores that specific jurisdiction requires that claims "arise out of" such contacts. *Ford Motor Co.*, 592 U.S. at 359. Bailey has not even claimed—never mind shown—that Media Matters's alleged contacts with Missouri have anything to do with its reporting on X and Musk.

***Lack of adequate remedy.*** Bailey chooses, like Paxton, to place great reliance on *Reisman v. Caplin*, 375 U.S. 440 (1964), for the idea that Media Matters has an adequate remedy at law. *See* Opp. 29–30. But in *Reisman* there "had not yet been an injury" to the plaintiffs, PI Op. 30 (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 (9th Cir. 2022)), and no injury even *could* have been cognizable until the plaintiffs first availed themselves of an administrative remedy, *see Twitter*, 56 F.4th at 1178 (explaining "the injury in *Reisman* would only occur if the document request were satisfied" after the administrative process). In contrast, Plaintiffs' First Amendment injury "is ongoing" and they "cannot 'avoid'" it "by challenging the document request" in Missouri state court. PI Op. 30 (quoting *Twitter*, 56 F.4th at 1179).

Bailey acknowledges this Court has already set aside *Reisman* but insists that Missouri law affords Media Matters a remedy that Texas law lacks. Specifically, whereas the Texas statute contemplated a recipient seeking relief in their county of residence, the parallel provision in the Missouri statute identifies Cole County as a catchall venue for petitioners. *See* Opp. 30 (citing Mo. Rev. Stat. § 407.070). That is a distinction without a difference. Seeking affirmative, contested relief in Missouri state court would likely require Plaintiffs to waive personal jurisdiction, including potentially over any subsequent civil suits related to the subject matter of the Missouri CID. *E.g.*, *Moore v. Crocker*, 674 S.W.3d 146, 150 (Mo. Ct. App. 2023). Consenting to jurisdiction in Missouri is not a meaningful remedy given that the very relief Plaintiffs seek is for the Attorney General of that state to cease overstepping his jurisdiction to retaliate against Media Matters for exercising its constitutional rights here in D.C.

The procedure under the MMPA also suffers from similar deficiencies as its Texas equivalent. Bailey, like Paxton, has taken the view that he has sweeping powers to issue and enforce CIDs. He claimed in a similar proceeding that the MMPA grants him power "akin to that

of a grand jury," permitting him to "investigate merely on suspicion that the law is being violated, or even just because [he] wants assurance that it is not."[12] At the same time, he asserts Media Matters has limited substantive and procedural rights in any Missouri proceeding. For example, he contends that the D.C. and Maryland reporter shield laws "do not apply extraterritorially" to Missouri, potentially stripping Plaintiffs of a privilege they enjoy here. Opp. 35. He also asserts that the MMPA does "not require[] [him] to show [his] hand," *id.* at 3, meaning Media Matters must defend itself in a proceeding where it is kept in the dark as to the claims being made against it. The Missouri statute provides only that CIDs may be set aside for "good cause," but fails to specify the substantive and procedural rights a petitioner enjoys under that provision. Mo. Rev. Stat. § 407.070. Bailey is plainly retaliating against Media Matters for its speech; the meager protections provided under Missouri law are not sufficient for Media Matters to protect itself.

Most critically, only this Court can grant Plaintiffs *complete* and *speedy* relief. *Cf. Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1550 n.76 (D.C. Cir. 1983) (en banc) (Spottswood, C.J., concurring) (explaining an alternative legal remedy must be "speedy and adequate"). After all, "an adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as a remedy in equity by injunction." 11A Wright & Miller Fed. Prac. & Proc. Civ. § 2944 (3d ed.) (quotations omitted).

