# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MEDIA MATTERS FOR AMERICA,
ERIC HANANOKI,

                Plaintiffs,

      v.

WARREN KENNETH PAXTON JR., in his
official capacity as Attorney General of the State
of Texas,

ANDREW BAILEY, in his official capacity as
Attorney General of the State of Missouri

                Defendants.

No. 24-cv-147

## MISSOURI ATTORNEY GENERAL ANDREW BAILEY'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

ARGUMENT ...............................................................................................................................2

   **I.**   *Younger* Abstention Applies and Dismissal Is Required. .................................................2

       A.  The state court proceeding is a "civil enforcement proceeding." ...............................2

       B.  The Missouri court proceeding "touch[es] on a state court's ability to perform its judicial function." ..............................................................................................................5

       C.  This Court's preliminary injunction against General Paxton is irrelevant to whether *Younger* applies in the suit against the Missouri Attorney General. ...................................6

       D.  No court in this district has ever applied the exceptionally narrow "bad faith" exception, and it does not apply here. ............................................................................9

   **II.**  Media Matters consented to personal jurisdiction in Missouri state court. ...................13

  **III.**  **The Court Does Not Have Personal Jurisdiction Over the Missouri Attorney General.** ..................................................................................................................................15

       A.  Media Matters has not satisfied the long-arm statute. .............................................15

       B.  Personal jurisdiction here would violate the Due Process Clause. ...........................17

  **IV.**  **Media Matters Has an Adequate Remedy at Law.** ....................................................18

   **V.**  **Media Matters Cannot Establish a Justiciable, Ripe Injury** ...................................20

  **VI.**  **Media Matters Has Failed to State a Claim With Respect to its Four Counts.** .............21

       A.  The complaint fails to state a First Amendment retaliation claim...........................21

       B.  Media Matters has failed to state a First or Fourth Amendment claim. ..........................24

       C.  Media Matters has failed to state a claim under the DC or Maryland Shield Laws...........24

       D.  Media Matters has failed to state a Due Process claim............................................25

CONCLUSION...........................................................................................................................25

CERTIFICATE OF COMPLIANCE .......................................................................................27

CERTIFICATE OF SERVICE ................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                     Page(s)

*Aaron v. O'Connor,*
   914 F.3d 1010 (6th Cir. 2019) ......................................................................................................6

*Aaron v. Target Corp.,*
   357 F.3d 768 (8th Cir. 2004) ......................................................................................................10

*Alexander v. S.C. State Conf. of the NAACP,*
   144 S. Ct. 1221 (2024) ........................................................................................................ 1, 10

*Aljabri v. Saud,*
   No. CV 20-2146, 2022 WL 4598519 (D.D.C. Sept. 30, 2022) ................................................16

*Aponte v. Calderon,*
   284 F.3d 184 (1st Cir. 2002) ......................................................................................................25

*\*Backpage.com, LLC v. Hawley,*
   No. 4:17-CV-1951 PLC, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) ................................ 1, 2, 4, 5

*Ballard v. Wilson,*
   856 F.2d 1568 (5th Cir. 1988) ......................................................................................................9

*Brooks v. New Hampshire Supreme Ct.,*
   80 F.3d 633 (1st Cir. 1996) ......................................................................................................13

*Capel v. Capel,*
   272 F. Supp. 3d 33 (D.D.C. 2017) ............................................................................................16

*Cedar Rapids Cellular Telephone, L.P. v. Miller,*
   280 F.3d 874 (8th Cir. 2002) ......................................................................................................4

*Chandler v. James,*
   783 F. Supp. 2d 33 (D.D.C. 2011) ........................................................................................ 8, 9

*Columbia Brewery Co. v. Forgey,*
   120 S.W. 625 (Mo. App. 1909) ................................................................................................15

*Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan,*
   709 F.2d 1521 (D.C. Cir. 1983) ................................................................................................20

*Cullen v. Fliegner,*
   18 F.3d 96 (2d Cir. 1994) ......................................................................................................10

*Derma Pen, LLC v. 4EverYoung Ltd.,*
   2015 WL 791595 (D. Utah Feb. 25, 2015) ................................................................................8

*Def. Distributed v. Grewal,*
   971 F.3d 485 (5th Cir. 2020) ......................................................................................................18

*\*Doran v. Salem Inn, Inc.,*
   422 U.S. 922 (1975) ........................................................................................................ 6, 7, 8

*Everett v. Vance,*
   685 S.W.3d 495 (Mo. App. W.D. 2023) ....................................................................................13

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
  638 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................... 17

*Farah v. Esq. Mag.*,
  736 F.3d 528 (D.C. Cir. 2013) .................................................................................... 22

*Feedler v. Schroeder*,
  59 Mo. 364 (1875) ...................................................................................................... 15

*Fieger v. Cox*,
  524 F.3d 770 (6th Cir. 2008) ........................................................................................ 6

*Forras v. Rauf*,
  812 F.3d 1102 (D.C. Cir. 2016) .................................................................................. 16

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ................................................................................... 4, 20

*Gravelin v. Porier*,
  250 P. 823 (Mont. 1926) ............................................................................................. 14

*Great Lakes Comnet, Inc. v. FCC*,
  823 F.3d 998 (D.C. Cir. 2016) .................................................................................... 16

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .................................................................................. 18

*Hartman v. Moore*,
  547 U.S. 250 (2006) .................................................................................................... 10

*Haw. Hous. Auth. v. Midkiff*,
  467 U.S. 229 (1984) ...................................................................................................... 7

*Hill v. Snyder*,
  878 F.3d 193 (6th Cir. 2017) ........................................................................................ 7

*Holder v. Haarmann & Reimer Corp.*,
  779 A.2d 264 (D.C. 2001) ........................................................................................... 16

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*,
  677 F. Supp. 2d 195 (D.D.C. 2010) ............................................................................ 17

*IMAPizza, LLC v. At Pizza Ltd.*,
  334 F. Supp. 3d 95 (D.D.C. 2018) .............................................................................. 16

*In re S.M.H.*,
  160 S.W.3d 355 (Mo. 2005) ....................................................................................... 14

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) .................................................................................................... 25

*JMM Corp. v. District of Columbia*,
  378 F.3d 1117, 1122 (D.C. Cir. 2004) ........................................................................ 23

*Kirschner v. Klemons*,
  225 F.3d 227 (2d Cir. 2000) .......................................................................................... 5

*Matter of Buford,*
   577 S.W.2d 809 (Mo. 1979) .................................................................................... 14

*Netflix, Inc. v. Babin,*
   88 F.4th 1080 (5th Cir. 2023) ........................................................................... 11, 22

*\*Nieves v. Bartlett,*
   139 S. Ct. 1715 (2019) ..................................................................................... 1, 21

*Novack v. Nat'l Hot Rod Ass'n,*
   247 Md. 350 (1967) ............................................................................................ 16

*\*Pennzoil Co. v. Texaco, Inc.,*
   481 U.S. 1 (1987) ..................................................................... 2, 6, 19, 21, 24

*Reed Enterprises v. Corcoran,*
   354 F.2d 519 (D.C. Cir. 1965) ............................................................................ 20

*Robb v. Connolly,*
   111 U.S. 624 (1884) ............................................................................................ 21

