APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:24–cv–00147–APM</u>
### *Internal Use Only*

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA et al v. PAXTON | Date Filed: 01/17/2024 |
| Assigned to: Judge Amit P. Mehta | Jury Demand: None |
| Case in other court:  USCA, 24–07059 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**MEDIA MATTERS FOR AMERICA**           represented by           **Abha Khanna**
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
206–656–0177
Email: <u>akhanna@elias.law</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166
(212) 351–2427
Email: <u>aahmed@gibsondunn.com</u>
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–987–4928
Email: <u>cdodge@elias.law</u>
*ATTORNEY TO BE NOTICED*

**Elena Alejandra Rodriguez Armenta**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–968–4490
Email: <u>erodriguezarmenta@elias.law</u>
*ATTORNEY TO BE NOTICED*

**Elisabeth C. Frost**
ELIAS LAW GROUP LLP

1

250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–968–4513
Email: efrost@elias.law
*ATTORNEY TO BE NOTICED*

**Samuel Ward–Packard**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
262–949–0973
Email: swardpackard@elias.law
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229–7804
Fax: (213) 229–6804
Email: tboutrous@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–968–4518
Email: abranch@elias.law
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ERIC HANANOKI**                  represented by  **Abha Khanna**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elena Alejandra Rodriguez Armenta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth C. Frost**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Ward–Packard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **WARREN KENNETH PAXTON, JR.** *in his official capacity as Attorney General of the State of Texas* | represented by | **Christopher Lavorato** OFFICE OF THE ATTORNEY GENERAL General Litigation Division P.O. Box 12548 MC–019–1 Austin, TX 78711 512–475–4476 Email: chris.lavorato@oag.texas.gov *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |

**Gene C. Schaerr**
SCHAERR JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787–1060
Fax: (202) 776–0112
Email: gschaerr@schaerr–jaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth A. Klukowski**
SCHAERR JAFFE LLP
1717 K Street NW
Suite 900
Washington, DC 20006
202–787–1060
Email: kklukowski@schaerr–jaffe.com
*ATTORNEY TO BE NOTICED*

3

**Reuben William Blum**
OFFICE OF THE ATTORNEY
GENERAL
P.O. Box 12548
Capitol Station
Austin, TX 78711–2548
512–475–4117
Email: reuben.blum@oag.texas.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **ANDREW BAILEY**<br>*in his official capacity as Attorney*<br>*General of the State of Missouri* | represented by | **Joshua M. Divine**<br>OFFICE OF THE MISSOURI<br>ATTORNEY GENERAL<br>207 W. High St.<br>PO Box 899<br>Jefferson City, MO 65102<br>573–751–8870<br>Email: josh.divine@ago.mo.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Reed Dempsey**<br>OFFICE OF THE MISSOURI<br>ATTORNEY GENERAL<br>221 West High Street<br>Jefferson City, MO 65101<br>573–645–2763<br>Email: reed.dempsey@ago.mo.gov<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2024 | 1 | COMPLAINT against WARREN KENNETH PAXTON, JR ( Filing fee $ 405 receipt number ADCDC–10624073) filed by MEDIA MATTERS FOR AMERICA, Eric Hananoki. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Branch, Aria) (Entered: 01/17/2024) |
| 01/17/2024 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MEDIA MATTERS FOR AMERICA (Branch, Aria) (Entered: 01/17/2024) |
| 01/17/2024 | 3 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by Eric Hananoki, MEDIA MATTERS FOR AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 LCvR 5.1(c)(1) Notice of Address)(Branch, Aria) (Entered: 01/17/2024) |
| 01/18/2024 | 4 | MOTION for Temporary Restraining Order *and Preliminary Injunction* by Eric Hananoki, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Cynthia Padera, # 3 Declaration of Eric Hananoki, # 4 Declaration of Benjamin Dimiero, # 5 Declaration of Aria C. Branch, # 6 Text of |

|  |  | Proposed Order, # 7 Certificate of Service)(Branch, Aria). Added MOTION for Preliminary Injunction on 1/19/2024 (zsl). (Entered: 01/18/2024) |
| --- | --- | --- |
| 01/19/2024 |  | Case Assigned to Judge Amit P. Mehta. (zsl) (Entered: 01/19/2024) |
| 01/19/2024 | 5 | SUMMONS (1) Issued Electronically as to WARREN KENNETH PAXTON, JR. (Attachment: # 1 Notice and Consent)(zsl) (Entered: 01/19/2024) |
| 01/19/2024 | 6 | NOTICE of Appearance by Gene C. Schaerr on behalf of WARREN KENNETH PAXTON, JR (Schaerr, Gene) (Entered: 01/19/2024) |
| 01/19/2024 | 7 | RESPONSE re 4 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by WARREN KENNETH PAXTON, JR. (Schaerr, Gene) (Entered: 01/19/2024) |
| 01/19/2024 | 8 | NOTICE of Appearance by Kenneth A. Klukowski on behalf of WARREN KENNETH PAXTON, JR (Klukowski, Kenneth) (Entered: 01/19/2024) |
| 01/19/2024 | 9 | REPLY re 7 Response to motion filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Exhibit A)(Branch, Aria) (Entered: 01/19/2024) |
| 01/20/2024 |  | MINUTE ORDER. Defendant shall advise by 5:00 p.m. on January 22, 2024, whether he will agree not to enforce the CID until this court rules on the motion for preliminary injunction. If Defendant is prepared to do so, and consistent with Plaintiffs representations, the court will treat as moot the motion for temporary restraining order, and the parties shall brief the preliminary injunction motion consistent with the deadlines set forth in the Local Civil Rules. Signed by Judge Amit P. Mehta on 01/20/2024. (lcapm1) (Entered: 01/20/2024) |
| 01/22/2024 | 10 | NOTICE of Appearance by Elisabeth C. Frost on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Frost, Elisabeth) (Entered: 01/22/2024) |
| 01/22/2024 | 11 | RESPONSE TO ORDER OF THE COURT re Order,, filed by WARREN KENNETH PAXTON, JR. (Schaerr, Gene) (Entered: 01/22/2024) |
| 01/22/2024 | 12 | NOTICE of Appearance by Theodore J. Boutrous, Jr on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Boutrous, Theodore) (Entered: 01/22/2024) |
| 01/22/2024 | 13 | NOTICE of Appearance by Amer S. Ahmed on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Ahmed, Amer) (Entered: 01/22/2024) |
| 01/23/2024 |  | MINUTE ORDER. In light of the representations made by Defendant Warren Kenneth Paxton, Jr. in his response of January 22, 2024, Plaintiffs' motion insofar as it seeks a temporary restraining order, ECF No. 4, is denied. This matter shall proceed with briefing on the motion for preliminary injunction consistent with Local Civil Rule 65.1(c). Any reply brief from Plaintiffs shall be filed within seven days of Defendants opposition brief. Signed by Judge Amit P. Mehta on 01/23/2024. (lcapm1) (Entered: 01/23/2024) |
| 01/23/2024 | 14 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Abha Khanna, Filing fee $ 100, receipt number ADCDC–10639478. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Abha Khanna)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | 15 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Omeed Alerasool, Filing fee $ 100, receipt number ADCDC–10639490. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of |

| | | |
|---|---|---|
| | | Omeed Alerasool)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | 16 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Daniela Lorenzo, Filing fee $ 100, receipt number ADCDC–10639501. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Daniela Lorenzo)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Elena Rodriguez Armenta, Filing fee $ 100, receipt number ADCDC–10639512. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Elena Rodriguez Armenta)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jacob Douglas Shelly, Filing fee $ 100, receipt number ADCDC–10639518. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Jacob Douglas Shelly)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | | MINUTE ORDER granting 15 Motion for Leave to Appear Pro Hac Vice. Attorney Omeed Alerasool is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/23/2024. (lcapm1) (Entered: 01/23/2024) |
| 01/23/2024 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Samuel Ward–Packard, Filing fee $ 100, receipt number ADCDC–10639523. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Samuel Ward–Packard)(Branch, Aria) (Entered: 01/23/2024) |
| 01/23/2024 | | MINUTE ORDER granting 16 Motion for Leave to Appear Pro Hac Vice. Attorney Daniela Lorenzo is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/23/2024. (lcapm1) (Entered: 01/23/2024) |
| 01/23/2024 | | MINUTE ORDER granting 18 Motion for Leave to Appear Pro Hac Vice. Attorney Jacob Douglas Shelly is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/23/2024. (lcapm1) (Entered: 01/23/2024) |
| 01/23/2024 | | MINUTE ORDER granting 19 Motion for Leave to Appear Pro Hac Vice. Attorney Samuel Ward–Packard is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/23/2024. (lcapm1) (Entered: 01/23/2024) |
| 01/24/2024 | | MINUTE ORDER denying without prejudice 14 Motion for Leave to Appear Pro Hac Vice. To cure the application, the non–member attorney must submit a declaration which sets forth the attorney's telephone number. See LCvR 83.2(c)(2). Signed by Judge Amit P. Mehta on 01/24/2024. (lcapm1) (Entered: 01/24/2024) |
| 01/24/2024 | | MINUTE ORDER denying without prejudice 17 Motion for Leave to Appear Pro Hac Vice. To cure the application, the non–member attorney must submit a declaration which sets forth the attorney's telephone number. See LCvR 83.2(c)(2). Signed by Judge Amit P. Mehta on 01/24/2024. (lcapm1) (Entered: 01/24/2024) |

| 01/24/2024 | 20 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Elena Rodriguez Armenta, Filing fee $ 100, receipt number ADCDC–10640337. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Elena Rodriguez Armenta)(Branch, Aria) (Entered: 01/24/2024) |
|---|---|---|
| 01/24/2024 | | MINUTE ORDER granting 20 Motion for Leave to Appear Pro Hac Vice. Attorney Elena Rodriguez Armenta is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/24/2024. (lcapm1) (Entered: 01/24/2024) |
| 01/24/2024 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Abha Khanna, Filing fee $ 100, receipt number ADCDC–10640367. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Abha Khanna)(Branch, Aria) (Entered: 01/24/2024) |
| 01/24/2024 | 22 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WARREN KENNETH PAXTON, JR served on 1/22/2024, answer due 2/12/2024 (Branch, Aria) (Entered: 01/24/2024) |
| 01/24/2024 | | MINUTE ORDER granting 21 Motion for Leave to Appear Pro Hac Vice. Attorney Abha Khanna is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/24/2024. (lcapm1) (Entered: 01/24/2024) |
| 01/24/2024 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Christopher Lavorato, Filing fee $ 100, receipt number ADCDC–10642619. Fee Status: Fee Paid. by WARREN KENNETH PAXTON, JR. (Attachments: # 1 Declaration Declaration of Christopher Lavorato)(Schaerr, Gene) (Entered: 01/24/2024) |
| 01/24/2024 | 24 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Reuben W. Blum, Filing fee $ 100, receipt number ADCDC–10642620. Fee Status: Fee Paid. by WARREN KENNETH PAXTON, JR. (Attachments: # 1 Declaration of Reuben W. Blum)(Schaerr, Gene) (Entered: 01/24/2024) |
| 01/25/2024 | | MINUTE ORDER granting 23 Motion for Leave to Appear Pro Hac Vice. Attorney Christopher Lavorato is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/25/2024. (lcapm1) (Entered: 01/25/2024) |
| 01/25/2024 | | MINUTE ORDER granting 24 Motion for Leave to Appear Pro Hac Vice. Attorney Reuben W. Blum is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 01/25/2024. (lcapm1) (Entered: 01/25/2024) |
| 01/25/2024 | 25 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Christopher Dooley Dodge, Filing fee $ 100, receipt number ADCDC–10644668. Fee Status: Fee Paid. by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Christopher Dooley Dodge)(Branch, Aria) (Entered: 01/25/2024) |
| 01/25/2024 | 26 | RESPONSE re 4 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by WARREN KENNETH |