Seeking relief in Missouri will not guarantee Media Matters a *complete* remedy. By his own admission, Bailey has "coordinated with Texas" and is "in talks with other states as well." Suppl. Compl. ¶ 36. Paxton is a party in this case but not in the Missouri CID Proceeding. It is

---

[12] *See* Resp't's Mot. for J. on Pleadings & Suggestions in Supp. at 1, 13, *Planned Parenthood of the St. Louis Region v. Bailey*, No. 2322-CC00637 (St. Louis Cir. Ct. Oct. 31, 2023) (attached as Ex. A).

doubtful that Media Matters can obtain relief against Paxton—or any additional state officials—in Missouri court. The upshot of Bailey's argument is that Media Matters has an adequate remedy at law because it may race around the country to defend itself in different state courts. The D.C. Circuit has squarely rejected such a theory. *See Reed Enters. v. Corcoran*, 354 F.2d 519, 520 (D.C. Cir. 1965) (Skelly Wright, J.). The court in *Reed* explained that being forced to defend themselves in a "multiplicity of legal proceedings" filed "throughout the United States" provided the plaintiffs with "no adequate remedy at law." *Id.*; *accord* 11A Wright & Miller Fed. Prac. & Proc. Civ. § 2944 (3d ed.) (remedy not adequate where "effective legal relief can be secured only by a multiplicity of actions").

Proceeding in Missouri also fails to guarantee Media Matters a *speedy* remedy. Planned Parenthood recently filed a petition to set aside another CID issued by Bailey and—after Bailey cross-petitioned to enforce—it took nearly thirteen months for the petitions to be resolved. *See Planned Parenthood of St. Louis v. Bailey*, Case No. 2322-CC00637 (St. Louis Cir. Ct.). Media Matters cannot afford to wait that long. There is no reason to expect a different timeline here, particularly since any petition filed by Media Matters in state court would likely be consolidated with Bailey's preemptive strike against it in Cole County. Bailey has for all practical purposes already chosen the timing, venue, and terms of any state court contest over the Missouri CID's validity. In no way do such proceedings afford Plaintiffs an adequate remedy at law.[13]

*Ripeness.* Bailey's undeveloped ripeness claim is based entirely on his contention that "there is [already] an enforcement action in Missouri state court" where Media Matters can litigate. Opp. 31. But Media Matters cannot rely on the Cole County proceedings to vindicate its rights for

---

[13] Seeking any preliminary relief would also only further the claim that Media Matters has consented to jurisdiction in Missouri. *See Moore*, 674 S.W.3d at 150.

the same reasons it cannot rely on filing a petition for relief in Missouri. It would also be perverse to hold that Media Matters has no choice but to vindicate its rights in proceedings that have been weaponized against it in a foreign venue for unlawful reasons (and improperly filed to evade this Court's jurisdiction). As this Court has already recognized, such a result would reward state officials for staggering their conduct in a manner intended to frustrate federal review of federal claims. *See* PI Op. 5 n.3; Pls.' Notice of Mo. Att'y Gen. CID & Pet. 2, ECF No. 36. That is a real concern here, where Bailey is coordinating with other state attorneys general, including Paxton. Suppl. Compl. ¶ 36. Bailey's reliance on *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) is misplaced. There, the parties did not dispute that the Defendant—Texaco—was subject to personal jurisdiction in the Texas state courts. *See generally Pennzoil*, 481 U.S. at 4. Plaintiffs are under no duty here to seek "judicial relief in a foreign forum." PI Op. 30.[14]

**IV.     Media Matters and Hananoki are likely to prevail on the merits of their claims.**

**A.     Plaintiffs are likely to prevail on their First Amendment retaliation claim.**

Bailey's attempts to rebut Plaintiffs' claim of retaliatory chill fall short.