*Roberson v. SSM Health St. Mary's Hosp.,*
   2023 WL 4743859 (Ill. App. 5 Dist., 2023) ....................................................... 14

*Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.,*
   311 F. Supp. 3d 52 (D.D.C. 2018) ...................................................................... 17

*Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.,*
   665 N.E.2d 914 (Ind. App. 1996) ........................................................................ 13

*Smith & Wesson Brands, Inc. v. Atty. Gen. of New Jersey,*
   27 F.4th 886 (3d Cir. 2022) ............................................................................. 2, 3

*Spreadbury v. Bitterroot Pub. Libr.,*
   862 F. Supp. 2d 1054 (D. Mont. 2012) ............................................................... 25

*Sprint Commun., Inc. v. Jacobs,*
   571 U.S. 69 (2013) ................................................................................................ 3

*State ex rel. Manion v. Elliott,*
   305 S.W.3d 462 (Mo. 2010) ................................................................................ 14

*Steel Co. v. Citizens for a Better Envt.,*
   523 U.S. 83 (1998) ................................................................................................ 9

*Steinberg v. Int'l Crim. Police Org.,*
   672 F.2d 927 (D.C. Cir. 1981) ............................................................................ 16

*Thorp v. D.C.,*
   325 F.R.D. 510 (D.D.C. 2018) .............................................................................. 9

*Tindall v. Wayne Cnty. Friend of Ct.,*
   269 F.3d 533 (6th Cir. 2001) ................................................................................ 9

*Trump v. Comm. on Ways & Means, United States House of Representatives,*
   415 F. Supp. 3d 98 (D.D.C. 2019) ....................................................................... 16

*Trump v. Vance,*
   977 F.3d 198 (2d Cir. 2020) ............................................................................................12

*United States v. Ferrara,*
   54 F.3d 825 (D.C.Cir.1995) .............................................................................................15

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950) ........................................................................................................22

*United States v. Trayer,*
   898 F.2d 805 (D.C.Cir. 1990) ..........................................................................................25

*West v. Holder,*
   60 F. Supp. 3d 190 (D.D.C. 2014) .............................................................................. 15, 16

*Will v. Michigan Dep't of State Police,*
   491 U.S. 58 (1989) ..........................................................................................................15

*Yelp, Inc. v. Paxton,*
   No. 23-cv-4977-TLT, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ....................................4

## Other Authorities

Wright & Miller, Federal Practice and Procedure. .....................................................................10

## INTRODUCTION AND SUMMARY OF ARGUMENT

Sweep away Media Matters' hyper-aggressive rhetoric, and what the brief *does not* say speaks volumes.  Media Matters does not deny that it solicits donations from Missourians; does not deny that it sends newsletters directly to Missourians; does not deny that it has tremendous contacts with Missouri (so much so that it reached out to see whether it had to register in Missouri); and does not—because it cannot—deny that all these activities are governed under the Missouri Merchandising Practices Act ("MMPA").  Instead, Media Matters conjures an unsupported theory that the Missouri Attorney General's *motives* for instituting an investigation are improper.  But that is both factually wrong and foreclosed by binding precedent.

The Supreme Court mandates that federal courts presume that government officials have acted in good faith, so motives are irrelevant if there is probable cause for government action.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722–23 (2019).  Indeed, two weeks ago, the Supreme Court ruled that a presumption like this "directs district courts to draw the inference that cuts in the [official's] favor when confronted with evidence that could plausibly support multiple conclusions."  *See Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1235–36 (2024).  Media Matters provides nothing to suggest there is no probable cause to investigate, nor that bad motives are the only plausible inference from the record.  Media Matters has failed to state a claim. *E.g.*, Rule 12(b)(6).

More fundamentally, though, Media Matters' attack on federalism must fail.  As the *Backpage* court determined, any federal lawsuit to block a state court proceeding involving a CID issued by the Missouri Attorney General necessarily triggers *Younger* abstention because of the specifics of Missouri law.  *Backpage.com, LLC v. Hawley*, No. 17-CV-1951, 2017 WL 5726868, at *7 (E.D. Mo. Nov. 28, 2017).  Media Matters relies on a Third Circuit case about New Jersey's different statute.  But the Third Circuit stressed that failure to respond to a New Jersey CID was not a violation of that consumer protection law:  "To date, he has not accused the company of violating the Consumer Fraud Act."

*Smith & Wesson Brands, Inc. v. Atty. Gen. of New Jersey*, 27 F.4th 886, 892 (3d Cir. 2022). In contrast, failure to timely respond to a Missouri CID *is* a violation of Missouri's consumer protection act, and Missouri's lawsuit seeks a civil penalty against Media Matters for that violation.

To get around this, Media Matters asserts (for the first time in its reply brief) that the exceedingly narrow exception to *Younger* for bad faith applies. But it appears no judge in this federal district has ever found the exception to apply, nor has the D.C. Circuit. That makes sense given the very strong presumption of good faith. It is still an open question whether the bad-faith exception applies at all in civil cases. Media Matters is only able to cite *one* case applying the exception in the civil context—an out-of-circuit decision from 30 years ago.

Media Matters also asserts that Missouri courts are insufficient, but it makes no serious attempt to rebut with "unambiguous authority" the strong presumption that "state procedures will afford an adequate remedy." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). That is true for *every* issue that can be litigated, including personal jurisdiction.

## ARGUMENT

## I.     *Younger* Abstention Applies and Dismissal Is Required.

Media Matters asks the Court to break new ground in the field of *Younger* and depart from the reasoned decisions of many other courts. They also ask this Court to be the first one ever in this circuit to find that the "bad-faith" exception to abstention applies. The Court should decline.

### A.  The state court proceeding is a "civil enforcement proceeding."

As the *Backpage* court determined, an action to enforce a Missouri CID is plainly a "civil enforcement proceeding" under *Younger*, as it seeks judicial remedy for a violation of the disclosure requirements of the MMPA. *Backpage.com*, 2017 WL 5726868, at *7.

**1.** Media Matters' principal response—that the proceeding does not seek legal relief "for a wrongful act"—is easily dispensed with. The operative complaint seeks a $1,000 civil penalty. Ex. A,

Amended Complaint, *Missouri v. Media Matters*, No. 24AC-CC02291, at 1, 11–12 (May 24, 2024).  Even absent the request for a monetary penalty, the proceeding would still seek judicial relief in response to an unlawful act.  Under Missouri law, failure to comply with a CID or seek a court order before the due date for production is an independent violation of the consumer protection statute.  Mo. Rev. Stat, § 407.080 ("shall comply with the terms [of the CID] unless otherwise provided by an order of a court").  Media Matters was obligated to produce documents or seek judicial relief by April 15.  It did neither, so it violated Missouri law, and the State is entitled to a $1,000 penalty unless Media Matters prevails on an affirmative defense.  *Id.* § 407.100.  Media Matters is thus flat wrong to assert (at 13) that the ongoing proceeding "seeks no sanction for violations of the MMPA."  Both complaints do.