| | | |
|---|---|---|
| | | PAXTON, JR. (Attachments: # 1 Declaration of Assistant Attorney General Levi Fuller with Exhibits)(Schaerr, Gene) (Entered: 01/25/2024) |
| 01/29/2024 | | MINUTE ORDER granting 25 Motion for Leave to Appear Pro Hac Vice. Attorney Christopher Dooley Dodge is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click here for instructions. Signed by Judge Amit P. Mehta on 01/29/2024. (lcapm1) (Entered: 01/29/2024) |
| 01/30/2024 | 27 | NOTICE of Appearance by Abha Khanna on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Khanna, Abha) (Entered: 01/30/2024) |
| 02/01/2024 | 28 | REPLY to opposition to motion re 4 MOTION for Temporary Restraining Order *and Preliminary Injunction* MOTION for Preliminary Injunction filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Declaration of Eric Hananoki, # 2 Declaration of Ezra W. Reese, # 3 Declaration of Christopher D. Dodge)(Branch, Aria) (Entered: 02/01/2024) |
| 02/07/2024 | | MINUTE ORDER. Defendant W. Kenneth Paxton Jr. shall file, by 5:00 p.m. on February 9, 2024, a surreply of no more than five, double−spaced pages that addresses Plaintiff Media Matters for America's argument that Defendant's hiring of a process server to physically serve the Civil Investigative Demand in the District of Columbia supports finding personal jurisdiction under subsections (a)(1) and (a)(3) of the D.C. long−arm statute. See Pl.'s Reply in Support of Mot. for Prelim. Inj., ECF No. 28, at 2−8. Moreover, the parties shall appear for a hearing on Plaintiff's motion on February 15, 2024, at 10:00 a.m. in Courtroom 10. Signed by Judge Amit P. Mehta on 02/07/2024. (lcapm1) (Entered: 02/07/2024) |
| 02/09/2024 | | Set/Reset Hearings: Motion Hearing set for 2/15/2024 at 10:00 AM in Courtroom 10 before Judge Amit P. Mehta. (zjd) (Entered: 02/09/2024) |
| 02/09/2024 | 29 | NOTICE of Appearance by Christopher Lavorato on behalf of WARREN KENNETH PAXTON, JR (Lavorato, Christopher) (Entered: 02/09/2024) |
| 02/09/2024 | 30 | SURREPLY to re Order,, filed by WARREN KENNETH PAXTON, JR. (Schaerr, Gene) (Entered: 02/09/2024) |
| 02/09/2024 | 31 | MOTION to Dismiss for Lack of Jurisdiction by WARREN KENNETH PAXTON, JR. (Attachments: # 1 Text of Proposed Order)(Schaerr, Gene) (Entered: 02/09/2024) |
| 02/13/2024 | 32 | NOTICE of Appearance by Reuben William Blum on behalf of WARREN KENNETH PAXTON, JR (Blum, Reuben) (Entered: 02/13/2024) |
| 02/15/2024 | | Minute Entry for proceeding held on 2/15/2024 before Judge Amit P. Mehta: Motion Hearing re 4 MOTION for Preliminary Injunction. Oral arguments heard from both parties. (Court Reporter William Zaremba.) (zed) (Entered: 02/15/2024) |
| 02/15/2024 | | MINUTE ORDER. Before resolving the pending motion for preliminary injunction, the court wishes to receive additional briefing on the question of whether, because Defendant Paxton is treated as sued in his individual capacity under Ex Parte Young for sovereign immunity purposes, the court should similarly treat him as sued in his individual capacity for purposes of applying the District of Columbia long−arm statute, D.C. Code 13−423. Cf. United States v. Ferrara, 54 F.3d 825, 831 (D.C. Cir. 1995) (treating an out−of−state person sued in her official capacity as a "State" for purposes of the D.C. long−arm statute and holding that a "'State' is not a 'person' for its purposes"). The parties shall submit a supplemental brief of no longer than ten, |

| | | |
|---|---|---|
| | | double−spaced pages on or before February 22, 2024. The court also stays further briefing on the pending Motion to Dismiss, ECF No. 31. Signed by Judge Amit P. Mehta on 02/15/2024. (lcapm1) (Entered: 02/15/2024) |
| 02/16/2024 | | Set/Reset Deadlines: Supplemental Brief due by 2/22/2024. (smc) (Entered: 02/16/2024) |
| 02/20/2024 | 33 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING PROCEEDINGS before Judge Amit P. Mehta held on February 15, 2024; Page Numbers: 1−74. Date of Issuance: February 20, 2024. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354−3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/12/2024. Redacted Transcript Deadline set for 3/22/2024. Release of Transcript Restriction set for 5/20/2024.(Zaremba, William) (Entered: 02/20/2024) |
| 02/22/2024 | 34 | RESPONSE TO ORDER OF THE COURT re Order,,, *for Supplemental Briefing on Ex Parte Young* filed by WARREN KENNETH PAXTON, JR. (Schaerr, Gene) (Entered: 02/22/2024) |
| 02/22/2024 | 35 | RESPONSE TO ORDER OF THE COURT re Order,,, filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Branch, Aria) (Entered: 02/22/2024) |
| 03/29/2024 | 36 | NOTICE *of Missouri Attorney General CID and Petition* by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Branch, Aria) (Entered: 03/29/2024) |
| 04/12/2024 | 37 | MEMORANDUM OPINION re: Plaintiffs' 4 Motion for Preliminary Injunction and Defendant's 31 Motion to Dismiss. Please see attached Memorandum Opinion for additional details. Signed by Judge Amit P. Mehta on 04/12/2024. (lcapm3) Modified on 4/15/2024 (lsj). (Entered: 04/12/2024) |
| 04/12/2024 | 38 | ORDER: For the reasons stated in 37 Memorandum Opinion, the court grants Plaintiffs' 4 motion for preliminary injunction. Please see attached Order for additional details. Signed by Judge Amit P. Mehta on 04/12/2024. (lcapm3) (Entered: 04/12/2024) |
| 04/15/2024 | | MINUTE ORDER granting Plaintiffs' 3 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Amit P. Mehta on 04/15/2024. (lcapm1) (Entered: 04/15/2024) |
| 04/18/2024 | 39 | |

| | | |
|---|---|---|
| | | MOTION for Leave to File *Supplemental Complaint* by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Exhibit 1 – Blum Email, # 2 Exhibit 2 – Proposed Supplemental Complaint, # 3 Exhibit 3 – Notice of Investigation, # 4 Exhibit 4 – Investigation Press Release, # 5 Exhibit 5 – Missouri Demand, # 6 Exhibit 6 – Missouri Petition, # 7 Exhibit 7 – Demand Press Release, # 8 Exhibit 8 – MMFA Letter, # 9 Exhibit 9 – Morgan Email, # 10 Exhibit 10 – Missouri Notice of Letter, # 11 Exhibit 11 – Registration Exemption Letter)(Branch, Aria) (Entered: 04/18/2024) |
| 04/19/2024 | | MINUTE ORDER. Defendant shall respond to Plaintiffs' Rule 15(d) Motion to Supplement the Complaint, ECF No. 39, by April 22, 2024, at 5:00 p.m. Signed by Judge Amit P. Mehta on 4/19/24. (lcapm1) (Entered: 04/19/2024) |
| 04/22/2024 | 40 | RESPONSE re 39 MOTION for Leave to File *Supplemental Complaint* filed by WARREN KENNETH PAXTON, JR. (Schaerr, Gene) (Entered: 04/22/2024) |
| 04/22/2024 | 41 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 37 Order on Motion to Dismiss/Lack of Jurisdiction, 38 Order on Motion for TRO, Order on Motion for Preliminary Injunction by WARREN KENNETH PAXTON, JR. Filing fee $ 605, receipt number ADCDC–10843645. Fee Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit 1: Memorandum Opinion & Order 4/12/24)(Schaerr, Gene) Modified event on 4/23/2024 (mg). (Entered: 04/22/2024) |
| 04/23/2024 | 42 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 41 Notice of Appeal to DC Circuit Court. (mg) (Entered: 04/23/2024) |
| 04/23/2024 | | USCA Case Number 24–7059 for 41 Notice of Appeal to DC Circuit Court, filed by WARREN KENNETH PAXTON, JR.. (znmw) (Entered: 04/23/2024) |
| 04/23/2024 | 43 | REPLY to opposition to motion re 39 MOTION for Leave to File *Supplemental Complaint* filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Branch, Aria) (Entered: 04/23/2024) |
| 04/24/2024 | 44 | ORDER granting Plaintiffs' 39 Rule 15(d) Motion to Supplement the Complaint. See attached Order for additional details. Signed by Judge Amit P. Mehta on 04/24/2024. (lcapm1) (Entered: 04/24/2024) |
| 04/24/2024 | 45 | REQUEST FOR SUMMONS TO ISSUE *to Andrew Bailey* filed by MEDIA MATTERS FOR AMERICA, ERIC HANANOKI. Related document: 44 Order on Motion for Leave to File.(Branch, Aria) (Entered: 04/24/2024) |
| 04/24/2024 | 46 | Supplemental COMPLAINT against ANDREW BAILEY, WARREN KENNETH PAXTON, JR filed by MEDIA MATTERS FOR AMERICA, ERIC HANANOKI.(mg) (Additional attachment(s) added on 4/24/2024: # 1 Notice of Investigation, # 2 Investigation Press Release, # 3 Missouri Demand, # 4 Missouri Petition, # 5 Demand Press Release, # 6 MMFA Letter, # 7 Morgan Email, # 8 Missouri Notice of Letter, # 9 Registration Exemption Letter) (mg). (Entered: 04/24/2024) |
| 04/24/2024 | 47 | SUMMONS (1) Issued Electronically as to ANDREW BAILEY. (mg) (Entered: 04/24/2024) |
| 04/25/2024 | 48 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ANDREW BAILEY served on 4/24/2024, answer due 5/15/2024 (Branch, Aria) (Entered: 04/25/2024) |
| 04/25/2024 | 49 | |

| | | |
|---|---|---|
| | | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 – Second Supplemental Declaration of Eric Hananoki, # 3 Exhibit 2 – Supplemental Declaration of Cynthia Padera, # 4 Exhibit 3 – State's First Requests for Production, # 5 Exhibit 4 – Supplemental Declaration of Benjamin Dimiero, # 6 Text of Proposed Order, # 7 Certificate of Counsel)(Branch, Aria) (Entered: 04/25/2024) |
| 04/26/2024 | 50 | NOTICE of Appearance by Elena Alejandra Rodriguez Armenta on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Rodriguez Armenta, Elena) (Entered: 04/26/2024) |
| 04/26/2024 | 51 | NOTICE of Appearance by Christopher D. Dodge on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Dodge, Christopher) (Entered: 04/26/2024) |
| 04/26/2024 | 52 | NOTICE of Appearance by Samuel Ward–Packard on behalf of ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Ward–Packard, Samuel) (Entered: 04/26/2024) |
| 04/26/2024 | 53 | NOTICE of Service by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA re 49 Motion for TRO,,, Motion for Preliminary Injunction,, (Attachments: # 1 Attachment 1 – Confirmation of Service)(Branch, Aria) (Entered: 04/26/2024) |
| 04/26/2024 | | MINUTE ORDER. Plaintiffs shall file a Joint Status Report by April 29, 2024, which advises whether the parties are able to reach an agreement to stay compliance with the Missouri CID, thus mooting the request for temporary relief, until after this court resolves the pending motion for preliminary injunction. Signed by Judge Amit P. Mehta on 04/26/2024. (lcapm1) (Entered: 04/26/2024) |
| 04/26/2024 | | Set/Reset Deadlines/Hearings: Joint Status Report due by 4/29/2024. (zcdw) (Entered: 04/26/2024) |
| 04/29/2024 | 54 | Joint STATUS REPORT by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Branch, Aria) (Entered: 04/29/2024) |
| 05/03/2024 | | MINUTE ORDER. The parties shall appear for a status conference on May 8, 2024, at 4:00 PM via videoconference. Plaintiffs shall notify Defendant Bailey, as he has not yet entered an appearance in this matter. Signed by Judge Amit P. Mehta on 05/03/2024. (lcapm1) (Entered: 05/03/2024) |
| 05/03/2024 | | Set/Reset Hearings: Status Conference set for 5/8/2024 at 4:00 PM via videoconference before Judge Amit P. Mehta. (zjd) (Entered: 05/06/2024) |
| 05/08/2024 | 55 | NOTICE of Appearance by Joshua M. Divine on behalf of ANDREW BAILEY (Divine, Joshua) (Entered: 05/08/2024) |
| 05/08/2024 | 56 | Memorandum in opposition to re 49 Motion for TRO,,, Motion for Preliminary Injunction,, filed by ANDREW BAILEY. (Attachments: # 1 Affidavit Steven Reed)(Divine, Joshua) (Entered: 05/08/2024) |
| 05/08/2024 | 57 | MOTION to Dismiss for Lack of Jurisdiction , for failure to state a claim, or because of abstention by ANDREW BAILEY. (Divine, Joshua) (Entered: 05/08/2024) |
| 05/08/2024 | | Minute Entry for video proceedings held before Judge Amit P. Mehta: Status Conference held on 5/8/2024. Parties directed to file a joint status report on 5/10/2024. (Court Reporter: William Zaremba) (zcdw) (Entered: 05/08/2024) |
| 05/10/2024 | 58 | |