First, Plaintiffs have satisfied the causation standard for a First Amendment claim. There is no doubt that "but-for" Bailey's retaliatory animus, Plaintiffs would not be subject to his harassment and abuse. *See Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). At every step, Bailey has made clear that he means to punish Media Matters's speech, not to pursue a good faith investigation. *See* Suppl. Compl. ¶¶ 10–11, 16–21, 24–37; ECF No. 36 at 1–3; 2d Suppl. Decl. of Eric Hanonoki ¶¶ 5-11, ECF No. 49-2 ("2d Suppl. Hananoki Decl."); Suppl. Decl. of Cynthia Padera ¶¶ 6–26, ECF No. 49-3 ("Suppl. Padera Decl."); Suppl. Decl. of Benjamin Dimiero ¶¶ 4–

---

[14] Bailey's reference to cases questioning pre-enforcement review of administrative subpoenas, *see* Opp. 31, is irrelevant both because Bailey *is* seeking to enforce the CID, and for the First Amendment-related reasons already identified by this Court. *See* PI Op. 28, 34–35.

9, ECF No. 49-5; *see also supra* I.D. Bailey has had months to identify evidence that his investigation has any basis in fact but offers only a single brief declaration that echoes the threadbare and conclusory allegations in the CID Petition. *See* Decl. of Assistant Atty. Gen. Steven Reed, ECF No. 56-1. Bailey, just like Paxton before him, has boasted publicly about the reasons underlying his investigation of Media Matters making clear it is a textbook exercise in "retaliatory intent." PI Op. 37–38 (finding Paxton's motive was the but-for cause of Plaintiffs' injury where causation evidence included Paxton's public statements about the investigation and attacking Media Matters).

Bailey mischaracterizes Plaintiffs' retaliation claim by arguing that Plaintiffs' only evidence of Bailey's retaliatory motive is that Media Matters once published a single critical article of him. *See* Opp. 33. In reality, that article is only one small piece of evidence among overwhelming proof of retaliatory motive. *E.g.*, Mem. 9–15, 30–31; *see generally* ECF No. 36. Bailey also suggests that his office would have investigated Media Matters anyway based on the facts in "X Corp.'s lawsuit" in the Northern District of Texas. Opp. 32. But that assertion raises more questions than answers. Nowhere does Bailey explain what interest the Missouri Attorney General has in a civil suit filed in Texas by a Nevada-incorporated and California-based company against a D.C.-based media organization about reporting that was done from Maryland. Bailey's brazen assertion of near limitless jurisdiction to "investigate" such reporting only highlights the clear evidence of retaliation here.

Next, Bailey argues that Media Matters is not actually suffering any chill, *see id.* 33–34, but fails to dispute the broad evidence that has been presented on this point, including the facts in Plaintiffs' declarations. Instead, he points to an article that Media Matters wrote criticizing *The New York Times*, in which Bailey was passingly mentioned as a subject of *that* paper's coverage.

And he claims, based on a "quick search," that Media Matters has published articles about Musk since November 2023. *Id.* Actually reviewing that search, however, reveals that the articles at issue either contain statements related to this litigation or only fleeting references to Musk. These passing references do not undermine Plaintiffs' substantial evidence of chill, and Plaintiffs "need not show that the government action led them to stop speaking 'altogether'" anyways. PI Op. 39 (quoting *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021)). Media Matters has not published articles focused on Musk since November.[15] That is consistent with the "uncontested evidence" in its declaration testimony, *e.g.*, 2d Suppl. Hananoki Decl. ¶ 12, upon which this Court relied in finding that Plaintiffs' "self-censorship in response" to Paxton's nearly identical investigation and CID "provides some evidence of the tendency of [Defendant's] conduct to chill First Amendment activity." PI Op. 37 (quoting *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 54 (D.D.C. 2013)); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Bailey's chill argument also ignores the reality of the injuries suffered by Plaintiff Hananoki, Media Matters's Senior Investigative Reporter. While Bailey's response does not *once* mention or acknowledge Hananoki, the Missouri CID expressly seeks documents directly related to Hananoki's investigative reporting, including confidential source information. *See* Mo. Civil Investigative Demand to Media Matters 4–5, ECF No. 39-5. As Hananoki has explained now in several declarations, his reporting on Musk's ownership of X has ceased because of the retaliation he is facing. *See* Decl. of Eric Hananoki ¶¶ 24–39, ECF No. 4-3; Suppl. Decl. of Eric Hananoki ¶¶ 2–6, ECF No. 28-1; 2d Suppl. Hananoki Decl. ¶¶ 10–14. He has described how, even when an article naturally lends itself to discussing Musk, he steers clear of the subject for fear of further

---

[15] *See generally Elon Musk*, Media Matters for America, https://www.mediamatters.org/elon-musk (last visited May 20, 2024).