That makes this case starkly different from *Smith & Wesson*, on which Media Matters principally relies.  That court determined that *Younger* did not apply because the state court proceeding was "not a suit initiated to punish wrongdoing"; the New Jersey Attorney General "did not allege that Smith & Wesson violated any substantive legal duty.  To date, he has not accused the company of violating the Consumer Fraud Act . . . ."  27 F.4th at 892.  Unlike Missouri law, which treats failure to timely obey a CID as a violation of Missouri law, "failure to obey a subpoena issued by the [New Jersey] Attorney General may be addressed by the court to compel compliance but *it is not treated as a violation of the Consumer Fraud Act.*"  *Id.* at 893 (quoting *Grewal v. 22Mods4ALL, Inc.*, No. ESX-C-244-19, slip op. at *17 (N.J. Super. Ct. Ch. Div. May 24, 2021)) (brackets adopted) (emphasis added).[1]

Media Matters nonetheless asks the Court to read in a new exception, saying (at 12) it had no opportunity to comply with Missouri law because the Attorney General sued to enforce the CID

---

[1] Separately, *Smith & Wesson* applied a heightened standard not required by Supreme Court precedent and not adopted by other circuits.  For example, while the Supreme Court in *Sprint* said that in proceedings triggering *Younger*, "[i]nvestigations are commonly involved, *often* culminating in the filing of a formal complaint or charges," *Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013) (emphasis added), the Third Circuit required "quasi criminal" proceedings and "a preliminary investigation that culminated with the filing of formal charges," 27 F.4th at 891.  These are not required by *Sprint*.

shortly after sending it.  But Missouri law expressly permits the Attorney General to preemptively sue "[w]henever it appears to the attorney general that a person has engaged in, is engaging in, *or is about to engage* in any . . . act . . . declared to be unlawful by [the MMPA]."  Mo. Rev. Stat. § 407.100 (emphasis added).  The Attorney General properly sought relief at that time for production of documents.  And the Attorney General did not amend the complaint to seek the monetary penalty until after Media Matters failed to comply or seek judicial relief before April 15.

**2.** Media Matters describes (at 13) the authorities cited by the Missouri Attorney General as "inapposite," but must misquote and mischaracterize the opinions to differentiate those rulings.

For example, Media Matters asserts that *Younger* abstention was held improper with respect to one party in *Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874 (8th Cir. 2002), simply because the Attorney General was doing nothing more than trying to obtain documents.  But in fact, the crux of the Court's reasoning was that abstention did not apply because there was "not a judicial proceeding."  *Id.* at 882.  Indeed, the Court acknowledged that *Younger* abstention could be appropriate if the Attorney General brought an enforcement proceeding to obtain the documents.  *Id.*

Media Matters next derides the *Backpage* opinion, saying (at 15) that it "improperly concluded that it was sufficient that the 'state-court action clearly involves an investigation with the potential to culminate in the filing of a formal complaint or charges.'"  But *Backpage* simply noted this was "indicia" of a civil enforcement proceeding triggering *Younger*.  *Id.* at *6; *see also Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) (abstention improper where the attorney general issued an administrative subpoena but had "not moved to enforce [it] in any state court").  And in any event, *Sprint* does not require that a state court proceeding seek formal sanctions; it simply notes that enforcement actions are *usually* "initiated to sanction the federal plaintiff."  571 U.S. at 79.

Media Matters finally attempts (at 8–9) to differentiate *Yelp, Inc. v. Paxton*, No. 23-cv-4977, 2024 WL 413464, at *3 (N.D. Cal. Feb. 1, 2024), arguing it is inapplicable because the Texas Deceptive

Trade Practices Act "involve[d] sanctions, including civil penalties of up to $10,000 per violation." Yet the ongoing proceeding here seeks a (modest) monetary penalty for violation of the MMPA.  If these factors supported the second factor in *Yelp*, they equally support the Missouri Attorney General.

**B.  The Missouri court proceeding "touch[es] on a state court's ability to perform its judicial function."**

As the *Backpage* court properly found, an action to enforce a Missouri CID also falls within the third *Younger* category.  2017 WL 5726868, at *7–8.

In arguing otherwise, Media Matters disregards its burden and misstates the standard.  It notes the general requirement that courts exercise their jurisdiction, but disregards that *Younger* abstention is recognized as a "far-from-novel" exception to this general rule, *Sprint*, 571 U.S. at 77, and once a federal defendant establishes availability of *Younger*, the burden flips to a plaintiff to show that an exception applies.  *E.g.*, *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000) ("a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception.").

Likewise, Media Matters stresses quoted language in *Sprint* saying that state proceedings must involve orders "uniquely in furtherance of the state courts' ability to perform their judicial functions," but omits that this quote came from case law before *Sprint* and that *Sprint* reformulated the rule: a state proceeding need only "touch on a state court's ability to perform its judicial function."  571 U.S. at 79.  The state proceeding does here because, as *Backpage* properly determined, just like state courts provide a critical role in criminal investigations (through the grand jury), they serve an important function under Missouri law of facilitating civil investigations.  *Backpage*, 2017 WL 5726868, at *7.  This federal action touches on Missouri courts' ability to perform their judicial functions.  (In any event, enforcing CIDs *is* "uniquely in furtherance" of those courts' ability to perform their functions.)

To evade this problem, Media Matters (at 16–17) asks this Court to hold that the third *Younger* category requires courts to have already issued an order.  The Sixth Circuit has squarely rejected that argument: "we do not read the third category so narrowly as to preclude *Younger* abstention when the

state court has not yet issued an order." *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019). Indeed, the Supreme Court held that a district court was required to abstain under the third category in a federal case filed "*before* the Texas court entered judgment." *Pennzoil*, 481 U.S. at 6 (emphasis added); *see also Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (finding third category met where plaintiff "could have filed a motion to quash the search warrants").

### C. This Court's preliminary injunction against General Paxton is irrelevant to whether *Younger* applies in the suit against the Missouri Attorney General.

No stronger is Media Matters' assertion (at 11–13) that this federal case is beyond the "embryonic" stage with respect to Paxton, so *Younger* is no longer appropriate. The parties agree the Missouri Attorney General "was added as a defendant *after* he commenced the CID Proceeding in Missouri." Resp. Br. 12 (emphasis added). Media Matters nonetheless insists that because *Younger* would be improper with respect to Paxton (because of the preliminary injunction against him), it is inappropriate with respect to the Missouri Attorney General as well. That is wrong on many levels.

For starters, the Supreme Court has expressly rejected that argument, holding instead that courts generally must analyze *Younger* separately for each respondent "as if that respondent stood alone." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975). *Doran*, which Media Matters does not cite, involved a challenge by three companies to an ordinance prohibiting topless dancing. *Id.* Like Media Matters argues here, the Court of Appeals said all respondents "should automatically be thrown into the same hopper for *Younger* purposes." *Id.* at 928. The Supreme Court disagreed: "each of the respondents should be placed in the position required by our [*Younger*] cases as if that respondent stood alone." *Id.* at 929. Where "no contested matter had been decided" between two specific parties, the issue was "squarely governed by *Younger*." *Id.* (dismissing suit under *Younger* with respect to one of three parties). It is thus irrelevant how far this case has progressed against Paxton. It is still embryonic against the Missouri Attorney General.

Media Matters tries to evade this holding by arguing for judicial economy, noting that courts in some circumstances say abstention is inappropriate once decisions on the merits have been issued because there has been "significant expenditure of effort" by the federal court. *See Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) ("considerations of [judicial] economy"). But that is true only for parties whose issues have progressed. *Doran* rejected the idea that if *Younger* is inappropriate for one respondent, it is inappropriate for all: "efficient judicial administration," the Supreme Court said, "must of necessity be subordinated to the claims of federalism." 422 U.S. at 927.