| | | |
|---|---|---|
| | | Joint STATUS REPORT by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Branch, Aria) (Entered: 05/10/2024) |
| 05/13/2024 | | MINUTE ORDER (1) Plaintiffs shall file their Reply in Support of their Preliminary Injunction/Temporary Restraining Order Motion and Opposition to Defendant Bailey's Motion to Dismiss by May 20, 2024; (2) Defendant Bailey shall file a reply in Support of his Motion to Dismiss by June 4, 2024; and (3) all proceedings are stayed as to Defendant Paxton pending appeal of the court's order granting injunctive relief. Signed by Judge Amit P. Mehta on 05/13/2024. (lcapm1) (Entered: 05/13/2024) |
| 05/13/2024 | | Set/Reset Deadlines: Plaintiff Reply due by 5/20/2024. Defendants reply due by 6/4/2024 (zglw) (Entered: 05/13/2024) |
| 05/20/2024 | 59 | Unopposed MOTION for Leave to File Excess Pages by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Text of Proposed Order)(Branch, Aria) (Entered: 05/20/2024) |
| 05/20/2024 | 60 | REPLY to opposition to motion re 49 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Exhibit A – Respts Mot., Planned Parenthood of the St. Louis Region v. Bailey)(Branch, Aria) (Entered: 05/20/2024) |
| 05/20/2024 | 61 | Memorandum in opposition to re 57 Motion to Dismiss/Lack of Jurisdiction filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Exhibit A – Respts Mot., Planned Parenthood of the St. Louis Region v. Bailey)(Branch, Aria) (Entered: 05/20/2024) |
| 05/21/2024 | | MINUTE ORDER granting Plaintiffs' 59 Unopposed Motion to Confirm or Expand Page Limit. Plaintiffs' combined opposition and reply brief shall not exceed 35 pages. Signed by Judge Amit P. Mehta on 05/21/2024. (lcapm1) (Entered: 05/21/2024) |
| 05/22/2024 | | MINUTE ORDER. The parties shall appear for a hearing on Plaintiffs' Motion for Preliminary Injunction/Temporary Restraining Order, ECF No. 49, and Defendant Bailey's Motion to Dismiss, ECF No. 57, on June 6, 2024, at 2:00 PM in Courtroom 10 before Judge Amit P. Mehta. Signed by Judge Amit P. Mehta on 05/22/2024. (lcapm1) (Entered: 05/22/2024) |
| 05/23/2024 | | Set/Reset Hearings: Motion Hearing set for 6/6/2024 at 2:00 PM in Courtroom 10 (In Person) before Judge Amit P. Mehta. (smc) (Entered: 05/23/2024) |
| 06/04/2024 | 62 | NOTICE of Appearance by Reed Dempsey on behalf of ANDREW BAILEY (Dempsey, Reed) (Entered: 06/04/2024) |
| 06/04/2024 | 63 | REPLY to opposition to motion re 57 MOTION to Dismiss for Lack of Jurisdiction , *for failure to state a claim, or because of abstention* filed by ANDREW BAILEY. (Attachments: # 1 Exhibit A – Amended Complaint, # 2 Exhibit B – Second Decl. of Steven Reed)(Divine, Joshua) (Entered: 06/04/2024) |
| 06/05/2024 | 64 | NOTICE *Regarding Additional Retaliatory Statements by Bailey* by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA re 49 Motion for TRO,,, Motion for Preliminary Injunction,, (Branch, Aria) (Entered: 06/05/2024) |
| 06/06/2024 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Motions Hearing held on 6/6/2024. The Court heard arguments on the Defendant's 57 MOTION to Dismiss for Lack of Jurisdiction , *for failure to state a claim, or because of abstention* filed by ANDREW BAILEY and the Plaintiff's 49 MOTION for Temporary Restraining Order |

| | | |
|---|---|---|
| | | MOTION for Preliminary Injunction filed by MEDIA MATTERS FOR AMERICA, ERIC HANANOKI and took the matter under advisement. (Court Reporter William Zaremba) (zakb) (Entered: 06/06/2024) |
| 06/07/2024 | | MINUTE ORDER. By the close of business on June 7, 2024, (1) Defendant Bailey shall submit directly to the court for in camera, ex parte review the record referenced in paragraphs 5–12 of the Second Declaration of Assistant Attorney General Steven Reed, ECF No. 63–2, and (2) Plaintiff Media Matters shall docket what it believes to be the public record described in the Second Reed Declaration. Signed by Judge Amit P. Mehta on 06/07/2024. (lcapm1) (Entered: 06/07/2024) |
| 06/07/2024 | | MINUTE ORDER. Parties shall advise the court as of close of business today, June 7, 2024, whether they are amenable to extending the deadlines in the Missouri state court proceedings. Additionally, Defendant Bailey shall advise the court ex parte and in camera the date on which he obtained the record referenced on paragraphs 5–12 of the Second Declaration of Assistant Attorney General Steven Reed, ECF No. 63–2. Signed by Judge Amit P. Mehta on 06/07/2024. (lcapm1) (Entered: 06/07/2024) |
| 06/07/2024 | | Set/Reset Deadlines: Defendant Bailey to submit records indicated in minute order dated 6/7/2024 directly to the court by close of business on 6/7/2024. (zakb) (Entered: 06/07/2024) |
| 06/07/2024 | 65 | RESPONSE TO ORDER OF THE COURT re Order, Order, filed by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA. (Attachments: # 1 Exhibit A)(Branch, Aria) (Entered: 06/07/2024) |
| 06/10/2024 | 66 | TRANSCRIPT OF PRELIMINARY INJUNCTION AND MOTION TO DISMISS PROCEEDINGS before Judge Amit P. Mehta held on June 6, 2024; Page Numbers: 1–107. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 7/1/2024. Redacted Transcript Deadline set for 7/11/2024. Release of Transcript Restriction set for 9/8/2024.(Zaremba, William) (Entered: 06/10/2024) |
| 06/21/2024 | 67 | NOTICE OF SUPPLEMENTAL AUTHORITY by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Attachments: # 1 Attachment Gonzalez v. Trevino Slip Op.)(Branch, Aria) (Entered: 06/21/2024) |
| 06/26/2024 | 68 | RESPONSE re 67 NOTICE OF SUPPLEMENTAL AUTHORITY filed by ANDREW BAILEY. (Divine, Joshua) Modified docket text on 6/26/2024 (mg). (Entered: |

| | | |
|---|---|---|
| | | 06/26/2024) |
| 08/16/2024 | 69 | NOTICE *of Assignment of Missouri Judge (Joint)* by ERIC HANANOKI, MEDIA MATTERS FOR AMERICA (Branch, Aria) (Entered: 08/16/2024) |
| 08/22/2024 | 70 | ORDER: For the reasons stated in the forthcoming Memorandum Opinion, the court grants Plaintiffs' 49 Motion for Preliminary Injunction. Please see attached Order for additional details. Signed by Judge Amit P. Mehta on 08/22/2024. (lcapm1) Modified on 8/23/2024 to correct grammar (zakb). (Entered: 08/22/2024) |
| 08/23/2024 | 71 | MEMORANDUM OPINION re: Plaintiffs' 49 Motion for Preliminary Injunction and Defendant's 57 Motion to Dismiss. Please see attached Memorandum Opinion for additional details. Signed by Judge Amit P. Mehta on 08/23/2024. (lcapm1) (Entered: 08/23/2024) |
| 09/06/2024 | 72 | ANSWER to 46 Complaint, by ANDREW BAILEY.(Divine, Joshua) (Entered: 09/06/2024) |
| 09/10/2024 | 73 | ORDER setting an Initial Scheduling Conference for October 14, 2024, at 10:00 a.m. via video conference before Judge Amit P. Mehta. See the attached Order for additional details. Signed by Judge Amit P. Mehta on 09/10/2024. (lcapm1) (Entered: 09/10/2024) |
| 09/17/2024 | | MINUTE ORDER. The Initial Scheduling Conference set for October 14, 2024, is hereby vacated and rescheduled for October 15, 2024, at 9:15 a.m. via videoconference. Signed by Judge Amit P. Mehta on 09/17/2024. (lcapm1) (Entered: 09/17/2024) |
| 09/20/2024 | 74 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 70 Order on Motion for TRO,, Order on Motion for Preliminary Injunction, 71 Memorandum & Opinion by ANDREW BAILEY. Filing fee $ 605, receipt number BDCDC–11174899. Fee Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit 1 –PI Order)(Divine, Joshua) (Entered: 09/20/2024) |
| | | *Main Document* |
| | | Attachment # 1 *Exhibit 1 –PI Order* |
| 09/20/2024 | 75 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Todd Dickerson, Filing fee $ 100, receipt number ADCDC–11175766. Fee Status: Fee Paid. by WARREN KENNETH PAXTON, JR. (Attachments: # 1 Declaration of Todd Dickerson)(Schaerr, Gene) (Entered: 09/20/2024) |

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, | |
| Plaintiffs, | |
| v. | Civil Action No. 24-cv-00147-APM |
| WARREN KENNETH PAXTON JR., in his official capacity as Attorney General of the State of Texas, | |
| ANDREW BAILEY, in his official capacity as Attorney General of the State of Missouri | |
| Defendants. | |

**DEFENDANT ANDREW BAILEY'S NOTICE OF APPEAL**

Pursuant to 28 U.S.C. § 1292(a)(1) and Rules 3(a)(1) and 4(a)(1)(A) of the Federal Rules of Appellate Procedures, notice is hereby given that Defendant Andrew Bailey, in his official capacity as Attorney General of the State of Missouri, appeals to the United States Court of Appeals for the District of Columbia Circuit from the Preliminary Injunction Order, ECF 70, dated August 22, 2024, and accompanying Memorandum Order, ECF 71, dated August 23, 2024, which granted Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction Against Bailey, ECF 49, and thus, is immediately appealable under 28 U.S.C. § 1292(a)(1).  Defendant also hereby appeals from all subsidiary rulings incorporated in the Memorandum Opinion and Order.

A copy of the Memorandum Opinion and Order is attached hereto as Exhibit 1.

1

Date: September 20, 2024                Respectfully submitted,

                                        ANDREW BAILEY
                                        Attorney General of Missouri

                                        /s/ *Joshua M. Divine*
                                        JOSHUA M. DIVINE, #69875MO
                                        Solicitor General

                                        JEREMIAH J. MORGAN, #50387MO
                                        Deputy Attorney General – Civil
                                        REED C. DEMPSEY, #1697941DC
                                        Deputy Solicitor General

                                        OFFICE OF THE ATTORNEY GENERAL
                                        Supreme Court Building
                                        207 West High Street
                                        P.O. Box 899
                                        Jefferson City, Missouri 65102
                                        Tel. (573) 751-1800
                                        Fax (573) 751-0774
                                        josh.divine@ago.mo.gov
                                        jeremiah.morgan@ago.mo.gov

                                        *Counsel for Defendant Missouri Attorney General*

**CERTIFICATE OF SERVICE**

I certify that on September 20, 2024, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

/s/ *Joshua M. Divine*
Counsel for Missouri Attorney General

# EXHIBIT
# 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                                         |     |                          |
| ------------------------------------------------------- | --- | ------------------------ |
|                                                         | )   |                          |
| **MEDIA MATTERS FOR AMERICA, et al.,**                  | )   |                          |
|                                                         | )   |                          |
| **Plaintiffs,**                                         | )   |                          |
|                                                         | )   |                          |
| **v.**                                                  | )   | **Civil No. 24-cv-147 (APM)** |
|                                                         | )   |                          |
| **ANDREW BAILEY,**                                      | )   |                          |
| *Attorney General of the State of Missouri*, **et al.** | )   |                          |
|                                                         | )   |                          |
| **Defendants.**                                         | )   |                          |
|                                                         | )   |                          |

## PRELIMINARY INJUNCTION ORDER

On April 25, 2024, Plaintiffs Media Matters for America ("Media Matters") and Eric Hananoki filed a motion for preliminary injunctive relief against Defendant Andrew Bailey, the Attorney General for the State of Missouri, ECF No. 49. After considering the parties' arguments and the evidence submitted, and for the reasons stated in the forthcoming Memorandum Opinion, the court grants the motion and enters the following Preliminary Injunction Order. It is hereby:

**ORDERED** that Andrew Bailey, Attorney General of the State of Missouri, together with his agents and employees within the Office of the Attorney General (collectively "Defendant Bailey"), is enjoined from enforcing the Civil Investigative Demand (CID) issued on March 25, 2024, and prosecuting the Petition filed in the Cole County, Missouri Circuit Court against Media Matters on the same day; and, it is further

**ORDERED** that Defendant Bailey is enjoined from issuing any additional CIDs, filing or amending Petitions, or taking steps purporting to mandate any action on behalf of Plaintiffs

(including Media Matters' officers, employees and agents) in furtherance of the investigation of Media Matters announced by Defendant Bailey on December 11, 2023.

  This order shall remain in effect until a final judgment is entered in this matter, unless this Order is earlier dissolved by this court or by an appellate court.