29

retaliation. 2d Suppl. Hananoki Decl. ¶¶ 10–14. The significant drop-off in his publication output confirms the harm that Bailey's lawless behavior is causing. *See* PI Op. 37.[16] Indeed, in rejecting Paxton's similar argument, this Court found that "potential punitive consequences, as well as possible judicial intervention to enforce the CID, make Plaintiffs' claim of chilled expression objectively reasonable." PI Op. 37.

Third, and finally, Bailey bizarrely claims that the actions he has taken against Plaintiffs are not "material adverse action[s]" because "Media Matters does not dispute that it is going to have to litigate its claims in one forum or another." Opp. 34. That is illogical. If Bailey had never retaliated against Plaintiffs to begin with, the parties would have no need to litigate at all. Bailey's retaliatory service of the Missouri CID and CID Petition are plainly "material adverse action." Such extreme conduct clearly would "chill a person of ordinary firmness" in the plaintiffs' position from engaging in "future First Amendment activity." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves*, 587 U.S. at 397) (explaining standard for material adverse action); *see also* PI Op. 35–37 (finding Paxton's similar conduct met this standard).

### B.   Plaintiffs are likely to prevail on their remaining claims.

***First and Fourth Amendments.*** Bailey was required to exercise "scrupulous exactitude" in his CID because "the materials sought to be seized" are "protected by the First Amendment." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)). He does not dispute that the documents he seeks are protected materials, nor that the Missouri CID is a sweeping and overbroad request for such documents. *See* Opp. 34–35.

---

[16] A review of Media Matters's website shows that Hananoki has only published seven articles this year. He published roughly five times as many articles during the same period last year. *See generally Eric Hananoki*, Media Matters for America https://www.mediamatters.org/author/eric-hananoki (last visited May 20, 2024).

Bailey contends that Media Matters "can litigate [this] issue under a standard timeline." Opp. 34. But he has asserted sweeping powers—those "akin to that of a grand jury"—and is seeking to enforce them *now*. Absent prompt relief from this Court, Plaintiffs will be left to rely solely upon the limited procedures available to vindicate these rights in the foreign Missouri forum. *Supra* at 24–26. The Court should grant relief on this claim now. *See Major League Baseball v. Crist*, 331 F.3d 1177, 1187–88 (11th Cir. 2003) (quashing CID that violated the Fourth Amendment).

**D.C. and Maryland Shield Laws.** According to Bailey, the D.C. and Maryland shield laws "do not apply extraterritorially to Media Matters' conduct in Missouri." Opp. 35. But all of Plaintiffs' disputed reporting occurred in D.C. or Maryland. To the extent Bailey means these *laws* do not apply extraterritorially in Missouri, that is another reason why that forum offers no adequate remedy to Plaintiffs. *Supra* at 25.

Bailey also ignores that it is *his* burden to "establish[] by clear and convincing evidence that there is an 'overriding public interest in the disclosure'" of the materials he seeks. *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994). Absent such a showing, which Bailey has not even tried to make, the D.C. shield law provides "an absolute prohibition against compelling" disclosure of either "[t]he source of any news or information" and any "news or information procured . . . that is not itself communicated in the news media." *Id.* (quoting D.C. Code § 4702).