In any event, *Younger* abstention would not disrupt any "expenditure of effort" by this Court. While the suit against Paxton might be beyond the embryonic stage, that dispute concerns a different defendant, different facts, a different timeline of investigation, and different state law. That is why Media Matters initially sued only Paxton and did not sue until more than four months later. Between Media Matters and Bailey, "no contested matter ha[s] been decided," so this issue is "squarely governed by *Younger*." *Doran*, 422 U.S. at 929. If this Court abstains under *Younger* with respect to the counts against Bailey, it will not disrupt *any* proceedings already instituted against Paxton.

*Younger* can be assessed in the aggregate, rather than on a respondent-by-respondent basis, only when the "parties are so closely related" that they are in privity. *See id.* at 928–29. That explains the few examples Media Matters cites. For example, *Hill v. Snyder* involved a challenge to a state statute initially brought against the Michigan Governor, Director of Corrections, and Chair of the Parole Board. 878 F.3d 193, 200 (6th Cir. 2017). Seven years later, plaintiffs added the Michigan Attorney General, who enforced the same challenged laws, as a defendant and the court declined to abstain. *Id.* at 207. Similarly, in *Derma Pen, LLC v. 4EverYoung Ltd.*, the court refused to abstain in a suit between

two companies when a new party was added because that new party was "an insider and until very recently was the chairman" of one of the parties. 2015 WL 791595, at *6 (D. Utah Feb. 25, 2015).[2]

While the newly added parties in both those cases were "so closely related" that they were essentially in privity, *Doran*, 422 U.S. at 929, the same cannot be said of Paxton and Bailey. Media Matters simply asserts that both launched investigations near in time and vaguely "coordinated" with each other. But the parties in *Doran* coordinated much more closely. They all joined the same suit on the same day, were "represented by common counsel, and have similar business activities and problems." *Doran*, 422 U.S. at 928–29. And yet the Court held that *Younger* must be assessed separately with respect to each respondent because "they are apparently unrelated in terms of ownership, control, and management." *Id.* Paxton and Bailey are *not* represented by common counsel, have no common control or management, and do not enforce the same laws. That they may have "coordinated" to some limited degree—a common thing for litigants on the same side of the "v."—cannot create privity. And as explained further below, there are substantial differences between Paxton's and Bailey's investigations and cases.

Media Matters is unable to identify even one case that declined to abstain in circumstances remotely similar to this one. Indeed, under their theory, abstention would be inappropriate even if the Paxton case was final and Bailey were sued separately. That obviously cannot be correct.[3]

---

[2] *Hill* also differs from this case because the newly added Michigan Attorney General sought *Younger* abstention with respect to *all* defendants, including the original ones. 878 F.3d at 206. Bailey does not argue that *Younger* applies with respect to Paxton. And *Derma*'s entire analysis on *Younger* is dicta because the suit involved a proceeding over property, and the court concluded at the outset that, "[*i*]*n rem* proceedings are exceptions to the abstention doctrine." *Derma*, 2015 WL 791595, at *5; *see also id.* at *7 (no abstention because the state action "threatens to dispose of property" at issue in its substantive proceedings, which would "diminish the court's power to bring this litigation . . . to a natural conclusion").

[3] Media Matters' argument makes clear its decision to move to supplement its complaint was calculated to create this argument against *Younger* abstention, and it shows why consolidation was improper. Rule 15(d) does not permit "supplemental, unrelated claims against new defendants." *See Chandler v. James*, 783 F. Supp. 2d 33, 39 (D.D.C. 2011). "When considering such a request, the trial court is required

**D. No court in this district has ever applied the exceptionally narrow "bad faith" exception, and it does not apply here.**

The "bad faith" exception does not apply here.  The Supreme Court has never applied the "bad-faith" exception in the half century since *Younger* was decided.  This exception is considered "exceedingly rare." *Tindall v. Wayne Cnty. Friend of Ct.*, 269 F.3d 533, 539 (6th Cir. 2001); *see also Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988) (describing bad faith exception as "very narrow").

**1.** Media Matters does not dispute that it failed to raise this issue in its opening brief.  The issue is thus waived for the preliminary injunction motion.  Media Matters had an obligation to establish jurisdiction in that motion, and *Younger* is "treated as jurisdictional." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 100 n.3 (1998).  And Media Matters is wrong to assert (at 22 n.3) that "Bailey injected *Younger* into this litigation for the first time in his opposition brief."  Texas expressly raised the issue in opposition to the Rule 15 motion.  ECF 40 at 3.  Media Matters cannot save its accusations of *Younger* bad faith for its reply brief, giving Bailey no opportunity to respond with respect to the preliminary injunction briefing.  While the issue is not waived with respect to the motion to dismiss, it is waived with respect to the preliminary injunction motion.

**2.** As Bailey previously argued, the Supreme Court expressly held that the exception is triggered only when *judges* act in bad faith.  Media Matters (at 23) accuses the Attorney General of "invent[ing] that rule out of whole cloth" but then *concedes* in the same paragraph that the most well-

---

to take into account any prejudice that the opposing party would suffer as a result.  Indeed, the prejudice to the opposing party is among the most important reasons to deny leave to amend." *Thorp v. D.C.*, 325 F.R.D. 510, 513 (D.D.C. 2018) (cleaned up).  "Prejudice may arise when the proposed complaint adds new parties or at least entails more than an alternate claim or a change in the allegations of a complaint." *Id.* (quotations and citation omitted).  Here, the Court granted the motion, adding the Missouri Attorney General as a defendant on wholly distinct counts, related to wholly distinct actions, at a wholly distinct period of time.  That created severe prejudice, as it has been levied as a shield and a sword by Media Matters to attack the CID and attack the Missouri state court proceedings.  The court erred in granted leave to supplement the complaint, where Media Matters was "free to recast the arguments of [its] supplemental complaint as a complaint in a new, perhaps related, action before this court." *Id.* (quoting *Chandler*, 783 F. Supp. 2d at 39).  This is yet another reason to dismiss.

respect treatise on federal procedure, *Wright & Miller*, also concluded that the exception requires bad faith by judges.  17B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4255 n.11 (3d ed.).  There is no accusation of bad faith on the part of Missouri judges, so the claim must fail.

**3.** Even if this Court considers bad faith beyond judges, as some courts in other circuits have, the exception is extraordinarily narrow.  Media Matters (at 22) calls this "a textbook case for application of the bad faith exception," but has been unable to identify a single case in this circuit where a court has found the exception to apply.  Indeed, most courts "have only recognized it in the criminal context."  *See Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004).  Media Matters cites just one case in the civil context, and it is both out of circuit and 30 years old.  Resp. Br. 22 (citing *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994)).  Media Matters cites *no* case anywhere in the country involving a CID.