Dated:  August 22, 2024

           Amit P. Mehta
        United States District Court Judge

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                           )
MEDIA MATTERS FOR AMERICA, et al.,   )
                                                           )
    Plaintiffs,                                       )
                                                           )
            v.                                          )          Civil No. 24-cv-147 (APM)
                                                           )
ANDREW BAILEY,                                )
*Attorney General of the State of Missouri*, et al.   )
                                                           )
    Defendants.                                     )
_____)

## MEMORANDUM OPINION

### I.

On November 16, 2023, Plaintiff Media Matters for America, Inc., a District of Columbia-based media company, published an article authored by Plaintiff Eric Hananoki reporting that advertisements for several major corporations were appearing next to extremist content on X.com ("November 16 Article"). Defendant Texas Attorney General Ken Paxton served a Civil Investigative Demand ("Texas CID") on Media Matters shortly thereafter, seeking a host of records concerning Media Matters' reporting and operations. Plaintiffs filed suit against Defendant Paxton in January 2024, asserting a Section 1983 claim for retaliation in violation of the First Amendment and seeking to enjoin enforcement of the Texas CID. The court granted Plaintiffs' motion for a preliminary injunction on April 12, 2024, finding that Plaintiffs were likely to succeed in establishing jurisdiction over Paxton and on the merits of their claim. *Media Matters for Am. v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197, at \*5–14, \*20 (D.D.C. Apr. 12, 2024).

Meanwhile, on March 25, 2024, Defendant Andrew Bailey, the Attorney General for the State of Missouri, served his own Civil Investigative Demand ("Missouri CID") on Media Matters with a return date of April 15, 2024. Suppl. Compl., ECF No. 46, ¶¶ 16–18, 22 [hereinafter Suppl. Compl.]. The Missouri CID sought nearly the same records as the Texas CID. *Id.* ¶ 17; Suppl. Compl., Ex. 5, ECF No. 46-3 [hereinafter Pls.' Ex. 5], at 4–5. On the same day Defendant Bailey served the CID, he preemptively filed an enforcement petition in Missouri state court, claiming that an immediate enforcement action was needed because Media Matters had resisted the Texas CID. Suppl. Compl., Ex. 6, ECF No. 46-4 [hereinafter Pls.' Ex. 6], at 7–8.

Shortly thereafter, Plaintiffs filed a motion to supplement their complaint to add Attorney General Bailey as a defendant to this action, which the court granted on April 24, 2024. Order, ECF No. 44. Plaintiffs then moved for an order enjoining enforcement of the Missouri CID, asserting, among other things, that Defendant Bailey had retaliated against them for protected speech in violation of the First Amendment and Section 1983. Pls.' Mot. for TRO & Prelim. Inj., ECF No. 49 [hereinafter Pls.' Mot.].[1] Defendant Bailey opposed the motion for injunctive relief, Def.'s Opp'n, ECF No. 56 [hereinafter Def.'s Opp'n], and moved to dismiss the case, Def's Mot. to Dismiss, ECF No. 57 [hereinafter Def.'s Mot.].

For the reasons explained below, the court grants Plaintiffs' Motion for a Preliminary Injunction and denies Defendant's Motion to Dismiss.

## II.

The court begins with the factual and procedural background of Plaintiffs' claims specific to Defendant Bailey.

---

[1] Plaintiffs also argue that the intrusiveness of the Missouri CID violates the First and Fourth Amendments, and that compelled disclosure would violate District of Columbia and Maryland shield laws. Pls.' Mem. in Supp. of Pls.'s Mot., ECF No. 49-1 [hereinafter Pls.' Mem.], at 32–36. The court does not reach these claims.

Three days after Media Matters published the November 16 Article, a former senior aide to President Donald Trump, Stephen Miller, sent a tweet implicitly calling upon "conservative" state attorneys general to investigate Media Matters' reporting on X.  Within hours, Defendant Bailey responded that "[his] team is looking into the matter."  Suppl. Compl. ¶ 10; *see* Br. of Appellees, *Media Matters of Am. v. Paxton*, No. 24-7059 (D.C. Cir. July 10, 2024), at 9.

Weeks later, Defendant Bailey issued a "Notice of Pending Investigation" to Media Matters.  Sent to a generic email address, the Notice directed Media Matters to "<u>preserve all records that may relate to</u> your alleged effort to engage in coordinated, inauthentic behavior on social media platforms in order to generate false statements that were used to solicit contributions under false pretenses."  Suppl. Compl., Ex. 3, ECF No. 46-1, at 2.  On the same day, Defendant Bailey issued a press release, stating that he had put Media Matters on "notice that his office has launched an investigation into its allegedly fraudulent solicitation of donations from Missourians amidst its efforts to target X[.]"  Suppl. Compl., Ex. 4, ECF No. 46-2 [hereinafter Pls.' Ex. 4], at 4.  According to the press release, Defendant had "reason to believe Media Matters used fraud to solicit donations from Missourians in order to trick advertisers into pulling out of X[.]"  *Id.*  Defendant described Media Matters as "radicals," and said he would fight "to ensure progressive tyrants masquerading as news outlets cannot manipulate the marketplace in order to wipe out free speech."  *Id.*

On March 25, 2024, Defendant Bailey mailed the Missouri CID to Media Matters.  The accompanying letter expressed Defendant's belief that Media Matters had "engaged in or is engaging in practices declared unlawful by § 407.020" of the Missouri Merchandising Practices Act (MMPA).  Pls.' Ex. 5 at 1.  The Missouri CID requested various categories of internal documents, including donor records, internal correspondence, and journalistic source material.  *Id.* at 3–5.  As to donor records, Defendant Bailey sought "a list or information identifying any and

3

all donations of funds from donors located in the state of Missouri from January 01, 2023, through

March 25, 2024," including the:

- Identity of each individual or organization that donated funds;

- Address of each individual or organization that donated funds;

- Total amount spent per donation;

- Date and time of each donation;

- Payment method for each donation;

- Identity of financial institution where funds were sent; and,

- Contracts and/or agreements governing or related to each donation.

*Id.* at 3. The demand also sought the following records relating to Media Matters' general and

Missouri-specific operations:

- "All promotional or marketing information provided by you from January 1, 2023, to March 25, 2024 to any individual or organization for the purpose of soliciting donations."

- "All documents or communications showing how solicited donations were used."

- "All communications or materials relating to any policy, strategy, or operation related to generating stories or content intended to cancel, deplatform, demonetize, or otherwise interfere with businesses located in Missouri, or utilized by Missouri residents."

- "Documents sufficient to identify your employee organizational chart."

- "Documents sufficient to identify all your operational expenses in the state of Missouri."

*Id.* at 4. Finally, the Missouri CID made a broad demand for records relating to Media Matters'

reporting on X and X's owner, Elon Musk:

- "All communications, internal and external, regarding [Media Matters'] strategy to pressure advertisers into pulling advertisements from the social media platform, X (formerly Twitter). "

4

- "All documents discussing Elon Musk's purchase of X (formerly Twitter)."

- "All documents related to the article, or to the events described in the article, by Eric Hananoki entitled 'As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content.'"

- "All documents sufficient to identify X accounts owned, controlled, or authorized by [Media Matters] used to obtain the images in the article [by Eric Hananoki]."

- "All documents sufficient to identify all X accounts followed by the X accounts identified in response to [the immediately preceding request]. "

- "All communications with Apple, International Business Machine Corporation, Bravo Television Network, NBCUniversal, Oracle Corporation, Comcast Corporation, Lions Gate Entertainment Corporation, Warner Bros Discovery Inc., Paramount Pictures Corporation, or Sony Group Corporation from November 1, 2023, to March 25, 2024."

*Id.* at 4–5. Media Matters received the Missouri CID on April 1, 2024. Pls.' Mot., Ex. 2, Suppl. Decl. of Cynthia Padera in Supp. of Pls.' Mot., ECF No. 49-3 [hereinafter Suppl. Padera Decl.] ¶ 6.

The same day that Defendant Bailey issued the CID, he filed a petition in Missouri state court to enforce it under MMPA § 407.090 ("Petition"). *See generally* Pls.' Ex. 6. That provision grants the Attorney General the power to "request [a] court order to produce evidentiary material . . . [w]henever any person fails to comply with any civil investigative demand duly served upon him[.]" Mo. Rev. Stat. § 407.090. The Petition accused Media Matters of "us[ing] fraud to solicit donations from Missourians in order to trick advertisers into removing their advertisements from X, formerly Twitter, one of the last platforms dedicated to free speech in America." Pls.' Ex. 6 at 2. The Petition referred to Media Matters as "radical 'progressives,'" and stated that "Missourians will not be manipulated by 'progressive' activists masquerading as news outlets, and they will not be defrauded in the process." *Id.* Perhaps to explain why he filed suit before Media Matters even had received the Missouri CID, Defendant Bailey alleged that "Media Matters has expressed its

intent not to comply with CIDs like this one" and cited Plaintiffs' suit against Defendant Paxton as an example. *Id.* ¶¶ 19–20.

Three days later, on March 28, 2024, Defendant Bailey dispatched a process server to personally deliver the Petition to Media Matters at its office in Washington, D.C.  Suppl. Padera Decl. ¶¶ 6, 8.  Media Matters had not yet received the Missouri CID by mail.  *Id.*

On April 15, 2024, the CID's return date, Media Matters served written objections to the demand and requested that Defendant Bailey withdraw the CID and Petition, noting this court's entry of the injunction against Defendant Paxton.  Suppl. Compl., Ex. 8, ECF No. 46-6 [hereinafter Pls.' Ex. 8].  On April 19, 2024, one day after Plaintiffs sought leave to add Defendant Bailey to this action, Defendant served Media Matters with a Request for Production.  Pls.' Mot., Ex. 3, ECF No. 49-4.  The records requested are nearly identical to those sought by the Missouri CID. *See id.* ¶¶ 1–12.

Plaintiffs then moved to enjoin enforcement of the CID in this court.  Pls.' Mot.  That motion became ripe on May 20, 2024.  Pls.' Reply in Supp. of Pls.' Mot., ECF No. 60 [hereinafter Pls.' Reply].  Four days later, on May 24, 2024, Defendant Bailey amended the Petition, which the court will discuss in greater detail below.  Def.'s Reply in Supp. of His Mot. to Dismiss, ECF No. 63 [hereinafter Def.'s Reply], Ex. A, ECF No. 63-1 [hereinafter Def.'s Ex. A].

The court heard argument on the parties' motions on June 6, 2024.

### III.

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks and citations omitted).  A court may grant the "extraordinary remedy . . . [only] upon a clear

6

showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

The preliminary injunction factors are well established. A plaintiff must show that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Id.* at 20 (citations omitted). As part of the first factor, a plaintiff must establish a likelihood of success in establishing personal jurisdiction over the defendant, if challenged. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913–14 (D.C. Cir. 2015).

 Courts in this jurisdiction evaluate the four injunction factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009) (citation omitted). The Supreme Court's decision in *Winter*, however, sparked disagreement over whether the "sliding scale" framework continues to apply, or whether a movant must make a positive showing on all four factors. *See Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that the D.C. Circuit "has not yet decided whether *Winter* . . . is properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned").

Here, application of the sliding scale makes no difference because the court finds that Plaintiffs have met their burden even under a more stringent application of the traditional four-factor test.

## IV.

The court first addresses Defendant Bailey's threshold challenges to the justiciability of Plaintiffs' claims: (1) abstention from the exercise of jurisdiction; (2) lack of personal jurisdiction;

and (3) the adequacy of a state-court remedy and ripeness.  The court will then turn to Plaintiffs'

likelihood of success on the merits and the remaining preliminary injunction factors.

### A.    *Younger* Abstention

The court begins with abstention.  Defendant Bailey contends that, because of the pending

Missouri state-court enforcement action, the court should abstain from exercising jurisdiction

under *Younger v. Harris*, 401 U.S. 37 (1971).  Def.'s Opp'n at 10–15.  The court declines to do

so.

A court need not abstain under *Younger* "simply because a pending state-court proceeding

involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)

(citation omitted).  The general rule is that "federal courts ordinarily should entertain and resolve

on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide

a case in deference to the States.'"  *Id.* (alteration in original) (quoting *New Orleans Pub. Serv.

Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)).  Abstention under

*Younger* is thus limited to "only exceptional circumstances."  *NOPSI*, 491 U.S. at 368.

The Supreme Court has identified three such "exceptional" circumstances: "'state criminal

prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that

are uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Sprint*,

571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 367–68).  The first category is inapplicable here.

Defendant Bailey relies on the second and third.