**Due process.** Bailey misconstrues this claim as applying solely to the CID Petition. To be sure, the Missouri courts lack personal jurisdiction over Media Matters and no waiver of that defense has occurred. *Supra* I.E; *see also* Suppl. Padera Decl. ¶¶ 16–25. But Media Matters's claim sweeps beyond the CID Petition and extends to Bailey's use of compulsory process against Media Matters, including his abuse of the CID provision in the MMPA. *See* Suppl. Compl. ¶¶ 58–62.

Simply put, Bailey violates Plaintiffs' due process rights by deploying Missouri's investigative machinery against them, including by using the Missouri CID as a cudgel against Plaintiffs' constitutional rights. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).[17]

## V.    The equities weigh strongly in favor of preliminary relief.

***Irreparable harm.*** Bailey suggests Plaintiffs are suffering no injury because they need not turn over any documents prior to a hearing. That fails to address the existing chill from Bailey's retaliation, which is "caus[ing] Plaintiffs to self-censor when making research and publication decisions, [has] adversely affected the relationships between editors and reporters, and restricted communications with sources and journalists." PI Op. 38; *see also* Mem. 37–38.

***Balance of the equities and public interest.*** Bailey claims the equities cut in his favor because the "importance and need to protect consumers is indisputable." Opp. 37. But Bailey has failed to identify any Missouri consumer harmed—or at risk of harm—from Plaintiffs. Nor has he offered any theory as to how Plaintiffs are violating Missouri consumer protection law. Similarly baseless is his assertion that Plaintiffs' harms are self-inflicted, *id.* at 38, an argument already rejected by this Court when it was previously raised by Paxton. PI Op. 30–33 (finding given the ample evidence of injury presented by Plaintiffs, including of self-censorship resulting from Paxton's actions, "Defendant is wrong" in arguing that "any such injury is 'self-inflicted'"). The chill Plaintiffs are suffering is directly traceable to Bailey's conduct. *See* Mem. 27–30.

---

[17] Bailey disingenuously states that "[t]he other claims by Media Matters—which this Court declined to accept with respect to Texas—are similarly meritless." Opp. 9. The Court did no such thing. In its order granting Plaintiffs' motion for preliminary injunction against Paxton, this Court only addressed one claim—Plaintiffs' First Amendment retaliation claim—because the Court found Plaintiffs were likely to prevail on that claim. PI Op. 35. Nowhere did this Court "decline to accept" Plaintiffs' arguments on the merits of their remaining claims.

Bailey also claims that "federalism will be defeated" if "a federal court injunction is sought for routine investigations of potential violations of state law." Opp. 38. But there is nothing routine about Bailey's assertion of nationwide jurisdiction to punish journalism that he—or those he seeks to curry favor with—deems "fraudulent." Permitting a state attorney general to so plainly overstep his jurisdiction in pursuit of a baseless and retaliatory investigation is the true threat to federalism here. *Cf. Alden v. Maine*, 527 U.S. 706, 714, (1999) (explaining "States form distinct" sovereigns but only "within their respective spheres" (quoting The Federalist No. 39 (James Madison)). The public interest *strongly* weighs against such a result, and accordingly "[t]he balance of equities and the public interest favor Plaintiffs" once more. PI Op. 40; *see also* Mem. 38–39.

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' motion for a preliminary injunction against Bailey and, for the same reasons, deny Bailey's motion to dismiss.

Dated: May 20, 2024

Respectfully submitted,
*/s/ Aria C. Branch*

**ELIAS LAW GROUP LLP**
Aria C. Branch (DC 1014541)
Christopher D. Dodge (DC 90011587)
Elena A. Rodriguez Armenta* (DC 90018798)
Samuel T. Ward-Packard* (DC 90005484)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
abranch@elias.law
cdodge@elias.law
erodriguezarmenta@elias.law
swardpackard@elias.law

Abha Khanna*
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (DC 420440)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Email: tboutrous@gibsondunn.com

Amer S. Ahmed (DC 500630)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs Media Matters for America and Eric Hananoki*

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served on the Defendants in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ Aria C. Branch*
Aria C. Branch