Older cases cited by Media Matters did not apply later-enacted Supreme Court doctrine requiring a presumption of good faith.  In recent years, the Supreme Court has required federal courts to adopt a strong "presumption that a prosecutor has legitimate grounds for the action he takes" and to "not lightly discard" that presumption.  *Hartman v. Moore*, 547 U.S. 250, 263 (2006) (quoted in *Nieves*, 587 U.S. at 400).  Just two weeks ago, the Supreme Court placed firmer teeth into this doctrine, holding that the "presumption of legislative good faith directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions."  *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. at 1235–36.  Because the same presumption that applies to legislatures likewise applies to executive officials, the bad-faith exception is unavailable anytime an inference of good faith is possible.  The single case Media Matters cites in the civil context predates this doctrine and does not apply the presumption of good faith.

The one recent case Media Matters cites—a criminal case—shows just how rare the exception is in light of the presumption of good faith.  There, a local district attorney brought child pornography

charges against Netflix.  The DA withheld probative evidence from the grand jury, brought four superseding indictments immediately after Netflix asserted a First Amendment right, and brought the charges even though Netflix had proof that the only instance of nudity in the film at issue involved an actor older than 18.  *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091–96 (5th Cir. 2023).  So weak was the DA's case that he "d[id] not attempt to defend that indictment on the merits" before the federal court. *Id.* at 1095.  Even with all this, the Fifth Circuit found the bad-faith question to be a close call given the mandate to presume good faith.  *See id.* at 1096 ("Taken one by one, Babin's arguments are well taken.").  Indeed, it seems unlikely the case would come out the same way after the Supreme Court's doctrine, announced in *Alexander*, to draw all inferences in favor of good faith.

This case is so far afield from any case finding bad faith that Media Matters' arguments cannot be taken seriously.  Start with timing.  Attorney General Bailey did not file a CID until four months after opening an investigation.  Media Matters accuses Attorney General Bailey of doing no investigation during that time.  But as already stated, his office used that time to look into Media Matters' contacts with Missouri and confirm what Media Matters does not now dispute: "that Media Matters not only distributes its newsletter in Missouri, but engages in internet and email solicitations, phone solicitations, and in-person solicitations for fundraising."  ECF 56-1, First Reed decl. ¶ 7.

During that time, his office also acquired internal Media Matters documents that justify further investigation.  The office acquired "internal Media Matters documents that are expressly marked not for circulation and which reveal plans by the organization to use solicited funds for activities contrary to those publicly disclosed to its Missouri donors."  Ex. B, Second Declaration of Steven Reed ¶ 5.[4]

---

[4] "To protect the integrity of investigations as they progress, the Missouri Attorney General's Office as a general policy does not disclose or publicly discuss information about investigations under the MMPA—including documents and information that the Office collects.  However, in rare instances, protecting the integrity of an investigation requires a very limited disclosure of information.  This is one of those rare cases given Media Matters' decision to press incorrect allegations in an attempt to obtain an order to forcefully halt an investigation."  *Id.* ¶ 4.

"These materials explain that high-level officials within Media Matters use the organization and its funds not just to issue reports about perceived misinformation, but to actively interfere with and neutralize the operational infrastructure of certain 'target' companies." *Id.* ¶ 8. "For example, these documents reveal that Media Matters has entered into partnerships with Facebook and Google—competitors of X—and has developed strategic plans to interfere with the infrastructure systems used by 'target' companies to display advertisements." *Id.* ¶ 9. These secret documents are in sharp tension with the statements Media Matters makes to Missourians as it solicits donations from them.

Next, consider the subsequent information that has publicly come to light. The brand-safety organization DoubleVerify has confirmed that Media Matters' accusations last November were false (X in fact had a near-perfect record of avoiding populating advertisements next to fringe content), and the federal court in Texas has preliminarily concluded that X's allegations are likely sufficient to overcome a motion to dismiss. ECF 56 at 38–39.

Given the presumption of good faith that this Court must afford to the Attorney General, there is plenty in the record to infer that the Attorney General had a reasonable basis to issue the CID. Indeed, unlike the prosecutor in *Netflix*, who refused to defend the merits of his decision, the Attorney General is happy to defend the merits. It is *Media Matters* that has failed to defend the merits of its November statements in light of subsequent evidence that those statements were knowingly false.

Against all this, Media Matters offers nothing. It accuses the Attorney General of issuing a "copy and paste" CID (at 24 n.4), but ignores that the CID follows four months of investigation. *See also Trump v. Vance*, 977 F.3d 198, 215 (2d Cir. 2020) ("we simply do not see how the District Attorney's statement that he copied the Congressional subpoena for 'efficiency' allows us to infer bad faith."). Nor did the Attorney General "ignore Missouri statutory law" (at 17 n.4) in filing suit when he did. It is Media Matters who "ignores" that Missouri law expressly authorizes the Attorney General to sue "[w]henever it appears to the attorney general that a person has engaged in, is engaging in, or *is about*

*to engage in*" a violation of the consumer protection statute, including a failure to timely comply with a CID. Mo. Rev. Stat. § 407.100 (emphasis added). Finally, Media Matters (at 25) faults the Attorney General for not pleading in the State's complaint that Media Matters has in fact engaged in deceptive behavior with respect to donors in Missouri. Media Matters confuses a CID *investigation* for a formal assertion of charges for deception. (And the Attorney General *has* alleged a violation of the duty to timely respond to the CID.) Where collection of additional documents may lead to further evidence that Media Matters has violated the MMPA, the bad faith exception does not apply. *See Brooks v. New Hampshire Supreme Ct.*, 80 F.3d 633, 641 (1st Cir. 1996) ("The NHSC's investigation of Cobbin is not an enforcement proceeding brought without any realistic expectation of finding a violation of a rule; and, therefore, the investigation does not catalyze the bad-faith exception to the *Younger* doctrine.")

## II.   Media Matters consented to personal jurisdiction in Missouri state court.

Media Matters has made personal jurisdiction in Missouri court critical to its complaint. Media Matters must litigate its claims one way or another. So its claim to harm rests entirely on its assertion that it would be an injury to litigate in Missouri instead of here. For example, it asserts (at 31) that it has no adequate remedy because litigating in state court would require it to waive personal jurisdiction.

The problem is that courts in Missouri plainly have personal jurisdiction. Media Matters never disputes that it solicits donations from Missourians (which creates jurisdiction). And by exercising its legal right to a change of judge, Media Matters also consented to jurisdiction. That is because Media Matters did not object to personal jurisdiction at the "first opportunity." *Everett v. Vance*, 685 S.W.3d 495, 501 (Mo. App. W.D. 2023). As every court to have squarely considered the issue has concluded, moving for a change of judge *before* opposing personal jurisdiction waives the issue. *E.g.*, *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.*, 665 N.E.2d 914, 919 (Ind. App. 1996). For example, just last year an Illinois court concluded that if a "motion for substitution of judge" is filed "prior to filing a motion to dismiss for lack of jurisdiction, that party waives all objections to the court's

13

jurisdiction over the party's person prospectively." *Roberson v. SSM Health St. Mary's Hosp.*, 2023 WL 4743859 (Ill. App. 5 Dist., 2023).  This is consistent with the longstanding, general rule across the country that "an application for an order of the court can only be made upon the assumption that the court has jurisdiction to make the order, and a party cannot be challenging the jurisdiction and invoking it at one and the same time." *Gravelin v. Porier*, 250 P. 823, 826 (Mont. 1926).