*Civil Enforcement Actions.*  The Court's decisions applying *Younger* to instances of civil

enforcement "have generally concerned state proceedings 'akin to criminal prosecution' in

'important respects.'"  *Id.* at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

"Such enforcement actions are characteristically initiated to sanction the federal plaintiff . . . for

some wrongful act." *Id.* (citation omitted). Specifically, a "state actor is routinely a party to such proceedings and often initiates the action[,]" and "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* (citations omitted). Lower courts have considered, as an additional factor gleaned from pre-*Sprint* caselaw, "whether the State could have alternatively sought to enforce a parallel criminal statute." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 891 (3d Cir. 2022) (quoting *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014)).

The Third Circuit's application of these factors in *Smith & Wesson* is instructive here. In that case, the New Jersey Attorney General was investigating Smith & Wesson for possible violations of the New Jersey Consumer Fraud Act, and he issued a subpoena to the company for records. *Id.* at 889. Instead of producing documents, Smith & Wesson filed a Section 1983 action in federal court, alleging that the subpoena violated, among other things, the First Amendment. *Id.* Thereafter, the Attorney General filed an action in New Jersey state court seeking to enforce the subpoena. *Id.* at 890. The state trial court ordered the company to produce records and, after unsuccessful appeals to stay the order, Smith & Wesson did so, subject to an agreement that the Attorney General would return the records if the subpoena were determined to be unlawful. *Id.* The trial court dismissed the case, deciding *Younger* required it to abstain from exercising jurisdiction. *Id.* at 888.

The Third Circuit reversed. *Id.* at 895–96. In so ruling, the court first found that the state proceedings, although initiated by a state actor, were not "akin to [a] criminal prosecution." *Id.* at 892 (quoting *Sprint*, 571 U.S. at 79). It distinguished the subpoena enforcement action "from those [cases] where more robust preliminary investigation led to the filing of administrative complaints," and "in those cases, the investigation and the charges concerned the same conduct." *Id.* at 891–92

9

(citations omitted).  The court also explained that the subpoena enforcement action "did not punish wrongdoing."  *Id.* at 892.  "[T]he Attorney General did not allege that Smith & Wesson violated any substantive legal duty," only a "procedural rule related to the production of documents."  *Id.* Moreover, the court said that the company "did nothing wrong," because it had "petitioned a federal court to adjudicate its rights and obligations," instead of producing records.  *Id.* at 892–93. There also was no criminal analog to the subpoena enforcement action.  *Id.* at 893.  For these reasons, the court concluded, "[a] subpoena enforcement action that requires the production of documents is not retributive in nature or imposed to punish . . . some wrongful act."  *Id.* (internal quotation marks omitted) (citing *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 236–37 (3d Cir. 2022)).

The parallels between this case and *Smith & Wesson* are obvious.  The Missouri state-court action, although filed by a state actor, involved no preliminary investigation and alleged only a violation of a procedural rule governing the production of records, not a substantive legal duty. Nor did the action seek to punish wrongdoing.  In fact, when Defendant filed the Petition, the Missouri CID was still in the mail.  Media Matters had done nothing wrong; there was nothing to punish.  The same is true today, even after the deadline for production has passed.  Just like Smith & Wesson, Plaintiffs have exercised their right to bring suit in federal court to "adjudicate [their] rights and obligations."  *Id.* at 892.

There is more.  In the Missouri action, Defendant Bailey filed an amended Petition asking the court to impose a civil penalty of up to $1,000 for Media Matters' failure to timely produce records.  Def.'s Ex. A.  This demand for a civil penalty does not make the state proceedings "akin to a criminal prosecution in important respects."  *Sprint*, 571 U.S. at 79 (internal quotation marks and citation omitted).  For one, the court is skeptical that the MMPA's civil penalty provision even

applies.  That provision applies to a generic violation of the MMPA.  Mo. Rev. Stat. § 407.100(6).

Elsewhere, the MMPA establishes a particularized process and penalty for "any person that fails

to comply with any civil investigative demand."  *Id.* § 407.090.  That process requires the Attorney

General to first move for an order of enforcement, and only if the person disobeys a final order to

compel are they subject to the sanction of contempt.  *Id.*  This CID-specific provision is likely to

control in the Petition enforcement action, not the general $1,000 civil penalty provision.  *See State*

*ex rel. Taylor v. Russell*, 449 S.W.3d 380, 382 (Mo. 2014) (en banc) ("[W]here one statute deals

with the subject in general terms and the other deals in a specific way, to the extent they conflict,

the specific statute prevails over the general statute." (internal quotation marks and citation

omitted)).  And because the civil contempt penalty is not "self-executing"—that is, "a court will

impose [a penalty] only after the subpoenaed party violates a court order"—the enforcement action

does not itself seek to sanction wrongful conduct.  *Smith & Wesson*, 27 F.4th at 893; Mo. Stat.

§ 407.090 ("Any disobedience of any final order entered under this section by any court shall be

punished as a contempt thereof.").

But even if the civil penalty were available, *Younger* abstention still would not be

appropriate.  The civil proceeding must "bear a close relationship to proceedings criminal in

nature."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The Missouri state-court action was not the culmination of an investigation into alleged

wrongdoing; Defendant was "just at the investigation stage," Hr'g Tr., ECF No. 66, at 54:12-13.

*See Sprint*, 571 U.S. at 78–79.  In that sense, the Missouri enforcement action is more like a civil

contempt proceeding than a criminal prosecution.

*Judicial Orders.*  The third and final "exceptional" category warranting *Younger* abstention

is "civil proceedings involving certain orders that are uniquely in furtherance of the state courts'

11

ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368.  Such orders include civil contempt orders and the requirement of posting bond pending appeal.  *Id*. (citing *Juidice v. Vail*, 430 U.S 327 (1977) (abstaining when state court sought to enforce court-sanctioned orders after federal plaintiffs had failed to comply), and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (abstaining when state court sought to enforce its procedure for enforcing a jury verdict)).

Those types of orders are not at issue here.  *Smith & Wesson* once more is illustrative. There, the Third Circuit held that abstention was improper on this third ground, even though the New Jersey state-court proceedings were near completion.  *See* 27 F.4th at 893–95.  The trial court had compelled production under pain of penalties, the state appeals courts had refused to stay the trial court's order, and Smith & Wesson had conditionally produced records to comply with that order.  *Id*. at 889–890.  Here, in sharp contrast, the Missouri state court "has neither issued orders enforcing [the CID] nor made contempt findings."  *TitleMax*, 2 F.4th at 237.  In fact, those proceedings have barely gotten off the ground.  *See* Joint Notice of Assignment of Missouri Judge, ECF No. 69.

Defendant's position seems to be that anytime a state attorney general seeks to enforce a demand for records in state court, the third category is implicated.  But that position contravenes precedent.  It ignores "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," and that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).  The mere prospect of a state court's issuance of a coercive order is not enough to abstain under *Younger*.  *See also Smith & Wesson*, 27 F.4th at 895 (rejecting the reasoning that

the mere threat of contempt in a pending civil proceeding requires abstention because "the contempt power is generally available to enforce court orders").[2]

In sum, "[b]ecause this case presents none of the circumstances the [Supreme] Court has ranked as 'exceptional,' the general rule governs: 'The pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Sprint*, 571 U.S. at 73 (quoting *Colo. River*, 424 U.S. at 817 (cleaned up)).  Accordingly, the court declines to abstain under *Younger*.[3]

### B.    Personal Jurisdiction

Next, Defendant Bailey asserts that this court lacks personal jurisdiction over him.  He claims that no provision of the D.C. long-arm statute applies, and that the exercise of personal jurisdiction would violate the Due Process Clause. Def.'s Opp'n at 23–28.[4]  Defendant Paxton made these same arguments, and the court rejected them.  *Media Matters*, 2024 WL 1773197, at *9–13.  The court does so again.  Both the transacting business prong, D.C. Code § 13-423(a)(1), and the tortious conduct prong, § 13-423(a)(3), confer long-arm jurisdiction that is consistent with due process.

*First*, the "transacting business" prong of the long-arm statute, D.C. Code § 13-423(a)(1), which is co-extensive with the Due Process Clause, applies to Defendant Bailey's conduct for the same reasons that it applied to Defendant Paxton's.  *Media Matters*, 2024 WL 1773197, at *9–12.  There is one immaterial factual difference.  Whereas Defendant Paxton hired a process server to hand-deliver the Texas CID in the District and never moved to enforce it, *id.* at 10, Defendant

---

[2] For these reasons, the court respectfully disagrees with the decision to abstain made by the Eastern District of Missouri in *Backpage.com, LLC v. Hawley*, No. 4:17-cv-1951 (PLC), 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017).
[3] In light of this conclusion, the court need not reach Plaintiffs' arguments that abstaining under *Younger* would be inappropriate because (1) this court reached a merits determination as to Defendant Paxton before Defendant Bailey filed the Missouri state-court action and (2) Defendant Bailey filed the Petition in bad faith. Pls.' Reply at 11–18.
[4] The court finds that Defendant Bailey is a "person" for the purposes of the D.C. long-arm statute for the reasons stated in its earlier decision.  *See Media Matters*, 2024 WL 1773197, at *5–8.

13

Bailey hired and directed an agent to physically serve the enforcement Petition on Media Matters in the District, even before the CID reached it by mail, Suppl. Padera Decl. ¶¶ 6, 8.  Defendant Bailey's contracting with an agent to cause personal service of alleged retaliatory process established the requisite minimum contacts with the District.  *See Media Matters*, 2024 WL 1773197, at *10–11.

Like Defendant Paxton, Defendant Bailey argues that because the hiring of a process server is not "some type of commercial or business-related activity directed at District residents," subsection (a)(1) does not apply.  Def.'s Opp'n at 24–25 (quoting *Holder v. Haarman & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001)).  Defendant's insistence that "transacting business" requires something resembling profit-driven conduct within the District is not supported by caselaw.  The D.C. Court of Appeals has said that "[i]t is now well-settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here."  *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) (citation omitted).  Defendant Bailey does not deny that he engaged in "contractual activities" by hiring a process server.  Nor does he dispute that the personal service caused a consequence here.  That is enough to constitute "transacting business" in the District.

The cases Defendant cites, *Forras v. Rauf*, 812 F.3d 1102 (D.C. Cir. 2016), and the D.C. Court of Appeals's decision in *Holder*, do not require a different conclusion.  Defendant reads these cases as requiring contacts under subsection (a)(1) to be "commercial or business-related activities."  Def.'s Reply at 16 (citing *Holder*, 779 A.2d at 270–71).  Defendant quotes from *Forras*: "The plain text of subsection (a)(1), however, focuses on where the defendant undertook the *challenged (business) actions*."  *Id.* (quoting *Forras*, 812 F.3d at 1106) (emphasis added by Defendant).  That quoted portion, however, merely makes the point that the subsection (a)(1)

14

inquiry focuses on where the challenged activity took place; it does not address the scope of what constitutes "transacting business."  812 F.3d at 1106.  And, although *Holder* refers to "commercial or business-related activity," the court did not purport to narrow *Mouzavires* and, in fact, affirmatively cited to it.  779 A.2d at 269–70.  Nor does Defendant explain why the quoted snippets from *Forras* or *Holder* must be understood to exclude the hiring of a process server from the "business-related activity" of a state attorney general.[5]

*Second*, Plaintiffs have also established personal jurisdiction under § 13-423(a)(3) because they allege that tortious conduct—service of the Petition—occurred in the District and caused Plaintiffs harm here.  *See Media Matters*, 2024 WL 1773197, at *13.  "Defendant's service of process, through an agent, was an act in the District of Columbia that injured Plaintiffs' constitutionally protected interests."  *Id.*  Specifically, Plaintiffs have averred that Defendant Bailey's service of the Petition had chilling effects in the District.  Suppl. Padera Decl. ¶¶ 8, 11–17.  Exercising jurisdiction over Defendant Bailey for such conduct does not offend due process.  *See Media Matters*, 2024 WL 1773197, at *13 (citing *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48 (D.C. Cir. 2020)).

Defendant claims he engaged in no tortious conduct in the District.  Def.'s Opp'n at 25.  He points out that he *mailed* the Missouri CID, and D.C. courts consistently have held that a mailing into the District is not enough to satisfy subsection (a)(3).  *Id.* at 27.  That is true.  But Plaintiffs rely not on the mailing of the CID, but on Defendant's personal service of the Petition at Media Matters' office in the District.  Pls.' Mem. at 22; Suppl. Padera Decl. ¶ 8.  Defendant says

---

[5] In his reply brief, Defendant Bailey argues that Plaintiffs have not alleged the elements of an "abuse of process" claim.  Def.'s Reply at 17.  In their briefing, Plaintiffs cited cases addressing that tort for the proposition that hiring a process server creates sufficient contacts to satisfy the Due Process Clause.  Pls.' Mem. at 19–20.  But just because Plaintiffs analogized their First Amendment retaliation claim to an abuse of process tort for jurisdictional purposes does not mean that they were required to plausibly plead that tort claim on the merits.

that the service was "merely the statutorily-authorized process provided for seeking enforcement because of Media Matters' refusal to respond to a request for information."  Def.'s Opp'n at 25. But that is inaccurate.  Media Matters had not yet "refused" to respond when Defendant served the Petition.  Because the CID had not yet arrived by mail, Defendant's in-forum activity occurred before Media Matters even had the opportunity to refuse.  Also, Defendant cites no case supporting the proposition that following an outside forum's procedure for personal service cannot constitute in-forum tortious conduct where, as here, such process was used to retaliate against a D.C. resident for their protected First Amendment activities.