Media Matters' *sole* attempt to distinguish cases like these is to assert (at 26) that those cases concerned "motions" for a change of judge, not an "application" for a change of judge, and that under Missouri law "applications for change of judge are not 'motions.'"  But even ten seconds of research confirms that is wrong.  Missouri courts use "motion" and "application" interchangeably and have referred to "motions" for a change of judge over a hundred times.  *E.g.*, *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 463 (Mo. 2010) ("Manion filed a motion for change of judge."); *In re S.M.H.*, 160 S.W.3d 355, 361 (Mo. 2005) ("Father's motion for change of judge was not timely and was properly overruled.").  Though these motions are granted as of right when the legal prerequisites are met, the non-moving party "is entitled to notice and an opportunity to be heard, and he may contest the form, timeliness and sufficiency of the motion." *Matter of Buford*, 577 S.W.2d 809, 827 (Mo. 1979).

No stronger is Media Matters' assertion (at 26) that parties in Missouri courts have not recently litigated whether moving for a change of judge first means the party has not, at the "first opportunity," opposed jurisdiction.  That is unsurprising because litigants almost always follow the "first opportunity" rule by challenging personal jurisdiction *before* moving for a change of judge.  After all, for over a century, courts have repeatedly held that litigants must object to personal jurisdiction before invoking the procedural rule Media Matters invoked here.

Further, Media Matters invoked Missouri Supreme Court Rule 51, titled "Venue Including Change of Venue and Change of Judge," which governs motions/applications of change of venue and change of judge.  For 150 years, Missouri courts have held that an application for change of venue

14

waives later challenge to personal jurisdiction. *See Feedler v. Schroeder*, 59 Mo. 364, 366 (1875) (finding defendant waived personal jurisdiction because "application for a change of venue was an appearance in the cause."); *Columbia Brewery Co. v. Forgey*, 120 S.W. 625, 628 (Mo. App. 1909) ("The taking of a change of venue by a defendant from the court in which the case is pending operates as an appearance to the merits of the action, and confers jurisdiction over the person."). If changing venue waives personal jurisdiction, there is no reason to believe taking a change of judge, which is governed by the same rule, would not. Media Matters has not cited a single case in the country adopting its rule. At the very least, Media Matters grossly overstates the case when it says Missouri courts "obviously" lack personal jurisdiction. That argument is an uphill climb for Media Matters.

## III.   The Court Does Not Have Personal Jurisdiction Over the Missouri Attorney General.

This Court lacks personal jurisdiction over the Missouri Attorney General and thus should dismiss. Media Matters has not satisfied the requirements of the long-arm statute and Due Process.

### A.   Media Matters has not satisfied the long-arm statute.

As a preliminary matter, Media Matters asserts (at 27 n.7), that the Missouri Attorney General "does not dispute that he is a 'person' under the long-arm statute." This is false. The Missouri Attorney General "assert[ed] that the State does not fall under the D.C. long-arm statute, because it is not a 'person,' as provided in the statute" and referenced Texas' briefing on the issue. Resp. Br. 30 n.7. Media Matters sued Attorney General Bailey in his official capacity, which is recognized not as a suit against him "as an individual, but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because "[a] suit brought against an official in his official capacity is generally considered to be a suit against the state," *West v. Holder*, 60 F. Supp. 3d 190, 194 (D.D.C. 2014), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017) (citing *Will*, 491 U.S. at 71), and "D.C's long-arm statute does not apply to states," *id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)), the Missouri Attorney General is not a "person" under the long-arm statute.

Media Matters offers no argument for why use of a process server is commercial or business activity under subsection (a)(1). Yet "the plaintiff *must* show that the defendant has purposefully engaged in some type of *commercial or business-related activity* directed at District residents" for subsection (a)(1) to apply. *Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 270–71 (D.C. 2001) (emphasis added); *see also Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) ("The plain text of subsection (a)(1), however, focuses on where the defendant undertook the *challenged (business) actions*." (emphasis added)).

Media Matters instead offers a conclusory assertion that the Missouri Attorney General "contracted with an agent to cause harmful consequences within D.C." Under this theory, however, any action—by any person, organization, governmental entity, or business—that has "consequences" in D.C. would be sufficient under (a)(1). That would render the remaining subsections entirely redundant and violate the rule of surplusage. *Great Lakes Comnet, Inc. v. FCC*, 823 F.3d 998, 1003 (D.C. Cir. 2016) ("when construing a statute courts 'give effect, if possible, to every clause and word'").

Media Matters also argues (at 28), that "[t]his Court has already properly rejected" the argument that use of a process server does not fall under subsection (a)(1). In ruling against the Texas Attorney General on this score, this Court relied on a Maryland ruling, *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350 (1967), and a D.C. Circuit concurrence, *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927 (D.C. Cir. 1981), but overlooked *Holder* and *Forras*. These on-point decisions, which postdate *Steinberg*, represent current circuit precedent, which has been routinely applied over the last decade. *See West v. Holder*, 60 F. Supp. at 195; *Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017); *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018); *Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d 98, 106 (D.D.C. 2019); *Aljabri v. Saud*, No. CV 20-2146, 2022 WL 4598519, at *14 (D.D.C. Sept. 30, 2022). In short, subsection (a)(1) requires a showing that the defendant engaged in commercial or business-related activities. That has not happened here.

Separately, citing this Court's ruling against Texas, Media Matters argues (at 28) that subsection (a)(3) applies because the Missouri Attorney General used a process server to serve a complaint. But unlike Texas, Missouri served the CID itself through the mail.

To get around this distinction, Media Matters asserts this this amounted to "abusive service of process," but that claim appears nowhere in the supplemental complaint, and Media Matters could not support that contention even if pleaded. "Under District of Columbia law, abuse of process occurs when process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (citation and quotations omitted). "There are two essential elements to an abuse of process claim: (1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (citation and quotations omitted). In other words, beyond an ulterior motive, there must be "some act or threat directed to an immediate objective not legitimate in the use of process" akin to "some form of extortion." *See Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (bracket adopted). There is no question that the service of a filed court petition to enforce a CID is the regular process by which the Missouri Attorney General must enforce demands under the MMPA. There is no threat or extortion directed at an illegitimate immediate objective. The Missouri Attorney General filed his petition under his statutory authority to collect documentation in service of an investigation into and enforcement against potential violations of the MMPA. There is no support for Media Matters' (unpleaded) assertion that serving a lawsuit by itself amounts to a tort.

## B. Personal jurisdiction here would violate the Due Process Clause.

To support its Due Process argument, Media Matter offers a single mailing and single service of a petition from a process server. A single mailing is insufficient. *See Exponential Biotherapies, Inc. v.*

*Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009).  And as discussed immediately above, Media Matters' late, drive-by assertion of "abusive process" is insufficient and unpleaded.  It beggars belief that service of a CID petition is sufficient "conduct and connection with the forum State . . . such that [the Missouri Attorney General] should reasonably anticipate being haled into court there," *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), when the purpose of the process was to initiate litigation in a separate court and being "hailed into [federal] court" in the District of Columbia *in response* to such process is retaliatory and barred by *Younger* abstention.

Media Matters is thus forced to resort (at 29–30) to demonstrably false accusations that the Missouri Attorney General "failed to identify *any* injury, or even impact that Media Matters has caused in Missouri." (internal quotations omitted).  Media Matters does not even deny its solicitation activities that the Attorney General pointed out.  Indeed, Media Matters was so concerned about its extensive activities in Missouri that it reached out to determine if it needed to register under Missouri law.