*Finally*, Defendant Bailey warns of the repercussions of exercising jurisdiction in this case. "[N]o State," he contends, "could investigate a company that engages in business in that State— but is headquartered in another—without exposing itself to a retaliatory suit like the one Media Matters brought here."  Def.'s Reply at 18.  That is an exaggeration.  Just because a business is headquartered elsewhere does not necessarily mean that proper service cannot be executed within the state if, for instance, the business has an agent or presence there.  Additionally, Defendant makes no effort to demonstrate how many states require personal service to initiate the kind of civil enforcement action at issue here.  It may be that other state laws permit service of such a suit by mail on an out-of-state person, an act that would not satisfy either subsection (a)(1) or (a)(3). Finally, not every effort by an attorney general to enforce a demand for documents against an out-of-state entity will give rise to a federal claim under Section 1983.  This is the unusual case where the target actually has marshalled the evidence to bring and prove such a claim.

## C.    Alternative Remedy at Law & Ripeness

Defendant Bailey makes two additional threshold arguments.  First, he contends that Plaintiffs cannot seek injunctive relief in federal court because they have an adequate remedy at

law—namely, litigating their objections in Missouri state court.  Def.'s Opp'n at 29–31.  Second, he contends that they "cannot establish ripeness."  *Id.* at 31.  Neither argument succeeds.

With respect to the assertion that Plaintiffs can seek redress in the Missouri state-court action, Defendant overlooks settled law.  The Supreme Court has held that "[w]hen federal claims are premised on 42 U.S.C. § 1983 . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."  *Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974); *see Haywood v. Drown*, 556 U.S. 729, 766 (2009) (Thomas, J., dissenting) (noting that "§ 1983 plaintiffs do not have to exhaust state-court remedies before proceeding in federal court"); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 491 (1980) ("This Court has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section."); *Dist. Props. Assocs. v. District of Columbia*, 743 F.2d 21, 27 (D.C. Cir. 1984) (observing that "there is no requirement that plaintiffs in Section 1983 cases exhaust state remedies before bringing their suits in federal court").  Thus, Plaintiffs are not required to show that the Missouri state proceedings would provide an inadequate remedy at law.  And even if adequate, Plaintiffs are not required to litigate their constitutional challenge in Missouri state court.

*Reisman v. Caplin*, 375 U.S. 440 (1964), does not compel a different result.  *Reisman* did not involve a Section 1983 claim and, as the court previously explained, unlike in *Reisman* where the plaintiffs had not suffered any injury, this case "involves the First Amendment, under which a chilling effect on speech can itself be the harm."  *Media Matters*, 2024 WL 1773197, at *15 (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 (9th Cir. 2022)).  Defendant suggests the court was wrong in distinguishing *Reisman* on this ground because, by seeking only injunctive

relief, Plaintiffs are not trying to rectify a past injury, but instead prevent future harm, which Plaintiffs can do in state court.  Def.'s Opp'n at 30–31.  But the same was true in *Twitter*, *see* 56 F.4th at 1172, 1177 (noting that Twitter sought only injunctive and declaratory relief in federal court, and it "could have challenged the CID in Texas state court"), and the Ninth Circuit there did not hold that *Reisman* compelled Twitter to raise its objections first in state court, *see id.* at 1178–79.  Moreover, regardless of what avenues for relief were available to Twitter, as discussed, Defendant seeks to impose a state-court exhaustion requirement where there is none.

Defendant's ripeness argument fares no better.  He contends that *Twitter* stands for the proposition "that where a recipient of a CID 'can raise its First Amendment defense' in state court, then a federal challenge is not ripe."  Def.'s Opp'n at 31 (quoting *Twitter*, 56 F.4th at 1177).  But *Twitter* says no such thing.  The court there held that "Twitter's allegations are not enough to establish constitutional standing and ripeness because Twitter fails to allege any chilling effect on its speech or any other legally cognizable injury."  *Twitter*, 56 F.4th at 1175.  Nowhere did the court say that the availability of a legal remedy in state court made Twitter's claims not ripe.  Here, Plaintiffs' retaliation claim is plainly ripe as they have come forward with evidence of harm: Defendant's actions chilled their protected expression.  Pls.' Mot., Ex. 1, Second Suppl. Decl. of Eric Hananoki in Supp. of Pls.' Mot., ECF No. 49-2, ¶¶ 10–14 [hereinafter Third Hananoki Decl.]; Pls.' Mot., Ex. 4, Suppl. Decl. of Benjamin Dimiero in Supp. of Pls.' Mot., ECF No. 49-5, ¶¶ 5–6 [hereinafter Second Dimiero Decl.]; *see Twitter*, 56 F.4th at 1174 ("In the First Amendment context, 'the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression.'" (quoting *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021)).

**D.      Likelihood of Success on the First Amendment Retaliation Claim**

The court now arrives at the merits.  To prevail on their First Amendment retaliation claim, a plaintiff must show "(1) [they] engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against [them]."  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (citation omitted).  Unlike Defendant Paxton, who offered little push back on the merits, Defendant Bailey contests the latter two elements and raises a belated challenge as to the first.  The court considers each element in turn.

*1.      Protected Speech*

"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by [the Supreme Court's] decisions."  *N.Y. Times v. Sullivan*, 376 U.S. 254, 269 (1971).  "Speech on matters of public concern is at the heart of the First Amendment's protection."  *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (cleaned up).

In his opposition brief and motion, Defendant did not challenge that Media Matters' reporting is heartland First Amendment protected expression.  Def.'s Opp'n at 32–34; Def.'s Mot. at 1.  In fact, at oral argument, he acknowledged that Media Matters is a "media company" and that "core First Amendment protections would apply to [it]."  Hr'g Tr. at 56:12-18, 56:23–57:1.

But in his reply brief, for the first time, Defendant raises the possibility that Media Matters' reporting is not protected expression.  In a section addressing the causation element, he argues, "if in fact Media Matters defamed X by knowingly posting false information, then its activity was not protected by the First Amendment, and so no 'retaliation' is even possible."  Def.'s Reply at 22

19

(citation omitted).  This argument comes too late, so the court treats it as forfeited.  *Rollins Env't Servs. Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991).

Even if preserved, on the present record, Plaintiffs have likely shown that their reporting was not defamatory and therefore was protected speech under *New York Times v. Sullivan*.  Hr'g Tr. at 75:22-23 ("We absolutely stand by the defense that everything in Media Matters['] reporting was accurate.").  Hananoki has averred in these proceedings that his "November 16 article contains screenshots of X feeds, which include at least nine organic posts from X users and six advertisements from major corporate entities."  Pls.' Mot. for TRO & Prelim. Inj., ECF No. 4, Decl. of Eric Hananoki in Supp. of Pls.' Mot., ECF No. 4-3, ¶ 15 [hereinafter Hananoki Decl.].  In its public response to Hananoki's article, X did not deny that advertising in fact had appeared next to the extremist posts on the day in question.  X stated that it had served "**less than 50 total ad impressions**" next to the "organic content featured in the *Media Matters* article" (a mere fraction of the 5.5 billion ad impressions served that day), and it conceded that Hananoki and one other person had seen advertisements of two of the brands identified in the article next to the extremist content.  *See* Compl., ECF No. 1, ¶ 44 [hereinafter Compl.]; Elon Musk (@elonmusk), X.COM (Nov. 18, 2023, 2:01 AM), https://perma.cc/X4HN-PLJ4.  X called these "contrived experiences," but did not deny the basic premise of the article: that X's platform was delivering ads of major brands next to extremist content.  Many other media outlets, as recently as April 2024, have published similar findings.  Compl. ¶ 34; Third Hananoki Decl. ¶¶ 13–14.  These other stories corroborate Hananoki's reporting and Plaintiffs' belief in its accuracy.

The only contrary evidence that Defendant offers are (1) the purportedly "credible" allegations made by X in the suit it filed against Media Matters, and (2) a statement from the online brand safety organization, DoubleVerify, published on April 15, 2024, weeks *after* Defendant

Bailey issued the Missouri CID and filed the Petition.  Def.'s Opp'n, Decl. of Assistant Att'y Gen. Steven Reed, ECF No. 56-1, ¶ 10 [hereinafter Reed Decl.].  According to DoubleVerify, X's Brand Safety Rate—"a measure of how frequently ads appeared adjacent to content that met advertiser-approved criteria"—was 99.9% from October 24, 2023, to March 14, 2024.  *See* Def.'s Opp'n, Ex. 2, Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for More Than Four Months*, VARIETY (Apr. 15, 2024), https://perma.cc/YQ5L-9DKV.  But this limited evidence—lawsuit allegations not independently confirmed and an article that is not specific to Media Matters' reporting—does not provide reason to suspect that Hananoki's story on X was false or that Plaintiffs acted with actual malice.  Defendant's evidence thus does not undermine the likelihood of Plaintiffs proving their reporting was protected by the First Amendment.

### 2.    *Chilled Expression*

Next, the court holds that Plaintiffs have demonstrated a likelihood of success on element two—that Defendant engaged in "retaliatory action[s] sufficient to deter a person of ordinary firmness in [Plaintiffs'] position from speaking again[.]"  *Aref*, 833 F.3d at 258.

The court already has held that Defendant Paxton's announcement of an investigation and issuance of a CID demanding records relating to Media Matters' organization, funding, and journalism would sufficiently deter a news organization or journalist "of ordinary firmness" from speaking again about X-related matters.  *Media Matters*, 2024 WL 1773197, at *18 (explaining why Defendant Paxton's actions satisfied the second element and describing chilling effects of the Texas CID).  Defendant Bailey has gone one step further.  He has filed suit not only to enforce the Missouri CID, but he has asked a state court to sanction Media Matters with a civil penalty.  Such action chills speech.  *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) (observing that

"even minor punishments can chill protected speech"); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (recognizing that "that a threat of criminal or civil sanctions after publication 'chills' speech").

Further, Plaintiffs' "actual response" demonstrates the chilling effects of Defendant Bailey's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Plaintiff Hananoki avers that the CID and Petition, as well as Defendant Bailey's public attacks, "have had an extremely negative effect on my work and on me personally." Third Hananoki Decl. ¶ 10. He continues to limit his communications with other journalists and his editor, and self-censors research and writing on X. *Id.* ¶ 12. Hananoki's editor, Benjamin Dimiero, confirms that Hananoki and other Media Matters' journalists have self-censored out of fear that "certain topics will lead to backlash, and perhaps even imperil the organization's future operations." Second Dimiero Decl. ¶ 7. He also attests that Defendant's actions have adversely impacted Media Matters' editorial process, resulting in slowed output and hampering efforts to issue timely reporting. *Id.* "[E]xtreme[] caution[]" remains pervasive within the organization. *Id.* ¶ 6; *see also* Suppl. Padera Decl. ¶¶ 12 (describing "chilling [of] employees' willingness to speak, research, or report on topics related to the subjects of the investigations and the Petition"), 13–14 (describing impaired collaboration with other groups).

Defendant does not dispute that Plaintiffs' actions would objectively "deter a [journalist or media organization] of ordinary firmness in plaintiff's position from speaking again." *See Media Matters*, 2024 WL 1773197, at *18 (cleaned up). Instead, he questions whether Media Matters' expression has in fact been chilled. Def.'s Opp'n at 33–34. He cites one story by Media Matters published post-March 25, 2024, that is critical of him and at least 20 articles about Elon Musk that ran after the November 16 Article. *Id.* But as did Defendant Paxton, Defendant Bailey "asks too

much of Plaintiffs.  They need not show that the government action led them to stop speaking altogether, only that it would be likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Media Matters*, 2024 WL 1773197, at *19 (quoting *Edgar*, 2 F.4th at 310) (internal quotation marks omitted).  Thus, the fact that Media Matters has continued to publish some related stories—although none specifically identified about extremist content or advertising on X—does not mean Plaintiffs' expression has not been sufficiently chilled.