Next, Media Matters relies on *Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), but there the New Jersey Attorney General expressed "his intent to crush Defense Distributed's operations and not simply limit the dissemination of digital files in New Jersey." *Id.* at 493.  It was clear he had an "intent to force Defense Distributed to close shop." *Id.*  That goes far beyond a mere CID to investigate solicitations in Missouri and a request for a single $1,000 penalty for a violation of Missouri's law that indisputably occurred.  Under Media Matters' rule, no State could investigate a company that engages in business in that State—but is headquartered in another—without exposing itself to a retaliatory suit like the one Media Matters brought here.

IV.    **Media Matters Has an Adequate Remedy at Law.**

Media Matters has an adequate remedy at law, as it can raise each of its challenges to the CID in the state court enforcement action.  Media Matters offers four main arguments in support of its position that Missouri courts cannot offer an adequate remedy: 1) Media Matters' First Amendment

injury is "ongoing;" 2) the MMPA "would likely require Plaintiff to waive personal jurisdiction" and only offers "meager' protections for Media Matters; 3) Media Matters cannot obtain relief *against Paxton* in Missouri court; and 4) Media Matters cannot obtain "speedy" relief.  Each argument fails.

**1.** No allegation of "ongoing" First Amendment injury is sufficient.  Media Matters is seeking only prospective relief, not retrospective.  And to the extent the Court even credits any allegation of "chill," the chill comes from the investigation, not having to litigate in Missouri instead of DC.  Media Matters is going to have to litigate these issues regardless.  It cites nothing for the prospect that the mere location of litigation will cause chill.  This Court previously rejected Texas' argument about adequate remedy because "[t]he Texas Code contains no equivalent remedies for a non-resident challenging a CID."  ECF 37 at 30.  Here, in contrast, as Media Matters admits (at 31), "the parallel provision in the Missouri statute identifies Cole County as a catchall venue for petitioners."  Under this Court's analysis, Media Matters *can* attempt to avoid the alleged First Amendment injury by challenging the document request in Missouri state court, and thus it has an adequate remedy at law.

**2.** So Media Matters next argues (at 31–32) that the MMPA's statutory prescriptions for challenging a CID are inadequate because they "would likely require Plaintiff to waive personal jurisdiction."  But as discussed above, Media Matters does not dispute that it solicits donations from Missourians, which suffices for personal jurisdiction.  And its decision to seek a change of judge waived personal jurisdiction had it not already existed.  In any event, Media Matters offers no citation for its argument that a remedy is unavailable if it would require waiving personal jurisdiction.

No better is the unsupported assertion that the MMPA offers "meager protections" for those challenging CIDs.  That conclusory statement comes nowhere near rebutting the presumption this Court must adopt that "state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Pennzoil*, 481 U.S. at 15.

19

**3.** Media Matters strangely argues (at 32–33) that "[i]t is doubtful that Media Matters can obtain relief against Paxton in Missouri Court."  This Court of course *already* granted relief against Paxton.  Media Matters can seek full relief against all remaining claims in Missouri court.  And of course none of the issues concerning Paxton have anything to do with Missouri law.

To support its strange argument, Media Matters asserts (at 33) that the D.C. Circuit has held that there is no adequate remedy if a party has to "defend itself in different *state* courts" (emphasis added).  But Media Matters completely mischaracterizes the case it cites, which held that "multiplicity of legal proceedings" by the *same* defendant—the Federal Government—in different *federal* courts can suggest the lack of an adequate remedy.  *Reed Enterprises v. Corcoran*, 354 F.2d 519, 523 (D.C. Cir. 1965).  The State of Missouri has not sought multiple proceedings.  To accept Media Matters' argument would mean any company subject to proceedings in multiple States could preemptively sue all those States and force them into DC court.

**4.** Finally, Media Matters argues (at 33) that Missouri courts cannot "guarantee . . . a speedy remedy."  But its only support for this assertion is that one CID case in Missouri courts took 13 months from complaint to final judgment.  But that is quick compared to trial courts across the nation, and the trial court entered final judgment just four months after oral argument in a case where no emergency motion was filed.  Media Matters is free to file for emergency relief in Missouri.[5]

## V.   Media Matters Cannot Establish a Justiciable, Ripe Injury.

Media Matters does not deny that the Ninth Circuit squarely held that a federal challenge to a CID was not ripe because the plaintiff had the ability to challenge the CID in state court.  ECF 61 at 31; *see also Google, Inc. v. Hood*, 822 F.3d 212, 224 (5th Cir. 2016) (challenge to "administrative subpoena

---

[5] Media Matters' sole citation for its "speedy relief" test is a footnote from a separate opinion *disagreeing* with the majority opinion that plaintiffs had an adequate remedy through separate, individual suits.  *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) (en banc).  No court appears to have adopted Media Matters' test.

was not ripe" because subpoena was "non-self-executing").  Nor does it deny that this Court must presume Missouri courts are adequate "in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15.  Media Matters' sole response is again to argue that Missouri courts lack personal jurisdiction.  But Media Matters makes no attempt to rebut with "unambiguous authority" the presumption that Missouri courts can adequately assess the issue of personal jurisdiction.  *Pennzoil* did not carve out personal jurisdiction from its presumption that state courts are presumed adequate for resolving every question.  *Cf. Robb v. Connolly*, 111 U.S. 624, 637 (1884) ("Upon the State courts . . . rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them . . . .").

## VI.    Media Matters Has Failed to State a Claim With Respect to its Four Counts.

### A.  The complaint fails to state a First Amendment retaliation claim.

Tellingly, Media Matters fails to even try to meet the standard required by *Nieves*.  As already explained, that case squarely holds that it is not enough to allege bad motive; a plaintiff must establish lack of probable cause.  *Nieves*, 139 S. Ct. at 1728 ("Because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law.").  Media Matters cannot reasonably argue that there was no probable cause to move to enforce the CID.  The Attorney General has been proven correct that Media Matters would not comply.

Nor has Media Matters asserted a lack of probable cause to investigate in the first place.[6] Notably, Media Matters has made no effort to justify its flawed "reporting" last November.  For example, the Attorney General pointed out that the brand-safety organization DoubleVerify recently confirmed that the allegation that X was regularly populating advertisements next to fringe content is

---

[6] Even if Media Matters did dispute that, it has sued not over the investigation generally, but over the CID enforcement, and so its arguments would be irrelevant.

false.  ECF 56 at 10.  Like the district attorney in the *Netflix* case, Media Matters "does not attempt to defend" against that.  *Netflix*, 88 F.4th at 1095.  Indeed, if in fact Media Matters defamed X by knowingly posting false information, then its activity was not protected by the First Amendment, *Farah v. Esq. Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013), and so no "retaliation" is even possible.  Media Matters' failure to dispute these facts is telling.

Add to that all the other facts that differentiate this case from the Paxton case—the four months the office spent investigating before filing a CID, the internal Media Matters documents the office acquired revealing plans by Media Matters to collaborate with X's competitors and to interfere with the infrastructure used to deliver advertisements—and it is no wonder Media Matters makes no argument about probable cause.  That is fatal to its case.