At oral argument, Defendant also suggested that Media Matters' proof of direct harm from his actions, as distinct from Elon Musk's or Defendant Paxton's, is lacking.  Hr'g Tr. at 69:11-19.  But Defendant enjoys no safe harbor from the fact that X first filed suit against Media Matters or that Defendant Paxton was first to issue a CID.  Concurrent causes can be the source of tortious injury.  *See* RESTATEMENT (SECOND) OF TORTS § 879 (AM. L. INST. 1979) (establishing liability for concurring or consecutive independent acts).  Further, Defendant Bailey has admitted to coordinating with Defendant Paxton from the outset, Third Hananoki Decl. ¶ 5; pg. 29 *infra*, so he cannot distance himself from the harm caused by Defendant Paxton's earlier actions, RESTATEMENT (SECOND) OF TORTS § 876 cmt. a. ("Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts.").

### 3.   Causation

Defendant Bailey devotes most of his attention to the third element: the causal link between Media Matters' protected speech and his issuance of the CID and filing of the Petition.  He argues that the retaliatory criminal arrest standard established in *Nieves v. Bartlett*, 587 U.S. 391 (2019), applies to Plaintiffs' First Amendment claim.  Def.'s Opp'n at 32–33.  According to Defendant, because Media Matters has not established that his office lacked probable cause to initiate the

23

investigation, Plaintiffs cannot prove causation as a matter of law.  *Id.*  The court will first address why that standard has no applicability in this context and then turn to Plaintiffs' proof of a but-for causal link between Media Matters' reporting and Defendant Bailey's actions.

a.   The <em>Nieves</em> Causation Standard

In *Nieves*, the Supreme Court held that, as a general rule, in cases alleging retaliatory arrest based on expression, the plaintiff must establish not only retaliatory motive and injury, but also "plead and prove the absence of probable cause for the arrest."  587 U.S. at 402.  The Court reasoned that a more stringent standard is required because, in such cases, "[t]he causal inquiry is complex because protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest."  *Id.* at 401 (citation omitted).  It also explained that, in those cases, "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct."  *Id.* at 402.  The absence or presence of probable cause, the Court continued, is a useful proxy because such evidence "will be available in virtually every retaliatory arrest case."  *Id.* at 401 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).  Finally, the court analogized to retaliatory prosecution cases, where the same no-probable-cause rule applies.  *Id.* at 399–402 (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).  In those cases, the presumption of prosecutorial regularity and the usual involvement of multiple government actors justified the higher standard.  *See id.* at 402.

The court is not convinced that *Nieves* applies here.  Defendant cites no case in which a court has applied *Nieves* in the civil context.  To the contrary, courts have declined to extend *Nieves* beyond the retaliatory arrest setting.  *See, e.g.*, *Welch v. Dempsey*, 51 F.4th 809, 812–13 (8th Cir. 2022) (declining to extend the no-probable-cause requirement outside of the context of Fourth Amendment seizure); *Sabatini v. Cal. Bd. of Registered Nursing*, No. 18-cv-2036 (AJB) (AGS),

24

2019 WL 6782946, at *7 (S.D. Cal. Dec. 12, 2019), *aff'd*, 849 F. App'x 634 (9th Cir. 2021) ("[G]iven the narrow scope of the *Nieves* case, the Court chooses not to disturb the well-settled Ninth Circuit authority applying the 'but-for' test to determine causation for ADA retaliation claims."); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700–01 (9th Cir. 2021) (determining that *Nieves* does not control in the context of ICE bond revocation).  Justice Alito, concurring in the recent *Gonzalez v. Trevino* decision, explained that courts "ordinarily analyze First Amendment retaliation claims under" *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977), and then proceeded to distinguish "retaliatory-arrest and retaliatory-prosecution claims."  144 S. Ct. 1663, 1670 (2024) (Alito, J., concurring).

That distinction makes sense, as the rationales for the no-probable-cause rule are ill-fitting in the civil investigative setting.  In the arrest context, "[o]fficers frequently must make 'split-second'" probable cause judgments and thus rely on protected speech to obtain "vital information" about a suspect, such as whether they are willing to cooperate or rather present a threat.  *Nieves*, 587 U.S. at 401.  But protected speech, and particularly reporting on a matter of public concern, is not "often a 'wholly legitimate consideration,'" *id.*, for attorneys general making civil enforcement decisions.

Moreover, the problem of proving causation is not as prevalent here.  As one court has opined, where "the sole basis for probable cause [to arrest] [is] speech," "there is good reason to believe that" the *Nieves* standard does not apply.  *Novak v. City of Parma*, 932 F.3d 421, 431 (6th Cir. 2019).  In such cases, "the causal connection is not so tenuous."  *Id.*  That rationale applies here, too, where a media organization's protected journalism is what motivated a law enforcement inquiry.

25

Additionally, the difficulty in proof that arises when "the official with the malicious motive does not carry out the retaliatory action himself" is less of a concern. *Nieves*, 587 U.S. at 400. Here, for instance, the official who authorized the records demand and is alleged to have the malicious motive is one and the same. And, although the presumption of prosecutorial regularity arguably favors a strict *Nieves*-like standard, the case for adopting one is undercut by the fact that the issuance of a CID cannot be measured against a recognized evidentiary standard like probable cause. This case makes that point. Defendant Bailey issued the Missouri CID pursuant to MMPA § 407.040, which authorizes the issuance of a CID "[w]hen it appears to the attorney general that a person has engaged in or is engaging in" a violation of the consumer protection law or "when [the attorney general] believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in" a violation. One person's "appearance" or "belief" of a possible violation as a predicate to issue a CID is a far cry from a "probable cause" inquiry that "speaks to the objective reasonableness of an arrest." *Nieves*, 587 U.S. at 402.

*Nieves* also does not require strict proof of no probable cause in every retaliatory arrest case. The Court carved out an exception "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. Retaliatory arrest plaintiffs can "present[] objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," *id.* at 407, or "that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel[.]" *Gonzalez*, 144 S. Ct. at 1667.

The *Nieves* exception likely would apply in this instance.  Plaintiffs have shown that many other news outlets published similar stories about advertising appearing next to antisemitic and extremist posts on X, yet none received a CID from Defendant Bailey.  Compl. ¶ 34 (e.g., *Washington Post*, *Business Insider*, *Kansas City Star*) (links to articles verified by court); Third Hananoki Decl. ¶ 13 (NBC News).  But only one drew the condemnation of former Trump aide, Stephen Miller.  *See* Compl. ¶ 46.  It is no coincidence that both Defendants Paxton and Bailey announced investigations of Media Matters shortly after Miller implicitly called on "conservative state Attorneys General[s]" to do so.  *See* Compl. ¶¶ 46–47.

What's more, Defendant Bailey has conceded that it is rare, if not unprecedented, for a Missouri Attorney General to investigate a media organization for the content of its journalism.  *See* Hr'g Tr. at 52:24–53:22.  At oral argument, Defendant Bailey was able to identify CIDs issued to Backpage.com and Google.  *Id.* at 53:6-8.  Neither are news organizations.  *Cf. Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) ("There is no evidence that anyone besides the Plaintiffs has been arrested for chalking on the sidewalk.").  The facts on the present record place this case within the *Nieves* exception.

          b.      <u>But-For Cause</u>

For their part, Plaintiffs contend that *Mt. Healthy* provides the proper causation standard here.  Hr'g Tr. at 20:10-16.  That case demands but-for proof to sustain a retaliation claim.  *See Lozman v. Riviera Beach*, 585 U.S. 87, 96 (2018); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution.").

In the typical retaliation case, there is both protected speech and unprotected conduct (e.g., poor job performance).  Those cases raise a "thorny causation issue" that requires the "factfinder

to "disentangle" whether the defendant acted because of what the plaintiff said or what they did. *See Novak*, 932 F.3d at 431. Here, speech is the sole basis for the retaliatory action. So, the court must determine whether there is a causal link between Plaintiffs' reporting on X and the adverse actions taken by Defendant Bailey. *See Nieves*, 587 U.S. at 398–99. For three reasons, the court concludes that Plaintiffs are likely to succeed in proving this element.

*First*, Defendant's public statements are direct evidence of retaliatory intent. Two days after Media Matters published the November 16 Article, Musk posted a tweet threatening "a thermonuclear lawsuit against Media Matters" for its "fraudulent attack on our company," accusing Media Matters of manipulating X's algorithm to artificially force placement of the ads next to extremist content. *See* Compl. ¶¶ 44–45; Elon Musk (@elonmusk), X.COM (Nov. 18, 2023, 2:01 AM), https://perma.cc/X4HN-PLJ4. In response, Stephen Miller tweeted, "Fraud is both a civil and criminal violation. There are 2 dozen+ *conservative* state Attorneys General." *See id.* ¶ 46; Stephen Miller (@StephenM), X.COM (Nov. 19, 2023, 11:48 AM, https://perma.cc/9E6L-FJGY (emphasis added). Only hours later, Defendant Bailey took up Miller's call, responding "[m]y team is looking into this matter," even when there was no apparent connection to Missouri. *See id.* ¶ 47; Andrew Bailey (@AGAndrewBailey), X.COM (Nov. 19, 2023, 4:46 PM), https://perma.cc/J463-656K. Defendant's investigation thus began with a political bent.

From that point forward, Defendant consistently characterized Media Matters in ideological terms. When publicly announcing his issuance of the document preservation notice, Defendant referred to Plaintiffs as "radicals" and called them "progressive tyrants masquerading as [a] news outlet[]." Pls.' Ex. 4 at 4. He also claimed Media Matters had acted to "wipe out free speech." *Id.* Months later, when simultaneously issuing the CID and filing the Petition, in a press release he called Media Matters a "political activist organization" and "'progressive' activists

masquerading as [a] news outlet[]," which had "pursued an activist agenda in its attempt to destroy X." Suppl. Compl., Ex. 7, ECF No. 46-5, at 3. These statements are at odds with Defendant's concession in these proceedings that Media Matters is a "media company" that is "absolutely" entitled to "core" First Amendment protections. Hr'g Tr. at 56:13-15, 56:23–57:1.

Then, on June 3, 2024, Defendant Bailey said out loud the true purpose of his investigation. During an online interview with Donald Trump Jr., Defendant Bailey was asked "what's the end game" of his investigation of Media Matters. Defendant Bailey responded: "It's a new front in the war against the First Amendment . . . We've seen a direct assault by the deep state and President Biden's Administration." He accused Media Matters of "rigging the system to take down X." He continued:

> They don't want us to have a medium of communication and they will bend and break the rules through any means necessary . . . My office was one of the first in the nation joined by my colleague Ken Paxton in Texas to file an investigation, launch an investigation, into Media Matters . . . We're not going to let them destroy free speech in America[.]

Revealingly, Defendant Bailey expressly tied the investigation to the upcoming election: "This is absolutely a new front in the fight for the war for free speech. This investigation is really critical and again especially *as we move into an election cycle in 2024*."[6] (Emphasis added.) Finally, on June 5, 2024, Defendant Bailey once again reiterated on a podcast that Media Matters is a "radical progressive advocacy group masquerading as a 501(c)(3) . . . when in reality what they really want to do is want to silence conservative voices."[7]

---

[6] Triggered, *The Left Wants to Scare US into Submission - Don't Let Them Win, Live with Kash Patel, Jack Posobiec & Missouri AG Andrew Bailey*, at 1:29:50–1:34:00 (June 5, 2024), https://rumble.com/v4zcxit-the-left-wants-to-scare-us-into-submission-dont-let-them-win-live.html.
[7] Human Events Daily with Jack Posobiec, *Did Joe Biden Break Election Law, FBI Knew Laptop Was Real All Along*, at 33:01–35:16 (June 5, 2024), https://www.iheart.com/podcast/269-human-events-daily-with-ja-86752325/episode/did-joe-biden-break-election-law-183021850/.

Although tough talk is not foreign to the law enforcement arena, such overt political messaging is atypical.  A reasonable factfinder is likely to interpret Defendants' words as targeting Media Matters not for legitimate law enforcement purposes but instead for its protected First Amendment activities.

*Second*, there is evidence from which a neutral factfinder likely would find that Defendant Bailey's proffered nonretaliatory explanation for the investigation of Media Matters is pretext. *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) ("In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action").  In his public announcement, Defendant stated that his investigation of Media Matters related to "its allegedly fraudulent solicitation of donations from Missourians amidst its efforts to target X[.]"  Pls.' Ex. 4 at 4.  In the Petition, he said that his investigation centered on Media Matters' "use of fraud to solicit donations from Missourians in order to trick advertisers into removing their advertising from X . . . one of the last platforms dedicated to free speech in America," in violation of Section 407.020 of the MMPA.  Pls.' Ex. 6 at 2.  The evidence that these explanations are a pretext for retaliation is strong.