Instead, Media Matters (at 35) complains that the Missouri Attorney General has not shared findings from his investigation or made formal allegations, but at the pre-complaint stage of the investigation, there is nothing yet to "allege" (other than Media Matters' violation of its duty to timely comply with or challenge the CID).  And the Attorney General is not required to tip his hand, as doing so may threaten the integrity of an investigation.  *See, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (noting that pre-complaint investigations seek "information from those who best can give it and who are most interested in not doing so").

Nor has Media Matters put forth any evidence of "chill."  Just the opposite.  Media Matters' declarants admit that the chill they experience (if any) is no different *after* the CID than it was before. Hananoki, for example, states that he "*continue*[s]" to be chilled.  ECF 49-2 ¶¶ 11–12 (emphasis added). Dimiero says that Media Matters reporters "*continue* to self-censor."  ECF 49-5 ¶ 7.  No declarant alleges any reduction in output that is tied specifically to the CID, rather than the underlying investigation (which Media Matters is not challenging), the Paxton investigation, or the lawsuit brought by X.  And self-serving vague accusations bring nothing to the table.  *E.g.*, ECF 49-3 ¶ 11 ("The

actions of these two Attorneys General have damaged morale at Media Matters"); ¶ 13 ("ability to collaborate with other groups continues to be impaired"); ECF 49-5 ¶ 5 ("negative impact . . . on morale").  Padera does no better when she says the organization "continue[s] to devote significantly more of our time than usual to dealing with investigations and lawsuits."  ECF 49-3 ¶ 15.  After all, "the burden of defending an enforcement action is not sufficient to warrant interference by the federal courts" because those burdens are incidental to every proceeding.  *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1122 (D.C. Cir. 2004) (quotation marks omitted).  Otherwise, every lawsuit would violate the First Amendment.

These declarations also say nothing about market forces that have indisputably decreased output.  Just two weeks ago, Media Matters laid off "more than a dozen" reporters; and while some former employees sought to use this litigation as a scapegoat, Media Matters' President remarked that the layoffs were due at least in part to "how rapidly the media landscape is shifting."[7]  Well before Bailey's investigation, Media Matters faced significant financial distress that would cause the same reductions in collaboration, morale, and research output that Media Matters' declarants now discuss.  For the tax year 2022 (the most current version public available), Media Matters' IRS Form 990 reveals a 10% reduction in contributions year-over-year and movement from net positive income of $2.9 million in 2021 to net negative income of $2.2 million in 2022—a $5 million swing in one year, all before Hananoki's statements about X.[8]  Like media competitors around it, Media Matters is in a cash crunch.  Moreover, Media Matters cannot reasonably link the allegations of "chill" to the Missouri Attorney General, when they are more likely linked to the ongoing defamation litigation with X.

Finally, Media Matters' "chill" argument is self-defeating.  In bringing this suit, Media Matters has exposed itself to *more* legal process, not less.  If Media Matters truly believed its personal

---

[7] https://www.yahoo.com/news/media-matters-hit-more-dozen-234119354.html
[8] https://projects.propublica.org/nonprofits/organizations/470928008

jurisdiction argument were meritorious, it could have simply and quickly moved to dismiss in Missouri court and ended the whole thing.  Instead, the company chose to introduce many new issues, opening the door to extensive discovery, including depositions assessing the accuracy of its (implausible) assertions of chill on its reporting process.

### B.  Media Matters has failed to state a First or Fourth Amendment claim.

Media Matters wrongly asserts (at 37) that the Missouri Attorney General "does not dispute that the documents he seeks are protected materials" or "that the Missouri CID is a sweeping and overbroad request for such documents."  The Missouri Attorney General has not conceded these points, and certainly does not believe that the documents requests are either universally "protected materials" or "sweeping and overbroad."  To the extent Media Matters believes requested documents are protected or privileged, its protections are found in challenging the CID in Missouri courts and identifying those privileged materials in a privilege log, a standard practice in litigation.

No better is the assertion (at 38) that, absent a preliminary injunction, Media Matters "will be left to rely solely upon the limited procedures available to vindicate these rights in the foreign Missouri forum."  The procedures are not limited, and Media Matters again tellingly makes no attempt to rebut, with "unambiguous authority," the presumption that "state procedures will afford an adequate remedy."  *Pennzoil*, 481 U.S. at 15.  Media Matters, for example, asserts a need for "prompt relief" but does not dispute that it will not be required to turn over any documents until all its defenses are litigated.

### C.  Media Matters has failed to state a claim under the DC or Maryland Shield Laws.

Media Matters argues (at 38) that the Missouri Attorney General has a burden to show "clear and convincing evidence" to override the public interest in disclosing materials pursuant to the DC and Maryland Shield Laws.  This argument highlights the fundamental error in Count VIII—Media Matters preemptively styles an affirmative defense as a cause of action to try to flip the burden.  But

Media Matters offers no authority providing a private right of action under either the D.C. or Maryland Shield Laws.  Count VIII must be dismissed.

Separately, Media Matters argues (at 38) that "all of [the] disputed reporting occurred in D.C. or Maryland."  Even if this is true, the "disputed reporting" is not the basis of the Missouri Attorney General's investigation.  The basis of the investigation is the statements Media Matters makes *to Missourians* while soliciting donations from them.

### D.  Media Matters has failed to state a Due Process claim.

Media Matters does not dispute that a due process violation is a jurisdictional argument and not an independent tort and cause of action.  Instead, Media Matters argues (at 39) that the Missouri Attorney General has "violate[d] Plaintiffs' due process rights by deploying Missouri's investigative machinery against them."  The case Media Matters cites, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, in fact supports the Missouri Attorney General.  *See* 456 U.S. 694, 702 (1982) (the Due Process Clause "represents a restriction on *judicial* power" (emphasis added)).

But Count VII fails for a more fundamental reason—courts do not recognize "a constitutionally protected interest in being free from investigation."  *Aponte v. Calderon*, 284 F.3d 184, 193 (1st Cir. 2002); *see also United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990) ("But, of course, there is no constitutional right to be free of investigation."); *Spreadbury v. Bitterroot Pub. Libr.*, 862 F. Supp. 2d 1054, 1057 (D. Mont. 2012) ("There is no constitutional right not to be investigated by law enforcement for suspected violations of the law.").  Where Media Matters describes the heart of Count VII as "simply" an effort to enjoin alleged due process violations stemming from "Missouri's investigative machinery," this count should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant Bailey respectfully requests that the Court grant his motion to dismiss for reasons of jurisdiction and failure to state a claim.

Date: June 4, 2024

Respectfully submitted,

ANDREW BAILEY
Attorney General of Missouri

/s/ Joshua M. Divine
JOSHUA M. DIVINE, #69875MO
Solicitor General

JEREMIAH J. MORGAN, #50387MO
Deputy Attorney General – Civil

REED C. DEMPSEY, #1697941DC
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
josh.divine@ago.mo.gov
jeremiah.morgan@ago.mo.gov
reed.dempsey@ago.mo.gov

*Counsel for Defendant Missouri Attorney General*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 25 pages, exclusive of matters designated for omission, and satisfies the typesetting requirements.

/s/ *Joshua M. Divine*
Counsel for Missouri Attorney General


## CERTIFICATE OF SERVICE

I certify that on June 4, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Joshua M. Divine*
Counsel for Missouri Attorney General