According to a declaration submitted by Missouri Assistant Attorney General Steven Reed, in November 2023, the Attorney General "discovered that Media Matters was credibly accused of defaming the social media platform X . . . by falsely representing that X routinely populates advertisements for brands like Apple, IBM, and Xfinity next to extremist, fringe content."  Reed Decl. ¶ 8.  Those "credible allegations," according to Reed, were based on a lawsuit filed by X against Media Matters in the Northern District of Texas, challenging the truthfulness of its

reporting.  *Id.* ¶ 9.  Reed does not say that his office independently sought to substantiate these allegations.  Rather, he points to an article published by an online brand safety organization, DoubleVerify, on April 15, 2024, weeks *after* Defendant Bailey issued the Missouri CID and filed the Petition.  *Id.* ¶ 10.  According to that article, X's Brand Safety Rate—"a measure of how frequently ads appeared adjacent to content that met advertiser-approved criteria"—was 99.9% from October 24, 2023, to March 14, 2024.  Spangler, *supra*.  This evidence, according to Reed, was indicative of "potential violations of the Missouri Merchandising Practices Act."  Reed Decl. ¶ 11.

But that logic is difficult to follow.  Even accepting this as evidence that Media Matters' reporting about X was misleading if not defamatory, Reed nowhere explains how the publication constitutes "fraud to solicit donations from Missourians."  Pls.' Ex. 6 at 2.  He never identifies what suspected fraudulent statements or omissions Media Matters made to Missourians for the purpose of soliciting donations.  If he means to say that Media Matters' defamatory *reporting* itself is the fraud, he nowhere links that content to Media Matters' fundraising efforts.  He does not claim, for example, that Media Matters used its reporting on X to solicit donations.  In fact, the webpage on which the November 16 Article appeared made no express fundraising appeal. Nor did it include a donation link.[8]  Defamation is not fraud.  It is thus likely that the false reporting-as-fraudulent fundraising justification for the investigation is pretext for retaliation.

Defendant submitted a second declaration from Reed with his reply brief that sought to bolster the bona fides of his investigation.  Def.'s Reply, Second Decl. of Steven Reed,

---

[8] *See* Eric Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MEDIA MATTERS (November 16, 2023), https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle (last visited August 21, 2024).  Media Matters' website does contain a link through which readers can donate, but that link appears on a dropdown menu.  It is not specific to any publication, let alone the one at issue.

ECF No. 63-2 [hereinafter Second Reed Decl.].  In that declaration, Reed averred for the first time

that the Attorney General's Office "has come into possession of internal Media Matters documents

that are expressly marked not for circulation and which reveal plans by the organization to use

solicited funds for activities contrary to those publicly disclosed to its Missouri donors."  *Id.* ¶ 5.

The court has reviewed the documents.  *See* Minute Order, June 7, 2024.  It is perplexed by Reed's

representations.

The records are internal strategic action plans that identify Media Matters as one of

multiple organizations aligned to resist President Trump.  Media Matters, the strategy materials

say, plans to "disarm[] right-wing misinformation," "lead[] the fight against the next generation of

conservative misinformation," coordinate opposition research, push news stories and research, and

fight for ethical standards in government.  Pls.' Resp. to the Court's June 7 Minute Orders, ECF

No. 65 [hereinafter Pls.' Resp.], Ex. A, ECF No. 65-1 [hereinafter Pls.' Ex. A], at 1, 7–8.  The

documents appear to be published around *2016*, seven years before Hananoki's reporting on X, a

fact Defendant Bailey appeared to confirm on a podcast.[9]  One of the documents has been publicly

available on the internet since 2017.  Pls.' Resp. at 1.

According to Reed, the materials are at odds with Media Matters' public representations

about its operations.  He says that Media Matters uses funds "not just to issue reports about

perceived misinformation, but to actively interfere with and neutralize the operational

infrastructure of certain 'target' companies."  Second Reed Decl. ¶ 8.  Reed continues, "these

documents reveal that Media Matters has entered into partnerships with Facebook and Google—

competitors of X—and has developed strategic plans to interfere with the infrastructure systems

used by 'target' companies to display advertisements."  *Id.* ¶ 9.  Reed apparently is referring to

---

[9] Posobiec, *supra* note 7.

that portion of the strategy document that states, "[k]ey right-wing targets will see their influence diminish as a result of our work," and Media Matters will work with "[i]nternet and social media platforms, like Google and Facebook," "to stem the flow of damaging fake news on its platform's pages.  Google will cut off these pages' accompanying sites' access to revenue by pulling their access to Google's ad platform."  Pls.' Ex. A at 12–13.  "These materials," Reed states, "are in tension with the organization's public comments and solicitations to Missourians and suggest that Media Matters is likely using solicited donations for activities in conflict with the explicit purposes disclosed to donors."  Second Reed Decl. ¶ 10.

The court does not understand how a publicly available document written in 2016, years before Elon Musk acquired X, is proof that Media Matters "used fraud to solicit donations from Missourians in order to trick advertisers into removing their advertisements from X" in 2023.  Pls.' Ex. 6 at 2.  The "targets" referenced in 2016 document were small "alt-right" online publications that Media Matters believed pushed "fake news," not large social media platforms like then-Twitter, now X, that host content created by others.   And, the way Media Matters would accomplish its objective, according to the 2016 document, was by working *with* large social media companies like Google and Facebook, not against one like X, then-Twitter.  *See* Pls.' Ex. A at 12–13.

What's more, Defendant's declaration is incomplete.  Reed accurately quotes from a portion of Media Matters' website to claim that it misrepresented its mission to donors.  Second Reed Decl. ¶ 6.  The website does say that Media Matters "posts rapid-response items as well as longer research and analytic reports documenting conservative misinformation throughout the media" and "works daily to notify activists, journalists, pundits, and the general public about instances of misinformation."  *About Us*, MEDIA MATTERS, https://www.mediamatters.org/about-

us (last visited August 21, 2024) (emphasis added).   But Reed omits a key statement: that Media Matters' work includes "providing [activists, journalists, pundits, and the general public] with the resources to rebut false claims and *to take direct action against offending media institutions*."  *Id.* Defendant's selective quotation of Media Matters' website undermines the credibility of his representations.  Alongside his overselling of a years-old, publicly available document, it is proof of pretext.

*Third*, a reasonable factfinder is likely to view Defendant Bailey's unorthodox approach to enforcing the CID as further proof of retaliatory intent.  *See Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) ("The specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes."). Defendant Bailey mailed the Missouri CID on the same day that he filed an enforcement action in Missouri state court.  Suppl. Compl. ¶ 24.  According to the Petition, the reason Defendant filed it *before* Media Matters even received the CID was that Media Matters "has failed or *will fail* to comply with" it.  Pls.' Ex. 6 ¶ 25 (emphasis added).  Defendant's assertion that Media Matters "will fail" to comply was based on its earlier lawful filing of this suit against Defendant Paxton. *Id.* ¶¶ 19–20.  But MMPA § 407.090, which Defendant cites as the source of his authority to enforce the CID, does not authorize filing suit in anticipation of noncompliance.  It provides that the Attorney General may request a court order "[w]henever a person fails to comply with any civil investigative demand[.]"  Mo. Rev. Stat. § 407.090.  Media Matters, of course, had not yet "fail[ed]" to comply with the Missouri CID as of March 25, 2024, because the CID was still en

34

route.  *See* Suppl. Compl. ¶ 23.  Defendant's filing of a preemptive suit not authorized by Missouri law is evidence of retaliatory intent.[10]

Defendant's strategic amendment of the Petition supplies even more proof of pretext.  The added request for a civil penalty was an effort to buttress the case for abstention and to avoid the force of *Smith & Wesson*.  That motive is clear from a timeline of the federal and Missouri proceedings.  Recall, the return date for the Missouri CID was April 15, 2024.  Plaintiffs responded with a letter on that date objecting fully to the records demands.  Pls.' Ex. 8.  Three days later, Plaintiffs moved to supplement the complaint in this case to add claims against Defendant Bailey.  Pls.' Rule 15(d) Mot. to Suppl. the Compl., ECF No. 39.  The court granted that motion on April 24, 2024.  Order, ECF No. 4.  The next day, Plaintiffs moved to enjoin the Missouri CID.  Pls.' Mot.  On May 8, 2024, Defendant Bailey both opposed the motion for preliminary injunction and filed a motion to dismiss.  Def.'s Opp'n; Def.'s Mot.  Both filings invoked *Younger* abstention.  On May 20, 2024, Plaintiffs filed their combined reply and opposition brief, citing *Smith & Wesson* for the first time.

Then, Defendant Bailey sought to tilt the playing field in his favor.  On May 24, 2024, *before* filing his reply in support of his motion to dismiss, Defendant returned to Missouri state court to amend his Petition.  He added a second count, "Request for Civil Penalty," which sought a $1,000 civil penalty for Media Matters' failure to produce records by the April 15 deadline, which had passed *40 days* earlier.  Def.'s Ex. A at 11.  Based on his reformulated Petition, Defendant argued to this court: Media Matters' assertion that the Petition does not seek to punish

---

[10] At oral argument, Defendant asserted that he moved preemptively in state court under the authority of § 407.100 of the MMPA, which permits the Attorney General to file for injunctive relief "before a completed violation of the" MMPA.  Hr'g Tr. at 36:7-11.  But nowhere does the Petition cite to § 407.100.  To the contrary, it expressly seeks "an order from the Court, pursuant to Section *407.090*, compelling Media Matters to comply with the CID within 20 days."  Pls.' Ex. 6 at 2–3 (emphasis added).

wrongdoing "is easily dispensed with" because the "operative complaint seeks a $1,000 civil penalty" and for that reason *Smith & Wesson* is "starkly different." Def.'s Reply at 2–3. He also asserted that, regardless of the civil penalty request, Plaintiffs' failure to timely respond to the Missouri CID was itself a violation of Missouri law, making the enforcement action one seeking to sanction an "unlawful act." *Id.* at 3.

From this timeline, it is apparent that Defendant Bailey amended the Petition to request the $1,000 civil penalty to distinguish this case from *Smith & Wesson*. After all, Defendant waited 40 days after April 15 to seek the civil penalty, and he did so only after Plaintiffs cited to a case that is nearly on all fours with this one. Defendant offers no reason for this sequencing of events other than the one drawn by the court. It is yet more proof that retaliation for protected expression was likely his true motive for investigating Media Matters.

*     *     *

The court does not discard lightly the presumption of regularity generally afforded to prosecutorial decision-making. *Cf. Hartman v. Moore*, 547 U.S. 250, 263 (2006) (discussing the presumption of regularity in the context of a criminal charging decision). "But it falls on the judiciary to ensure that the First Amendment is not reduced to a parchment promise." *Gonzales v. Trevino*, 60 F.4th 906, 907 (5th Cir. 2023) (Ho, J., dissenting from denial of rehearing en banc). And "the most heinous act in which a democratic government can engage is to use its law enforcement machinery for political ends." *Id.* (quoting Laurence H. Silberman, *Hoover's Institution*, WALL ST. J., July 20, 2005) (alteration omitted). That apparently is what has occurred here.

On this record, the court finds that Plaintiffs are likely to succeed in proving a but-for causal linkage between their protected First Amendment activities, Defendant's decision to issue and enforce the Missouri CID, and Plaintiffs' chilled expression.

### E.   Irreparable Harm, Balance of the Equities, and the Public Interest

The court summarily addresses the final three injunction factors, as the same reasons for granting the injunction against Defendant Paxton apply equally here.   Plaintiffs will suffer irreparable harm in the absence of relief because the "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Media Matters*, 2024 WL 1773197, at *19 (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)) (internal quotation marks omitted).   Defendant Bailey contends that Media Matters suffers no injury because it will not have to hand over documents until it has a full and fair opportunity to contest the CID in Missouri state court.   Def.'s Opp'n at 37.   That argument elides the ongoing chilling effects Plaintiffs have endured and would continue to endure from a continuation of the state-court proceedings.   Also, Defendant Bailey offers the self-inflicted harm argument as Defendant Paxton, Def.'s Opp'n at 38, to no avail.   *Media Matters*, 2024 WL 1773197, at *19.

The balance of equities and the public interest favor Plaintiffs as well.   *Media Matters*, 2024 WL 1773197, at *20.   Specifically, Missouri's interest in enforcing its consumer protection laws must give way when a state actor uses them to retaliate against a media organization for protected speech, *see supra* Section IV.F.

### V.

In conclusion, the court finds that Plaintiffs have demonstrated a likelihood of success on the merits, including personal jurisdiction over Defendant; they would be irreparably harmed absent an injunction; and the equities favor the requested relief.   Accordingly, the court grants

Plaintiffs' Motion for Preliminary Injunction, ECF No. 49.  For the same reasons, the court denies Defendant's Motion to Dismiss, ECF No. 57.[11]   A separate, appealable order entering the injunction preceded this opinion, ECF No. 70.

Dated:  August 23, 2024                          _____
                                                                    Amit P. Mehta
                                                     United States District Court Judge

---

[11] Given the posture of this case, the court does not address Defendant's arguments for dismissal of Plaintiffs' other claims.  Defendant may renew these arguments at later stages of this proceeding.  *See supra* n.1.